# <u>**EXHIBIT B**</u>

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153

9/25/2023
bch# 600
CT# 202246644
$250.00

| | |
|---|---|
| **Richard M. Zelma**<br>**Plaintiff**<br>**Vs.**<br>**Telemarketers: Does' (1-10) and ABC Corporations' (1-10); including Telemarketer(s) Doe and ABC Corporation Call Centers, Resellers and Telemarketers calling from multiple spoofed numbers; each acting individually, in concert or as a group.**<br>**Defendants'** | **SUPERIOR COURT OF NEW JERSEY**<br>**BERGEN COUNTY**<br>**LAW DIVISION**<br><br>**Docket No.:**<br><br>**PLAINTIFFS COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES for VIOLATIONS of THE TELEMARKETING SALES RULE; THE TELEPHONE CONSUMER PROTECTION ACT; THE NEW JERSEY NO CALL LAW; STATUTORY TREBLED DAMAGES; and PERMANENT INJUNCTIVE RELIEF** |

## I.    INTRODUCTION

Plaintiff, Richard M. Zelma, by way of DOE Complaint, against the Doe Defendants

and currently unknown ABC Corporations, says as follows:

This suit is brought pursuant to applicable authorities; The Telemarketing Sales Rule **(TSR)**

16 CFR §310 *et seq*; The Telephone Consumer Protection Act **(TCPA)** 47 U.S.C. §§227(b)

(5); (c)(5)(C) and the New Jersey No Call Law, Codified at **N.J.S.A. §56:8-119** *et seq*; it's

underlying regulations, **N.J.A.C. §13:45D**, which prohibit unsolicited telemarketing calls to

New Jersey residents who registered their telephone numbers on the Federal No-Call-List administered by the Federal Trade Commission. (The DNC Registry)

*1.* As noted above, both Federal and State law prohibit Telemarketing calls, RoBo calls, along with uninvited marketing calls to residential or mobile phones, VoIP provided phone services as well as calls to fax machines, to those who had registered their phone numbers on the FTC no-call-list, where such calls are initiated either manually and/ or through the use of any automated telephone dialing system (ATDS), automatic dialing and announcement device (ADAD, including speed dialers, predictive dialers and auto-dialing platform systems or any method that a reasonable person would define as dialing a phone number to a specific party, absent human intervention.

*2.* Auto-Dialers can be considered support platforms, which have the capacity if needed, to store or produce telephone numbers, harvest numbers without the consent or knowledge of a subscriber; acquire numbers algorithmically and / or surreptitiously on a consumer and capable of calling such numbers either randomly, sequentially and /or from a stored

database at a time decided by a person having control and/ or usage of such dialing equipment. *See:* 16 C.F.R. § 310.4(b)(1)(v)

3.      As will be provided following identification, the Doe Defendants initiated marketing calls to Plaintiff's two land-lines, documented to date, at minimum, Sixty [60] times since the beginning of May 2023, and willfully did so absent prior express written consent from Plaintiff; in violation of Plaintiffs repeated no call request with those agents, his no-call request through registration on the FTC no-call site; in violation of the TSR, the TCPA as well as the New Jersey no-call law and regulations. (The exact amount of calls to be determined through continuing discovery)

4.      Pending the service and results of subpoena, and upon Plaintiffs information and belief, the Doe defendants and each of them will be identified, where they systematically initiated their calls via an Automatic Telephone Dialing System (ATDS), to Plaintiffs two telephone lines ending in [8153] and [8154] (respectively) which are connected to a land-line network, where said numbers remain listed with the federal and (NJ) State no-call-list since inception, 2003.

**5.**      Through their unwanted and uninvited calls, the Doe Defendants were intent to solicit Plaintiff, albeit prohibited, and encouraged Plaintiff to apply for legal representation for physical effects from Camp Lejuene water or from using the Round-up lawn product, offered as a service or product from the Defendants.

**6.**      The Defendants agents implied, claimed, proffered and alleged they represented nationwide law firms and legal services, who could provide a service for victims of the above products, while in reality, they were actually lead generators, an act the FTC recently proscribed as strictly prohibited. [1]

*7.*      Plaintiff does not or ever had any business relation with Defendants, nor ever heard of them.

*8.*      Throughout each call, the defendants and/ or their representatives, agents or employees, refused to provide any name, organization, identity or

---

[1]   July 18, 2023, the FTC issued a warning, to make clear that third-party lead generation for robocalls is illegal under the **Telemarketing Sales Rule** (TSR) and that the FTC and its partners are committed to stopping illegal calls by targeting anyone in the telemarketing ecosystem that assists and facilitates these calls, including VoIP service providers.

phone number upon which Plaintiff could further identify, claiming, they were prohibited from doing so.

9.      As further set out below, Plaintiff will detail the specific scheme leading up to the violations and this dispute upon the completion of Subpoena results.

10.     Plaintiff seeks to amend the within Complaint pending the identification from such Subpoena for the owners, subscribers, users or resellers of the subject phone numbers identified through Caller ID.

## II.    <u>PARTIES</u>

11.      Richard M. Zelma (hereinafter, "Plaintiff" or "Zelma"), is a senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648 and the subscriber to the subject phone numbers.

12.      As used herein, any reference to "Plaintiff" shall mean Plaintiff Richard Zelma.

13.      Plaintiff is a natural person as defined under 47 USC § 153(39).

14.      The Defendants are currently unknown while plaintiff awaits the results from a Subpoena.

## III.   <u>JURISDICTION AND VENUE</u>

*15.*      This Court has jurisdiction over the claims alleged herein arising under Federal Law: 16 <u>C.F.R.</u> §310 *et seq*; 47<u>U.S.C.</u>§ 227; 47<u>C.F.R.</u> §64.1200 (d) and under State Law; <u>N.J.A.C.</u> § 13:45D-4.1.

**The within Doe Complaint is subject to further revision and amendment upon Plaintiffs completion of service of all necessary Subpoenas to identify the currently unknown defendants.**

Respectfully submitted,
***/s/Richard M. Zelma***
Richard M. Zelma
PLAINTIFF, *pro se*
Dated: Sept. 25, 2023

### RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of <u>R.</u> 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

### Rule 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).


By: ***/s/ Richard M. Zelma***
RICHARD M. ZELMA, *pro se*
Dated: Sept. 25, 2023



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

## For Use by Clerk's Office Only

| Payment type ☐ check<br>☐ charge<br>☐ cash | Charge/Check Number | Amount<br>$ | Overpayment<br>$ | Batch Number |
|---|---|---|---|---|

| Attorney/Pro Se Name<br>Richard Zelma, pro se | Telephone Number<br>(201) 767-8153  ext. | County of Venue<br>Bergen |
|---|---|---|

| Firm Name (if applicable)<br>N/A | Docket Number (when available)<br>BER-L- |
|---|---|

| Office Address - Street<br>940 Blanch Avenue | City<br>Norwood | State<br>N.J. | Zip<br>07648 |
|---|---|---|---|

| Document Type<br>Doe Complaint | Jury Demand<br>☐ Yes   ■ No |
|---|---|

| Name of Party (e.g., John Doe, Plaintiff)<br>Richard M. Zelma, PLT | Caption<br>Zelma v. Telemarketers: Does' (1-10) and<br>ABC Corps' (1-10) |
|---|---|

Case Type Number (See page 3 for listing)  699

Are sexual abuse claims alleged? ☐ Yes   ■ No

Does this case involve claims related to COVID-19? ☐ Yes   ■ No

Is this a professional malpractice case? ☐ Yes   ■ No

   If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
   regarding your obligation to file an affidavit of merit.

Related Cases Pending? ☐ Yes   ■ No

   If "Yes," list docket numbers

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? ■ Yes   ☐ No

Name of defendant's primary insurance company (if known) ☐ None   ■ Unknown

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
|---|

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?          ☐ Yes     ■ No
   If "Yes," is that relationship:
     ☐ Employer/Employee      ☐ Friend/Neighbor      ☐ Familial      ☐ Business
     ☐ Other (explain) _____

---

Does the statute governing this case provide for payment of fees          ☐ Yes     ■ No
by the losing party?

---

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

---

♿ Do you or your client need any disability accommodations?          ☐ Yes     ■ No
   If yes, please identify the requested accommodation:

   Will an interpreter be needed?          ☐ Yes     ■ No
   If yes, for what language?

---

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature:  _____ /s/ Richard M. Zelma _____

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 221-0700
COURT HOURS  8:30 AM - 4:30 PM


                          DATE:   OCTOBER 04, 2023
                          RE:     ZELMA RICHARD  VS TELEMARKETERS DOES 1 -10
                          DOCKET: BER L -005354 23


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.


     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE PRETRIAL JUDGE ASSIGNED IS:  HON PETER G. GEIGER


      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 221-0700.


      IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                          ATTENTION:

                                RICHARD ZELMA
                                940 BLANCH AVE
                                NORWOOD          NJ 07648




JUJNR9
```



United States of America
FEDERAL TRADE COMMISSION
East Central Region

1111 Superior Avenue, Suite 200
Cleveland, Ohio 44114
(216) 263-3455

Jon Miller Steiger
Director

March 17, 2023

## CEASE AND DESIST DEMAND

*VIA EMAIL TO:*
*michael@call48.com*

HFA Services LLC, also d/b/a Call48
Michael Halperin, CEO
1200 South Rogers Circle
Unit 6
Boca Raton, FL 33487
c/o Samuel Kastner, Registered Agent

We have determined that HFA Services LLC, also d/b/a Call48 (HFA Services) is apparently routing and transmitting illegal robocall traffic, directly or indirectly, for entities involved in the following campaigns:

- Amazon-AuthorizeOrder
- Amazon-SuspiciousCharge
- Amazon-SuspiciousCharge-P1
- Chinese-PackageDelivery
- FedReserv-Impers
- Grandparentscam
- Hotel-ComplimentaryStay
- Legal-Enforcement-Notice
- SSA-Suspended
- StudentLoan-Forgiveness/Relief-Center
- StudentLoan-Payments-P1
- Utility-30MinDisconnect

More specifically, our investigation revealed that HFA Services apparently routed and transmitted illegal robocalls, as set forth in Attachment A.

The Federal Trade Commission (FTC) works closely with USTelecom's Industry Traceback Group (ITG), which is the registered industry consortium selected pursuant to the

TRACED Act to conduct tracebacks.[1]  Between September 7, 2021, and February 4, 2023, ITG investigated 35 prerecorded voice message calls that law enforcement, voice service providers using honeypots (i.e., unassigned numbers held by providers to detect illegal robocalls), and customers of YouMail had flagged as illegal robocalls made without consent of the called party.[2]  ITG conducted tracebacks and determined that HFA Services routed and transmitted the calls.  ITG previously notified you of these calls and provided you access to supporting data identifying each call—including a recording of the illegal robocall—as indicated in Attachment A.  Further, the numerous traceback notices directed to HFA Services indicate that you are apparently routing and transmitting illegal robocall traffic knowingly.  **IF YOU ARE ENGAGED IN THESE ACTIVITIES, THEN YOU MUST IMMEDIATELY CEASE AND DESIST FROM ENGAGING IN THEM.**

The FTC, the nation's consumer protection agency, enforces the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45 et seq., which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing practices.  Section 310.3(b) of the TSR prohibits "assisting and facilitating" certain specified conduct.[3]  Under that provision, it is unlawful for any person or entity to "provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a), (c), or (d), or Section 310.4 of this Rule."  These Sections prohibit, among others, the following conduct:

- Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution (16 C.F.R. § 310.3(a)(4));
- Misrepresenting a seller or telemarketer's affiliation with any government entity (16 C.F.R. § 310.3(a)(2)(vii));
- Transmitting false or deceptive caller ID numbers (16 C.F.R. § 310.4(a)(8));
- Initiating or causing the initiation of calls that deliver prerecorded messages,[4] unless the person called provided the seller express written permission to call (16 C.F.R. § 310.4(b)(1)(v)); and
- Initiating or causing the initiation of telemarketing calls to numbers listed on the National Do Not Call Registry, unless the person called provided express written permission to receive calls from the seller or the seller had an existing business relationship with the person called (16 C.F.R. § 310.4(b)(1)(iii)(B)).

The FTC can obtain civil penalties for TSR violations.  Each illegal call is subject to a maximum civil penalty of $50,120.  *See* 16 C.F.R. § 1.98.  In addition, a violation of the TSR is a violation of Section 5 of the FTC Act.  *See* 15 U.S.C. §§ 6102(c), 57a(d)(3), 45(a).  Accordingly, the FTC has authority to seek both preliminary and permanent injunctive relief to address TSR

---

[1] *See* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274, Sec. 13(d) (2019) (TRACED Act).

[2] *See* 16 C.F.R. § 310.4(b)(1)(v).

[3] A copy of the TSR is attached as Attachment B.

[4] These calls are often referred to as "robocalls."

violations. *See* 15 U.S.C. § 53(b). The FTC may also seek the refund of money or payment of damages to address TSR violations. *See* 15 U.S.C. § 57b(b).

Combatting illegal telemarketing is a top priority for the FTC, with a special emphasis on halting illegal robocalls.[5] We want you to be aware that the FTC has, for example, brought assisting and facilitating claims against technology companies that knowingly provided software and servers used by illegal robocallers, even though these technology companies did not contract directly with the illegal robocallers. *See FTC v. James B. Christiano*, Case No. 8:18-cv-00936 (C.D. Cal. May 31, 2018).

We also bring to your attention that the FTC has sued VoIP service providers for allegedly violating the TSR. In *FTC v. Educare*, the FTC alleged that defendant Globex Telecom, Inc. assisted and facilitated telemarketers it knew, or consciously avoided knowing, were violating the TSR's prohibitions on calls delivering prerecorded messages. *See FTC v. Educare Centre Services, Inc.,* No. 3:19-cv-00196-KC (W.D. Tex. Dec. 3, 2019).[6] In September, 2020, Globex Telecom and its associates agreed to pay $2.1 million to settle the FTC lawsuit, and Globex Telecom's former CEO and President was banned from telemarketing to the U.S. and was subject to a permanent court order.[7] Similarly, in *FTC v. Alcazar Networks, Inc.*, the FTC alleged that Alcazar Networks, Inc. and its founder and sole owner assisted and facilitated telemarketers responsible for tens of millions of illegal telemarketing calls, including robocalls and spoofed calls that displayed "911" as the caller ID. *See FTC v. Alcazar Networks Inc., et al.*, No. 6:20-cv-2200 (M.D. Fla. Dec. 3, 2020).[8] As part of their settlement with the FTC in January 2021, the defendants agreed to a permanent injunction that prohibits similar misconduct in the future and requires them to screen and monitor their customers, as well as imposing a monetary penalty.[9]

The FTC has business educational materials that can assist you in complying with the TSR. *See* https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule.

In addition to FTC regulations and the FTC's actions against providers of VoIP services, you should also be aware that the United States Department of Justice (DOJ), state attorneys general, and other agencies have brought civil actions against VoIP companies and their owners. In two cases, DOJ alleged that the defendants were committing and conspiring to commit wire

---

[5] In 2022, the FTC received more than 2.7 million complaints about unwanted calls, including more than 1.61 million robocall complaints. The FTC maintains an interactive Tableau Public web page that publishes details about do not call complaints on a quarterly basis. *See* https://public.tableau.com/profile/federal.trade.commission#!/vizhome/DoNotCallComplaints/Maps.

[6] A copy of the FTC's Amended Complaint is attached as Attachment C.

[7] *See* https://www.ftc.gov/news-events/press-releases/2020/09/globex-telecom-associates-will-pay-21-million-settling-ftcs-first.

[8] A copy of the FTC's Complaint is attached as Attachment D.

[9] *See* https://www.ftc.gov/news-events/press-releases/2020/12/ftc-takes-action-against-second-voip-service-provider.

fraud by knowingly transmitting robocalls that impersonated federal government agencies.[10]  In August 2020, a federal district court entered a permanent court order barring the defendants from conveying telephone calls into the U.S. telephone system.[11]  State cases have had similar impacts.[12]

Within three business days, please send a message to FTC attorneys Fil Maria de Banate and Christian M. Capece, via electronic mail at fdebanate@ftc.gov and ccapece@ftc.gov, certifying that HFA Services has ceased engaging in the activities described above that may subject it to liability under the TSR or the FTC Act.  Please direct any inquiries regarding this letter to Mr. de Banate and Mr. Capece by email or by telephone at 216.263.3413 or 216.263.3419.

Sincerely,

JONATHAN STEIGER

Digitally signed by JONATHAN STEIGER
Date: 2023.03.17 14:34:10 -04'00'

Jon Miller Steiger
Director

Enclosures:
Attachment A (Chart of illegal robocalls)
Attachment B (TSR)
Attachment C (*Educare* Amended Complaint)
Attachment D (*Alcazar* Complaint)

---

[10] *See* https://www.justice.gov/opa/pr/department-justice-files-actions-stop-telecom-carriers-who-facilitated-hundreds-millions.

[11] *See* https://www.justice.gov/opa/pr/district-court-enters-permanent-injunction-shutting-down-telecom-carriers-who-facilitated.

[12] For example, the Vermont and Michigan Attorneys General have brought successful actions against VoIP providers who route scam robocall traffic. *See* https://ago.vermont.gov/blog/2022/08/02/vermont-joins-nationwide-anti-robocall-task-force; https://www.michigan.gov/ag/news/press-releases/2020/08/07/ag-nessel-announces-settlement-eliminating-telecom-carrier-responsible-for-illegal-robocalls; https://www.michigan.gov/documents/ag/Assurance_of_Voluntary_Compliance_-_All_Access_Telecom_FINAL_9-11-20_702047_7.pdf.

PLAINTIFFS EXHIBIT
3

# ATTACHMENT A

REDACTED PURSUANT TO
N.J. Court Rule 1:38-7 *et seq*



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

## For Use by Clerk's Office Only

| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |
|---|---|---|---|---|

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Richard M. Zelma | 2017678153    ext. | Bergen ▼ |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | BER-L-5354-23 |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 940 Blanch Avenue | Norwood | NJ | 07648 |

| Document Type | Jury Demand |
|---|---|
| Amended Complaint | ☐ Yes   ■ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Richard M. Zelma, pro se Plaintiff | Zelma vs. Michael Peter Halperin, ("Halperin") Individually, and; |

Case Type Number (See page 3 for listing)   699

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
regarding your obligation to file an affidavit of merit.

| Related Cases Pending? | ☐ Yes | ■ No |
|---|---|---|
| If "Yes," list docket numbers | | |

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ■ No |
|---|---|---|

| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |
|---|---|---|

| The Information Provided on This Form Cannot be Introduced into Evidence. |
|---|

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?   ☐ Yes   ■ No
  If "Yes," is that relationship:
   ☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Familial   ☐ Business
   ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees   ☐ Yes   ■ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

  ♿  Do you or your client need any disability accommodations?   ☐ Yes   ■ No
    If yes, please identify the requested accommodation:

    Will an interpreter be needed?   ☐ Yes   ■ No
    If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature:    /s/ Richard M. Zelma
_____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

## Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

## Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**   ☐ **Title 59**   ☐ **Consumer Fraud**

☐ **Medical Debt Claim**

| CALLS TO 8154 | DATE / TIME | PSTN National Phone Number Registry |
|---|---|---|
| 1. +440 271-2264 | 2023-09-17 at 14-57-27 | WINDSTREAM WESTERN RESERVE, INC. |
| 2. +470 849-3692 | 2023-09-17 at 23-35-55 | EXIANT COMMUNICATIONS LLC |
| 3. +501 449 2722 | 2023-09-13 at 19-43-04 | T-MOBILE USA, INC. |
| 4. +501 449 2722 | 2023-09-13 at 20-22-07 | T-MOBILE USA, INC. |
| 5. +505 437-9281 | 2023-09-13 at 20-27-02 | BANDWIDTH.COM CLEC, LLC - NM |
| 6. +229 658 5675 | 2023-09-18 at 12-36-48 | WINDSTREAM GEORGIA COMMUNICATIONS CORP. |
| 7. +254 720 6232 | 2023-09-18 at 12-15-38 | CENTURYLINK COMMUNICATIONS, LLC |
| 8. +270 330 9293 | 2023-09-18 at 12-38-27 | LEVEL 3 COMMUNICATIONS, LLC-KY |
| 9. +316 397 9051 | 2023-09-18 at 12-31-59 | ONVOY, LLC - KS |
| 10. +317 434 9685 | 2023-09-18 at 12-44-27 | LEVEL 3 COMMUNICATIONS, LLC - IN |
| 11. +352 842 0551 | 2023-09-18 at 12-57-59 | FRACTEL, LLC |
| 12. +385 360 4298 | 2023-09-18 at 12-54-23 | TWILIO INTERNATIONAL, INC. |
| 13. +430 258 0589 | 2023-09-18 at 12-17-13 | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 14. +743 229 4553 | 2023-09-18 at 12-51-45 | EXIANT COMMUNICATIONS LLC |
| 15. +480 846 6617 | 2023-09-17 at 19-45-26 | ONVOY, LLC - AZ |
| 16. +501 449 2722 | 2023-09-17 at 15-24-56 | T-MOBILE USA, INC. |
| 17. +316 540-8802 | 2023-09-13 at 20-25-39 | SOUTHWESTERN BELL |
| 18. + 316 540-8822 | 2023-09-13 at 20-24-23 | SOUTHWESTERN BELL |
| 19. 302 315 8431 | 2023-09-17 at 15-07-55 | ONVOY, LLC - DE |
| 20. 401 399 6220 | 2023-09-18 at 13-02-36 | TELEPORT COMMUNICATIONS AMERICA, LLC - CA |
| 21. 580 200 4246 | 2023-09-18 at 12-56-03 | ONVOY, LLC - OK |
| 22. 601 603 4535 | 09/15/2023 01:48 PM | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - MS |
| 23. 601 603 4535 | 2023-09-18 at 14-30-13 | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - MS |
| 24. 614 252 2714 | 2023-09-18 at 12-35-00 | OHIO BELL TEL CO |
| 25. 636 651 6103 | 2023-09-18 at 12-49-40 | TELEPORT COMMUNICATIONS AMERICA, LLC - MO |
| 26. 775 417 9939 | 2023-09-18 at 12-46-14 | ONVOY, LLC - NV |
| 27. 818 200 2781 | 2023-09-18 at 13-00-06 | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - CA |
| 28. 724 218 6295 | 2023-09-18 at 14-18-24 | TELEPORT COMMUNICATIONS AMERICA, LLC - PA |
| 29. 318 569-1881 | 08/21/2023 03:51 PM | ONVOY, LLC - LA |
| 30. 214 983-5162 | 09/07/2023 12:44 PM | **PEERLESS NETWORK OF TEXAS, LLC - TX** |
| 31. 317-497-7600 | 05/26/2023 05:42 PM | GLOBAL CROSSING LOCAL SERVICES, INC. - IN |
| 32. 239  510 3693 | 2023-09-21 at 16-14-01 | ONVOY, LLC - FL |
| 33. 209 693 4580 | 2023-09-21 at 12-54-23 | T-MOBILE USA, INC. |
| 34. 254 212-3643 | 2023.09.27 19.29.26 | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 35. 254 212-3643 | 09/27/2023 06:00 PM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 36. 601 603 4535 | 2023/09/17 15.21.02 | VERIZON WIRELESS-MS |
| 37. 209 692-4616 | 09/26/2023 12:15 PM | T-MOBILE USA, INC. |
| 38. 209 692-4449 | 09/26/2023 09:31 AM | T-MOBILE USA, INC. |
| 39. 743 235-2337 | 09/23/2023 01:21 PM | NUSO, LLC |
| 40. 201 479-9909 | 10/04/2023 11:05 AM | PEERLESS NETWORK OF NEW JERSEY, LLC - NJ |
| 41. (310) 974-8478 | 11/04/2023 02:13 PM | MCIMETRO ACCESS TRANSMISSION SERVICES LLC - CA |
| 42. (228) 262-9088 | 11/08/2023 12:47 PM | NUSO, LLC |
| 43. (203) 580-9313 | 11/07/2023 05:48 PM | PEERLESS NETWORK OF CONNECTICUT, LLC - CT |
| 44. (203) 580-9313 | 2nd-11/07/2023 05:48 PM | PEERLESS NETWORK OF CONNECTICUT, LLC - CT |
| 45. (406) 500-5722 | 11/07/2023 04:22 PM | FRACTEL, LLC |
| 46. 915 292 2835 | 2023-11-17 at 19-33-37 | ONVOY, LLC - TX |

PLAINTIFFS
EXHIBIT
2

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optimum.net
Tel: [201] 767-8153

| | |
|---|---|
| **Richard M. Zelma**<br>**Plaintiff**<br>**Vs.**<br>**Michael Peter Halperin,** ("**Halperin**") **Individually, as owner, manager, founder and director of HFA Holdings LLP., d/b/a, IP Horizon Inc.,**<br>  **and;**<br>  **Michael Peter Halperin, d/b/a HFA Holdings LLP. ("HFA"), a/k/a, d/b/a, IP Horizon Inc., SkyeTel, Call48, MHLHTH Holdings LLC., and all of Halperins currently unknown shell companies**<br>  **and;**<br>  **DOE Telemarketers (1-20), ABC Corporations' (1-20), Resellers, Call-Centers, working with, benefiting from, participating in, affiliated or doing business with the named Defendants'; (Hereinafter "the Halperin Defs'.), each acting individually, in concert or as a group.**<br>**Defendants'** | **SUPERIOR COURT OF NEW JERSEY**<br>**BERGEN COUNTY**<br>**LAW DIVISION**<br><br>**Docket No.: BER-L- 5354-23**<br><br>**PLAINTIFFS 1st AMENDED COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES for VIOLATIONS of**<br><br>**THE TELEMARKETING SALES RULE, 16 C.F.R. §310;**<br><br>**THE TELEPHONE CONSUMER PROTECTION ACT of 1991, 47 U.S.C. §227;**<br><br>**THE NEW JERSEY NO CALL LAW; N.J.S.A. §56:8-119, codified under (N.J.A.C. §13:45D-3.1);**<br><br>**STATUTORY TREBLED DAMAGES and PERMANENT INJUNCTIVE RELIEF** |

## I. <u>INTRODUCTION</u>

1

Plaintiff, Richard M. Zelma, by way of this First Amended Complaint against the above captioned Defendants, including the remaining unknown Doe and ABC Corporations, telemarketers and call-centers, says as follows:

1. This suit is brought pursuant to applicable authorities; The Telemarketing Sales Rule (TSR) 16 CFR §310 *et seq*; The Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§206; 217; 227(b)(1)(B); (b)(3) & 227(c) (5), and the New Jersey No Call Law, Codified at N.J.S.A. §56:8-119 *et seq*; it's underlying regulations, N.J.A.C. §13:45D, which prohibit[s] unsolicited telemarketing calls to New Jersey residents who registered their telephone numbers on the Federal No-Call-List administered by the Federal Trade Commission. (The DNC Registry)

2. As noted above, both Federal and State laws prohibit Telemarketing calls, RoBo calls, marketing calls including those introduced with prerecorded messages, VoIP provided telemarketing as well as calls to fax machines, made to residential or mobile phone lines.

3. Telemarketing to consumers who registered their phone numbers on the FTC no-call-list, where such calls are initiated, either manually dialed and/ or through the use of any automated telephone dialing system (ATDS), automatic dialing and announcement device (ADAD, including speed dialers, predictive dialers, auto-dialing platform systems or any method that a

reasonable person would define as '***dialing a phone number to a specific party, absent human intervention***', is strictly prohibited. ((47 U.S.C. § 227 (b)(1)(B))

**4.**        Automatic Dialing by any means adds to the problem, being considered a support platform while having the capacity if needed, to store, produce, harvest or generate telephone numbers in the thousands and initiate calls to such numbers in minutes.

**5.**        This program or device can also acquire numbers algorithmically and / or surreptitiously without the consent or knowledge of a subscriber.

**6.**        These devices can capture a consumer[s] number and likewise, at any predetermined time under the control of its user, is capable of calling well over thousands of numbers either randomly, sequentially and /or from a stored database at any time, decided by the person having control and/ or usage of such dialing equipment. *See:* 16 C.F.R. § 310.4(b)(1)(v)

**7.**        As set-forth below, Plaintiffs Exhibits of Call-Records specifically provided by his carrier, Optimum/Altice, serve to clearly identify, illustrate and evidence the time and date in which the Halperin Defendants engaged, initiated, participated, provided a platform (service), assisted, controlled, routed and delivered **EIGHTY-ONE [81]** illegal robocalls, directly or routed indirectly to Plaintiff's two land-lines, received since the beginning of May 2023.

3

**8.**         The volume of prohibited calls initiated by the Halperin Defendants or calls which they participated in either directly or remotely, provided a platform for their clients to use, among other services, Sound Board technology, a program or device which contains short prerecorded introductions, prerecorded messages, along with prerecorded common responses if necessary and used on the called party. [1]

**9.**         This ancillary program used by or under the direction and control of the defendant owner[s] or agent[s], is prohibited under the TCPA unless express written consent is granted, "prior" to each such call. [2]

**10.**       When combined with the prohibited solicitation[s] themselves, the prerecorded messages becomes a separate and distinct violation to the TCPA, embodied within 47 USC §227 (b)(1)(B) *__Id.__*

**11.**        This prohibited use of the prerecorded message system was intentionally used and willfully incorporated into the subject calls enumerated below, absent Plaintiffs prior express written consent.

**12.**       Defendant Michael Halperin ("Halperin") and the various shell companies he operates under (collectively, the "Halperin Defendants"), participated in, assisted, provided facilities, platforms and mediums for their clients, including the DOE Defendants, to commence with their illegal calling

---

[1]         **Soundboard, or avatar, technology is used by telemarketers to provide a more interactive experience (as compared to entirely prerecorded calls) for their call recipients. When a telemarketer places a call using soundboard, the telemarketer is present for the entirety of the call. As compared to a completely prerecorded call, soundboard technology enables telemarketers to respond to call recipients in real time by playing one or more prerecorded responses.**

[2]         **In a May 12, 2017 decision, a D.C. Circuit Judge upheld the Federal Trade Commission's ("FTC") staff opinion that telemarketing calls utilizing soundboard or avatar technology should be treated the same as robocalls under the Telemarketing Sales Rule ("TSR").**

campaign in numerous ways. *First,* Halperin made it possible for the Telemarketers and other clients to spoof Caller ID information by supplying them with a quantity of phone numbers that would appear on consumers' phones or Caller ID devices when the called parties received telemarketing calls. *Second,* the Halperin Defendants provided the Telemarketers and other clients the ability to choose (and change) their calling numbers displayed on the recipients Caller ID since some of Halperins customers called Plaintiff more then once. *Third,* the Halperin Defendants helped fund the Telemarketers' and other clients' robocalling campaigns by sharing in "dip fees" generated every time a consumer's phone carrier had to look up the Caller ID number used by Halperin or his clients. *Forth,* Upon information and belief, Plaintiff is of the opinion Halperin uses a municipality of shell companies to deflect liability for TCPA violations and cloak the "dip fees" he collects. [3]

13.    To date, Halperin individually, along with his co-defendants, (the Halperin Defendants) accepted foreign traffic, participated in, initiated, controlled, directed, routed and profited from the Eighty One [81] subject calls.

14.    Accordingly, the Halperin Defendants, using Halperin's own numbers as Caller ID in each of the Eighty One [81] prohibited calls, willfully violated an FTC Order, knowingly accepted foreign traffic, provided a platform and

---

[3]    **Caller Name Presentation (CNAP) or Caller Name Delivery (CNAM) is used in US-based telephone networks to provide name identification of the calling party. The CNAM information is most often displayed in Caller ID. The information could be the person's name or a company name. The caller's name can also be blocked and display "restricted", or if technical failures occur "not available".**
**In the US, the caller's name, or CNAM information, is not sent during a call. Rather, the terminating carrier is responsible for providing the Caller ID information to its customer. The terminating carrier must perform a lookup and pay a small "dip fee" to the carrier hosting the information. Wholesale rates for the fee are on the order of $0.002 to $0.006 per database dip ($200 to $600 per 100,000 calls).**

other services thereto, to enable, originate, disseminate, initiate, assist, control, route and engage in illegal telemarketing/robocall traffic, directly or indirectly and to aid and assist the DOE defendants to initiate the subject calls, knowingly or willfully did so in violation of the aforementioned statutes, in direct violation to the FTC Cease & Desist Order.

15.     Despite making repeated no-call requests to the Halperin callers, including cautionary emails direct to Halperin himself, Halperins clients  and customers continued to call. (The exact amount of calls to be determined through continuing discovery)

## II.     PARTIES
### PLAINTIFF

16.     Richard M. Zelma (hereinafter, "Plaintiff" or "Zelma"), a senior citizen, resides at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648 and the subscriber to the two [2] subject phone numbers.

17.     As used herein, any reference to "Plaintiff" shall mean Plaintiff Richard M. Zelma.

18.     Plaintiff is a natural person as defined under 47 USC §153(39).

### DEFENDANTS

19.     Defendant Michael Peter Halperin, (Hereinafter "Halperin" or "Defendant"), currently resides at 5820 Harrington Way, Boca Raton, FL 33496-2511 and may be personally served at that location.

**20.**       Halperin is a natural person as defined under 47 USC §153(39).

**21.**       Co-Defendants IP Horizon, Call48, SkyeTel, and MHLHTH Holdings LLC and HFA Holdings LLP (Hereinafter "HFA", "The Halperin Defendants" and/or "HFA Holdings"), are part of Halperin's many alter-ego shell company's under the HFA umbrella.

**22.**       Upon information and belief, all of the Halperin Defendants are believed to be Shell Companies, having no locatable brick and mortar facility for any equipment or data center or the like.

**23.**       The entity currently identified through incoming call data, directly connected to the receipt of Plaintiffs unlawful calls is IP Horizon, the entity Halperin uses to provide VoIP services to clients and the name appearing on Plaintiffs "Carrier Information" as the initiator of the subject calls.

**24.**       IP Horizon is located at 902 Clint Moore Road, Suite 206, Boca Raton, FL 33487.

**25.**       This location, identified and provided by Halperin as his business location, is simply a mail drop.

**26.**       Halperin Defendant IP Horizon, is listed with the FCC as a Common Carrier, registered as of 4/3/2023 and assigned 499 Filer ID Number: 832540.

**27.**       Halperin registered IP Horizon under the Principle Communications Type description as: Interconnected VoIP and states: The Jurisdictions in Which the Filing Entity Provides Telecommunications Services: Florida.

**7**

28.      IP Horizon (one of the entities under HFA Holdings LLP.,"The Halperin Defendants") is one of many "shell companies" and alter-egos Halperin uses in the dissemination of various telemarketing and call-center services.

29.      For purposes of this litigation and as used herein: "Halperin", "IP Horizon", "The Halperin Defendants", "The DOE Defendants" or "Others", shall all have a common relationship to the other and all considered Defendants in Common. They may be referred to individually, collectively or as a group, including the term, "Halperins other shells", where liability alleged or described, is applicable to the each entity or entities, whichever best meets the specific definition, statement or allegation within this complaint.

## III.    <u>JURISDICTION AND VENUE</u>

30.      Plaintiff does not seek This Courts jurisdiction over The Telemarketing Sales Rule, (TSR) 16 <u>C.F.R.</u> §310 *et seq.,* or the FTC's choice to impose penalties upon the Defendants.

31.      Plaintiff references the TSR to address its proscriptions relative to the Defendants actions, the gravity and depth of each such violation and the severity of the defendants exposure to willful, knowing or defiant prohibited conduct.

32.      As such, This Court may, under the proscriptions defined within the TSR and at The Courts discretion, seek guidance, candor or obligation to award

Plaintiff Punitive Damages, in the spirit of deterrence, in addition to mandatory Statutory damages, material to each violation of the TCPA and State agencies, under 47 U.S.C. §227 and 47 C.F.R. §64.1200(d) for which Plaintiff seeks relief.

33.     This Court has jurisdiction over the facts giving rise to this Complaint which had their primary effect in the County of Bergen, State of New Jersey.

34.     This Court has general, specific and subject matter jurisdiction under authority of N.J. Rev. Stat. N.J.S.A. §§56:8-128 (b) & (d), (2013); and N.J.A.C. §13:45D-4.1, as Defendants repeatedly and purposely violated those proscriptions by initiating telemarketing calls to solicit Plaintiff in this County and State.

35.     As further set out below, the Defendant's and each of them made a conscious decision knowing they would be violating both State and Federal Law, by purposely, assisting, controlling, provisioning and intentionally extending their market into the Forum State.

36.     The Defendants and each of them situated themselves in The Forum State by directing, controlling and enabling the prohibited activities, by either performing these acts themselves, or in direct violation to the March 2023 Cease & Desist issued by the Federal Trade Commission, willfully, knowingly or repeatedly extended their services to 'others', engaged in unlawful or prohibited telemarketing.

**9**

37.      The Defendants and each of them acted in direct concert with 'others' and profited from all services they provide, addressed herein. By initiating the subject calls directly or routing through various mediums, products, services, programs or equipment, the Defendants made it possible where the subject calls were initiated and delivered to both of Plaintiffs residential land-lines, registered on the FTC Registry since 2003, into The Forum State, annoying Plaintiffs household, consuming his time for the Defendants own financial gain. *Id.*

## IV.    ACTS OF AGENTS

38.      Whenever and wherever it is herein alleged that the Defendant[s], either individually, in concert with others or as a group, did any act defined, described or set-out below, it is meant the Defendant[s] and each of them performed, caused to be performed and/or participated in the act[s] and/or that Defendants officers, owner[s], member[s], managing members, partner[s], employees, contractors, successors, assigns, predecessors, affiliates, or 'other' agent[s], performed or participated in those acts on behalf of, for the benefit of, by authority or direction of the Defendant[s] and each of them profiting thereby under Agency.

39.      The Defendants and each of them, acted as agents to each other. Each Defendant acted in concert with the other, bearing ultimate, constructive or vicarious liability. These wrongful acts were committed by an officer, employer, partner, principal, owner, manager, director, employee or

(Plaintiffs First Amended Complaint)

agent of the Defendants, acting within the scope of their employment or agency, where the employer or other person had the ability to control the employee or agent but failed or refused to do so.

40.      Plaintiff is informed, believes and on that basis alleges that at all times herein mentioned, Defendant Halperin was an agent of HFA and the Halperin Defendants, where the DOE Telemarketing Defendants were the agents of Halperin and sub-agents of HFA and at all times described herein, were acting within the course and scope of such agency, service, employment and/or joint venture, promoting and profiting from the calls, products or services of their respective customers and where each Defendant ratified, approved and authorized the acts of each of the remaining defendants with full knowledge of said facts.

41.      The Defendants, and each of them, aided, abetted, encouraged and rendered substantial assistance to the other Defendants, including the DOE Defendants. By willfully participating, directing, profiting, approving and/or controlling such action as alleged herein, to aid, abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with a knowing consciousness of their primary wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing directly or by others.

**42.**          The Defendants and each of them knowingly and willfully conspired; knowingly and willfully did the acts and things herein alleged pursuant to this conspiracy as well as knowingly, willfully and repeatedly violating both federal and state law. The Defendants and each of them were complicit and  defiant to the March 2023 Order given them by the Federal Trade Commission.

## V.  <u>PLAINTIFF'S FACTUAL ARGUMENT</u>

**43.**          Plaintiff resides in a private residence where he maintains two land-line numbers [201] XXX-8153 and [201] XXX-8154 for over 40 years.

**44.**          Plaintiffs numbers were, are and remain placed upon the Federal Trade Commissions no-call-registry since 2003. (The DNC Registry)

**45.**          Plaintiffs no-call request is mirrored with the New Jersey No-Call-Registry as well.

**46.**          Plaintiffs purpose and objective registering his phone number[s] on both Registries was to make-notice to potential call-centers and telemarketers, ***en masse***, where he vehemently objects to the receipt of any telemarketing calls!

**47.**          Plaintiffs two land-line numbers [201] XXX-8153 and [201] XXX-8154, have also been registered and protected against Robo calls (prohibited telemarketing calls) with the Telephone Science Corporations call

blocking program, "Nomorobo", a service in which Plaintiffs carrier Optimum incorporated in October 2013.

**48.**        Thus, by taking advantage of all available services, registering his phone number with those services, Plaintiff provided notice to any and all entities engaged in, facilitating, providing a platform or services, for carrying content by, for or from any call-center or telemarketer; who directly or indirectly participate, profits from calls or messages, for, from, by, forwarded, routed, transferred, or in concert with other entities, are strictly prohibited by law from soliciting or calling Plaintiff since 2003 and 2013 respectively.

**49.**        Plaintiff never had any relationship, business or otherwise with any defendants to this day.

**50.**        Plaintiff never heard of the Defendants.

**51.**        Plaintiff never sought any products or services from the Defendants.

**52.**        Plaintiff never visited the Defendants websites until and after formulating the initiation of the within matter.

**53.**        Plaintiff never called, contracted or made contact with the Defendants or any or their alter ego's prior to the initiation of this suit.

**54.**        Plaintiff received the calls at issue, answered and responded to each call or captured non-answered calls on voice mail and Caller ID.

**13**

**55.**         To date: Plaintiffs Caller ID captured **Eighty One [81]** prohibited calls. In each of the subject calls, each number was confirmed through various resources including Plaintiffs own carrier, Optimum/Altice, where the captured numbers at issue, belong[ed] to the Halperin Defendants, specifically co-defendant HFA Holdings LLP., d/b/a IP Horizon, the entity owned by Defendant Halperin.

### *The Subject Calls*

**56.**         An exact itemized current list of prohibited calls, relevant to the within dispute is attached herewith and made a part hereof as EXHIBITS-1 & 2].

**57.**         This list is the actual data, captured by Plaintiffs carrier, Optimum/Altice,  created in routing the subject calls to Plaintiff.

**58.**         Examples of the subject calls consisted of overseas lead-generators seeking consumers needing burial insurance (Final Expense Insurance). Other callers sought anyone living at Camp Lejuene between 1963 and 1983 having health issues with the drinking water. While additional callers sought home owners having health issues from using Round-Up Lawn Spray.

**59.**         The Defendants calls were introduced with <u>prerecorded messages</u>,  containing generic claims of extraordinary and unexpected financial enrichment, where thousands of dollars might possibly be awarded for the above injuries. ***Infra.***

**14**

**(Plaintiffs First Amended Complaint)**

**60.**        When the subject messages switched to live agents, the pattern and structure of questions sounded pointed and carefully crafted, somewhat as a qualifier, to ascertain if the called party was eligible for the product or service being solicited, a script often used by Lead-Generators.

**61.**        The callers (generally) did not know the identity of the party they called. Occasionally, when (they) asked for a name, Plaintiff offered a variety of pseudonyms, used as a 'Canary Trap' and specific to the product being solicited.

**62.**        By doing so, Plaintiff was able to retain some association to the number of times a specific call was received soliciting the same product or service.

**63.**        If 'a' repeat caller, initially given a pseudonym called again, Plaintiff would incorporate a 'controlled buy' into conversation, a form of showing interest in the product or service, in hopes of gathering further information previously refused by that caller.

**64.**        In these instances however, the calling agents were thoroughly trained to avoid providing any "required" identity information. Instead they offered false American names and misleading location information, claiming to be located in this country, sometimes claiming Florida or Texas, but refused to provide any call back number.

**65.**        Often, if plaintiff insisted on such identity information, the caller would comment "***they were prohibited for security reasons***" from

**15**

disclosing any identity, or, alternatively, would simply disconnect the call. At times, some (live) callers speech could not be understood. If asked too many times to repeat the[ir] statement, they would disconnect the call as well.

66.       At other times following the prerecorded introduction, Plaintiff would ask the live agent why his caller ID displayed (as example), the name "Joe's Restaurant" while (the caller) was soliciting discount burial insurance? Those callers, having no feasible answer would disconnect the call, while others would claim "the auto-dialer assigns the name"!

## VI.   DEFENDANT HALPERIN (INDIVIDUALLY) a/k/a, d/b/a THE HALPERIN DEFENDANTS, including Shells, Corps and LLC's, FACTUAL BACKGROUND

67.       Upon information and belief, Michael Peter Halperin ("Halperin") is a licensed investment advisor with Merrill Lynch, Pierce, Fenner & Smith Incorporated.

### *Halperins Side hustle.*

68.       On March 15, 2022, Halperin registered IP Horizon with the State of Florida as an LLC under HFA Holdings, showing Halperin as a managing member.

69.       On March 12, 2023, Halperin changed the registration showing HFA Holdings as manager and Halperin as its Chief Executive Officer.

70.       On April 4, 2023, Halperin registered IP Horizon with the FCC

**16**

(Plaintiffs First Amended Complaint)

as a Voice over Internet Protocol (VoIP) service provider[4] and was assigned Filer ID No.:832540, identifying Defendant Halperin as its Chief Executive Officer.

**71.**      The FCC 499A Form shows IP Horizon registered as a Common Carrier,[5] therefore a Platform Provider, Provisional Provider and/ or Gateway Provider, but does not identify a genuine place of business except a mail drop! *Id.*

**72.**      Halperin's other shell company, Defendant HFA Holdings, (HFA) is registered on FCC 499A Form as Filer No.:833177, categorized as a competitive local exchange carrier.

**73.**      The Halperin Defendants, are by their very nature, "telemarketers" as that term is defined under N.J.A.C. §13:45D-1.3;

> "Telemarketer" means any entity who makes residential telemarketing sales calls to a customer when the customer is in New Jersey, whether the entity is an individual proprietor, corporation, partnership, limited liability corporation or any other form of business organization, or if not formally organized, any person who directly controls or supervises the making of residential telemarketing sales calls whether on behalf of itself or others.

---

[4]      47 CFR § 64.6300 (n) *Voice service.* The term "voice service"(1) Means any service that is interconnected with the public switched telephone network and that furnishes voice communications to an end user using resources from the North American Numbering Plan or any successor to the North American Numbering Plan adopted by the Commission under section 251(e)(1) of the Communications Act of 1934, as amended;. . ."

[5]      **47 U.S. Code § 153 (11):** Common carrier; "The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire . . ."
(51)Telecommunications carrier; "The term "telecommunications carrier" means any provider of telecommunications services, except that such term does not include aggregators of telecommunications services (as defined in section 226 of this title). A telecommunications carrier shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing telecommunications services . . ."

**17**

**74.**        Defendants Halperin and IP Horizon are in the business of providing among other things and not limited to; VoIP, Voice API technology and SIP termination. (The Halperin Services).

**75.**        Halperin knowingly used, sold, shared, provided or rented his services including phone numbers to clients, customers and unidentified overseas entities, where, in violation of the Telephone Consumer Protection Act (TCPA), Halperins services aided in facilitating the carriage and dissemination of prohibited robocalls into this country. (See: FCC Form 499A, IP Horizon; Filer ID No.: 832540; Principle Communications Type: Interconnected VoIP)

## VII.   <u>HALPERIN RECEIVES CEASE & DESIST FROM FTC</u>

**76.**        On March 17, 2023, The Federal Trade Commission issued a Cease and Desist Order to Halperin that identified unlawful calls made through his facilities, between September 7, 2021 and February 4, 2023. *<u>Id.</u>* **[EXHIBIT-3]**

**77.**        Starting April 11, 2023, Halperin was prohibited from accepting traffic from foreign providers not listed in the RoBo Mitigation Database. (RMD).  [***See:*** FCC DOC-397737A1]

**78.**        Indeed: carriers submitting certifications, including their robocall mitigation plans to the RMD must comply with this ruling.

**79.**        Halperin intentionally ignored the March 2023 FTC letter and continued in his unlawful act of accepting, routing and delivering calls from foreign entities not listed in the RMD to others, including Plaintiff.

(Plaintiffs First Amended Complaint)

**18**

**80.**         Plaintiff commenced documenting the subject calls in May 2003. Pending extensive Discovery and the acquisition of Defendants authenticated phone records from all clients, customers, including users of his numbers, independent Telecom carriers, PSTN Carriers and others he subscribes or engages in business with, Plaintiff anticipates finding additional calls which may precede those provided and described herein as Exhibit 1&2 and may exceed the total amount received, documented and captured.

**81.**         Halperin chose to ignore the March 2023 FTC Order along with that of other agencies and continues to this day trafficking, routing and delivering calls using his various companies for his own financial gain and in violation of the proscriptions sited within this complaint.

### *Halperin knew his numbers would be used for unlawful purpose.*

**82.**         Halperin failed to monitor excessive usage over his network and knew or should have known his numbers were being used for unlawful purpose.

**83.**         Halperin self describes his business as a "non-gateway" VoIP provider, a/k/a, intermediate provider, while technically they are one and the same. *Id.*

**84.**         IP Horizon, a Halperin owned and controlled company, "*is a nationwide provider of Voice over Internet Protocol (VoIP) services*."

**85.**         VoIP is technology that allows a person to make voice calls using a broadband internet connection as opposed to a regular (analog) phone

line. In other words, VoIP calls are phone calls that are sent over the internet.

> **(See: FCC;** *Seventh Report and Order, Eighth Further Notice, and Third Notice of Inquiry;* **CG Docket No. 17-59-WC Docket No. 17-97, ¶2, FN-1)**

86.     Noted on part of his website, Halperin's VoIP services include "origination" services. The FCC defines "Origination" as; beginning the transmission of a call from the telemarketer or company which initiated the call.

87.     Halperin also serves as a mid-stream provider, transmitting calls from and to other VoIP providers. The FCC defines "voice service provider" as any entity originating, carrying or terminating voice-calls through time-division multiplexing (TDM).

88.     As a VoIP provider, Halperin can use Application Programming Interface (API). Halperin can connect internet-based applications to the Public Switched Telephone Network (PSTN) which creates artificial or prerecorded voice messaging for call services, recognizing speech and can record calls.

89.     Upon information and belief, the Halperin Defendants provide Session Initiation Protocol "(SIP) termination", the process of sending phone calls from one provider to another Public Switched Telephone Network (PSTN).

90.     Halperin also claims to provide Direct Inward Dialing (D.I.D.). D.I.D. numbers can route calls to any phone, including voice-over-IP (VoIP) phones, mobile phones and landlines. The feature is often used with call forwarding services so that calls can be routed to a person or department, no

matter the[ir] location.

**91.**        As a telemarketing concern, this service allows call-centers or telemarketers to evade detection and identification when using Halperins services and pool of dedicated D.I.D. numbers, where his clients can further alter their location and hide their true identity.

**92.**        Halperin subscribes to millions of phone numbers from various larger Carriers, also known as '<u>operators</u>' or 'Public Switched Telephone Networks' (PSTN), *e.g.* Verizon, AT&T, etc.

**93.**        As example: On May 31, 2021, Defendant HFA Holdings, a/k/a HFA Services LLC d/b/a Call 48 ("HFA Services"), entered into a final agreement with Blitz Telecom Consulting, LLC ("BTC"). At one time, Halperin had an ownership interest in BTC.

**94.**        Upon information and belief, Blitz, through its parent company Exiant Communications, ported **OVER TWO MILLION** telephone numbers, purchased by HFA Holdings through established protocols with the assistance of a third party vendor to which Halperin paid an exorbitant amount of money.

**95.**        The foregoing posit defines and illustrates Halperins prohibited capabilities, originating, carrying, or terminating voice-calls, and specifically what the FTC ordered Halperin <u>to stop</u>, (*See:* FTC Cease & Desist, March 2023) attached hereto and made a part hereof as [EXHIBIT-3]

### VIII.  <u>HALPERIN KNOWINGLY SUPPORTED PRERECORDED MESSAGES DURING THE INITIATION OF EACH CALL.</u>

**21**

96.         Halperin knew or should have known his direct participation, his services and facilities would be used in the harassing calls, his warning from the FTC to stop, but intentionally chose to do nothing.

97.         It is a clear and distinct violation of the TCPA to introduce marketing calls to residential land-lines with prerecorded or electronically generated voice messages or announcements, using soundboard or similar technology in the course of initiating such calls. (***See:*** 47 U.S.C.227(b)(1)(B))

98.         At all times material and relevant to this dispute, as Plaintiff responded to the subject calls, an audible 'bloop' tone was heard following Plaintiffs completed greeting of "hello".

99.         The 'bloop tone' was the auto-dialers data transfer signal sending the call to the next available call-center agent.[6]

100.        If a live agent was unavailable or soliciting another consumer, that same call would simply disconnect, only to be re-dialed shortly after. ***Id.*** [@ Plt EX-1&2]

101.        Nonetheless; a call initiated, routed, carried and terminated to its destination, where caller ID data is generated, where the originator of such call receives the "Call Complete Signal" following each call initiated, is

---

[6]   When person answers a robo-call, the callers auto dialer such asterisk, vicidial or other dialers, execute a sound following the persons greeting, and will introduce a sound like a "bloop"...This is an audible indication at both ends of the call to indicate a party has answered the call and triggers the callers dialer, in this matter to proceed with the prerecorded message. Plaintiff is a retired system technician from AT&T holding several large credentials in this area.

(Plaintiffs First Amended Complaint)

22

considered a completed call and actionable under the federal and State no-call-laws, whether or not conversation ensues. (*See: 47* USC §223 (a)(1)(C).

**102.**         If a live caller responded following the transfer signal, they introduced themselves with the same American name used in the preceding prerecorded message; "*Hello: my name is Adam, how you doing today (*pause*) that's good to hear. The reason for my call is to ask if. . ."* (contained prerecorded subject matter).

**103.**         The TCPA (The statute) prohibits <u>any person</u> from initiating "<u>any telephone call</u> to <u>any residential telephone line</u> using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party." *__Id.__* §227(b)(1)(B).

**104.**         Therefore: Plaintiff alleges the following: **(1)** the Halperin defendants called Plaintiffs residential phone lines, both listed on the FTC Registry since 2003, in which Plaintiff responded or his voice mail grabbed the call, being documented and marked for evidence [Plt. EX-1&2]; **(2)** The Defendants used various technology to produce an artificial or prerecorded voice message during the introduction of the subject calls, and **(3)** The Defendants having prior Orders from the FTC to Cease & Desist initiating or participating in these subject calls, willfully or knowingly set forth and defiantly continued to initiate such calls without Plaintiffs prior express written consent. *__Id.__*

**105.**         At the commencement of the defendants prerecorded announcement[s], following the first few words of their introduction, Plaintiff

initiated a comment such as "*are you a robot*" and repeatedly interjected that comment.

**106.**     In each of those calls, plaintiffs question went un-responded as the voice being heard continued in its same rhythmic pattern, indicative of and confirming those greetings were prerecorded messages.

**107.**     Plaintiff observed the (recorded) callers voice tone, inflection, pronunciation, the generic content of the voice message, the robotic sounding clarity, rhythmic cadence and normal monotone clear volume level audio, with absolutely no background noise.

**108.**     The lack of human response, interaction, hesitation or pause when attempting to ask if the 'person' calling was a robot, along with the foregoing speech pattern, clearly indicates these were prerecorded messages.

**109.**     On multiple occasions shown by Plaintiffs Call Detail Records, blocks of calls were often received on the same day in close proximity to others, thereby revealing "identical [prerecorded] messages". (**See:** Plt. EX-1 & 2]; For example: ***See also:*** Calls to 8153; Ln.#'s- 4&5; 8-15; 17-19 and Calls to 8154; Ln.#'s 4-8; 10-15; 16-32; 33&34; 36&37; 38&39; 50&51 and 53&54.)

**110.**     Following the completion of the prerecorded announcement[s], a slight change in audio level was noticeable when a "live" agent came on line and continued the solicitation, introducing themselves with a generic American name.

**(Plaintiffs First Amended Complaint)**

24

**111.**          As that happened, loud conversations of multiple agents could be heard in the background, often making it near impossible to hear or understand the live agent.

**112.**          The TCPA states in relevant part under 47 USC §227 (b)(1)(B):

> **(b) Restrictions on use of automated telephone equipment**
> **(1). . .**
>
> **(A). . .**
>
> **(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.**

**113.**          Delivering or introducing a call to a residential number on the DNC list, using a prerecorded message or artificial voice without prior express written consent, violates the statute. (47 USC §227 (b)(1)(B))

**114.**          Plaintiff never provided any form of prior express written consent for Halperins prerecorded calls.

**115.**          Upon information and belief, an "API Provider" to which Halperin qualifies, can program a robocall with an artificial voice that is delivered through VoIP technology to consumers' telephones and simultaneously record the content of such call.

**116.**          Halperin and his clients initiated those prerecorded messages without obtaining prior express written consent from Plaintiff and by using soundboard technology such as Asterisk, Avatar or similar programs, thereby violated the terms of the TCPA; 47 USC §227 (b)(1)(B). [**Id. @ FN.1 & 2**]

(Plaintiffs First Amended Complaint)

**117.** Each prerecorded message Plaintiff received, violated the provisions of the New Jersey no call law; (N.J.A.C. §13:45D-3.1)

**118.** Each prerecorded message received was in direct violation to the terms of the New Jersey Consumer Fraud Act; (N.J.S.A. §§56:8-128 (a)–(d)]

**119.** Each prerecorded message received violated the provisions 47 C.F.R. §64.1200(d)(4), by failing and refusing to identify "the individual caller, company name, and a contact telephone number or address."

> "FCC regulations require telemarketers to implement the following standards: Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges."

**120.** As further noted: 47 C.F.R. §64.1200(d) is expressly applied to "all telemarketing calls, whether prerecorded or live; whether made individually or through a system". *See:* (*Lifestation,* 2021 WL 5358876, at *15.) [***See also****: Worsham v. Discount Power*, No. RDB-20-0008, 2021 WL 3212589, at **1–2 (D. Md. Jul. 29, 2021). (Mem. Op., (ECF No. 80)

**121.** The Halperin Defendants and each of them are therefore liable along with the currently unidentified Doe Defendants, for violating the terms of 47 USC §227 (b)(1)(B); 47 C.F.R. §64.1200(d); *et seq,* (N.J.A.C. §13:45D-3.1) and (N.J.S.A. §§56:8-128 (a)–(d)] by initiating, introducing and incorporating prerecorded messages at the beginning of each of the subject calls material to the within dispute.

**122.**       At all times relevant, the Defendants and each of them failed or refused to register their intent to solicit into the State with the New Jersey Division of Consumer Affairs. [N.J.S.A. §§56:8-121(a)(&(b))

**123.**       As set-out below, the Halperin Defendants individually or in active concert with others, aided in the delivery of prerecorded messages to Plaintiff's two land-lines, (currently totaling) eighty one [81].

**124.**       These prohibited/ violative calls were willful and the Defendants did so absent prior express written consent from Plaintiff.

**125.**       The Defendants violated Plaintiffs prior no-call request through the FTC no-call registry; violated the New Jersey no-call-law and regulations and repeatedly called even after being told not to.

**126.**       Halperin thereby violated the proscriptions under 47 U.S.C. §§227(c)(5)(C) and (b)(1)(B). (The exact amount of calls to be determined through continuing discovery)

### IX.   HALPERIN VIOLATED THE COMMUNICATIONS ACT OF 1934 (TCPA) SEC. §206. CARRIERS' LIABILITY FOR DAMAGES

**"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." (See: TCPA - U.S. Code; Title 47; Chapter 5)**

127.        The Halperin Defendants are Common Carriers registered with the FCC as such and knowingly provided substantial assistance to others, acting in concert and knowingly accepted overseas calls, facilitated the transmission, delivery and services requested by their clients to disseminate millions of unlawful telephone calls to residents across this country, including Plaintiffs' jurisdiction.

128.        Halperin and his clients initiated calls to both residential and cellular telephone lines without the prior express written consent of the called parties.

129.    Halperin knew or should have known the volume of calls traversing his system would indicate his subscribers were engaged in telemarketing.

130.    Halperin chose to ignore or turned a blind eye, knowing he was providing assistance to overseas entities in which the previous FTC demand letter specifically prohibited him from doing so.

131.        Halperin willfully allowed, knowingly permitted, directed, routed, controlled and profited from the prohibited calls initiated to Plaintiffs landlines including other call recipients, knowing Plaintiffs numbers were listed on the DNC Registry since 2003.

132.        Through a prior Subpoena: Halperin identified only seven (7) entities in which "he" points the finger, claiming "they" will have information on the actual caller.

**133.**      In reaching out to each, only three (3) responded with little to no information.

**134.**      Ironically, while Halperin claim[ed] the seven entities were located in this country, through diligent research, all were found to be using mail drops in the US while physically located overseas.

## X.      HALPERIN IS LIABLE UNDER 47 U.S.C. §217

**135.**      The FCC provides a mandate to Common Carriers;

### 47 U.S. Code §217

**"In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."**

**136.**      Halperin individually, by and through the Halperin Defendants, is registered with the Commission as a Common Carrier. Therefore, Halperin is a Common Carrier!

**137.**      The Communications Act of 1934, in its basic provisions, is a classic regulated-industries statute, envisioning federal supervision of most of a communications carrier's operations.

**138.**      The 'Act' requires interstate common carriers to file with the Federal Communications Commission tariffs, that show all of the carrier's charges for and practices relating to its services. 47U.S.C. § 203.

**29**

**139.** The carriers "charges, practices, classifications, [and] regulations" must be "just and reasonable" (47 U.S.C. § 201(b)) and can not be discriminatory (§ 202(a)).

**140.** Plaintiff anticipates where Discovery into the Defendants charges and practices relating to its services will be dispositive facts supportive of Plaintiffs allegations.

**141.** At one time, in an email (to Plaintiff) Halperin claimed he only provides Direct Inward Dialing (D.I.D.) services. Yet, he did not register that service with the FCC.

**142.** The Telemarketing Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or practices;

### *Assisting and facilitating*

**"It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule."**

**143.** As a Common Carrier, Halperin knew, should have known or consciously avoided knowing, he was accepting traffic, providing substantial assistance or support to nefarious off-shore call-centers and telemarketers.

**144.** The TRACED Act required the FCC to mandate the STIR/SHAKEN caller identification framework, under which Plaintiffs carrier (Optimum) confirmed that the entity routing the calls to Plaintiff, IP Horizon, is

and was the party Plaintiffs carrier charged for the carriage, routing and passing of each such call.

145.     Upon information and belief, as noted above, STIR/SHAKEN enables phone companies to verify that the caller ID information transmitted with a call matches the caller's real phone number where that number *'is'* in service at the time of each such call.

146.     While Halperin made false and misleading claims to Plaintiff where the numbers on Caller ID were not in service, Plaintiffs phone provider Optimum/Altice advised their 'carriage fees' are based upon valid working numbers being routed through their system, which therefore, must be in service, not disconnected or remain in a pool of unused numbers. *(See also: TRACED ACT)*;**_Id._**

147.      Accordingly: through the USTelecom's Industry Traceback Group (ITG), HFA/IP Horizon/Halperin originally routed and transmitted the subject calls. Halperin continues to initiate, participate, assist and facilitate this conduct which violates the Telemarketing Sales Rule (TSR) Sections 310.3(a), (c), & (d),

148.     Under that provision, it is unlawful for any person or entity to "provide substantial assistance or support to any seller or telemarketer".

## XI.     DUTY OF CARE

149.      Halperin intentionally continues to rent his numbers to entities among others, he identified in a previous subpoena. In doing so, **(a)**, Halperin

**31**

ignored the Federal Trade Commissions March 17, 2023 Cease & Desist Order; **(b)**, Halperin knowingly accepted and continues to accept foreign traffic by providing foreign, off-shore telemarketers and call-centers the use of his services as well as his numbers; **(c)** Halperin intentionally avoided vetting those entities knowing his services and numbers would be used for prohibited telemarketing activity including nefarious scam calls to numbers listed on the FTC no-call-registry, and **(d)**, Halperin not only profited from others using his services, he likewise profited from the dip-fees associated with his Caller ID provided numbers used, even if they were spoofed and/or the subject calls weren't answered.

**150.**        The Halperin defendants profit from "DIP FEES", an additional source of income they collect for carrying hundreds of thousands of calls through their system. ***Id.***

**151.**        For every call initiated to Plaintiff and others, using Halperins numbers, the terminating carrier of each call pays a DIP Fee to the Halperin Defendants for having terminated (delivered) the subject calls to their intended recipients.

**152.**        Halperin profits from the use of such numbers each time he or his subscribers initiates a call using his number as Caller ID, often a million times per day per number.

**32**

## XII.   ALTERNATIVE LIABILITY

**153.**          The allegations described in Plaintiffs complaint along with the detailed exhibits from authoritative sources is sufficient to impose liability for the within violations directly upon the Halperin Defendants.

**154.**          While Halperin provides a municipality of 'shell' LLC's including overseas entities and those in this country, <u>all operating out of a mailbox</u>, the locations of his data-centers remains a mystery.

**155.**          Nonetheless, Halperin cannot escape liability for his affiliation with the prohibited calls. Halperin is the Proximate Cause and passes the" But-For-Test".

**156.**          Plaintiff brings into This Court, all possible defendants including currently unidentified DOE Defendants, where each defendant breached a duty of reasonable care.

**157.**          If it were not for Halperin providing the products or services addressed within this complaint, his clients/customers/subscribers would be forced to seek alternative sources that might meet their needs, e.g., engaging in questionable telemarketing. Perhaps other more law-abiding Carriers would decline such service to those entities. <u>But for</u> Halperin and his LLC's, that issue was resolved!

## XIII.  PROXIMATE CAUSE

**158.**          The Defendants and each of them play[ed] a pivotal role in the dissemination of the subject calls.

159.     While Halperin chooses to evade liability, responsibility and knowledge of those calls, claiming he doesn't initiate calls, does not in and of itself, invite invalidation of liability against him or his cohorts.

160.     Halperin chooses to ignore the FTC Order;

> "*routing and transmitting illegal robocall traffic, directly or indirectly,. . .*";
> "*Further, the numerous trace-back notices directed to Halperin and HFA Services indicate that you are apparently routing and transmitting illegal robocall traffic knowingly.*" "*IF YOU ARE ENGAGED IN THESE ACTIVITIES, THEN YOU MUST IMMEDIATELY CEASE AND DESIST FROM ENGAGING IN THEM.*"
> **[FTC letter - Plt. EX-3]**

161.     Accordingly, with diligent research, background, history and evidence,  Halperin is placed as the common denominator in this conspiracy.

## XIV.   PLAINTIFF SUES HALPERIN INDIVIDUALLY UNDER THE FIDUCIARY SHIELD DOCTRINE, a/k/a CORPORATE SHIELD.

162.     Halperin purposely, intentionally and knowingly guided his company's clients/customers calls into the forum state, or, directed, controlled and instructed his agents and employees to do so, resulting in the course of conduct addressed and set-forth herein, in which he profiting through the use of his company's vast calling programs, features and services.

163.     As stated above, Halperin set up his shell companies and listed them as telephone common carriers, which provide among other services, Voice over Internet Protocol (VoIP) and SIP Termination.

164.     VoIP is the internet-based alternative to the Public Switched Telephone Network. (PSTN) Like PSTN, VoIP has global infrastructure. PSTN

requires both local and global physical infrastructure to function, fundamentally in the form of copper wires while VoIP uses the internet, which at some point, physically connects by copper wire to its terminating end.

**165.** While listing his carrier status with the FCC, Halperin informed Plaintiff he only provides Direct Inward Dialing (D.I.D.) service to his clients but denies he initiates outbound calls.

**166.** Halperins denial, as claimed above, is factually incorrect and conflicts with his marketing material. In part, Halperins promotional material speaks to "Origination" the beginning of a call, the starting point, the initiation of a call.

**167.** Halperin controlled the activation, subscription, rental, use, lease, routing, contents, subject, delivery, initiation and termination of the subject calls.

**168.** Halperin personally performed the above prohibited acts, profited from, by and through those unlawful acts for his own financial gain.

**169.** Plaintiff received the subject calls on the dates illustrated in his Call Detail Records provided by his carrier and identified one of Halperins many company's, IP Horizon as the initiator! _**Id.**_ [EXHIBIT- 1 & 2]

**170.** Upon information and belief, Halperin subscribes to thousands or more idle phone numbers held by various and other operators of the Public Switched Telephone Network. _**Id.**_

**171.** Halperin rents those numbers to others, (subscribers/users,

**35**

clients or customers, call-centers and telemarketers) including lesser known common-carriers, thereby allowing Halperin to profit from such usage.

172.        The 81 "total-to-date" prohibited calls appearing on Plaintiffs Caller-ID sheet, were Halperins numbers, rented to clients and customers, devoid of vetting for the purpose and use of such numbers.

173.        Based upon the Federal Trade Commissions Cease and Desist Order to Halperin, Dated March 17, 2023, [**Id.** @EX-3], the allegations expressed therein along with information Plaintiff obtained from his carrier, Defendant Halperin individually and in active concert with the Halperin Defendants, willfully or knowingly continued to engage in, provide assistance to and aided in unlawful telemarketing by accepting foreign traffic from overseas entities, including generally lead-generators, telemarketers and call-centers, and by doing so, is liable and responsible for each of the subject calls and violations addressed within Plaintiffs complaint.

174.        If applying the "but for" theory, one could conclude that; "but for" Halperin initially, knowingly, continually and unlawfully providing his services along with US phone numbers to questionable overseas entities, the calls specific to the within matter would not have happened.

175.        However, acting on his own free will, Halperin made a calculated decision to ignore the FTC order, ignore or comply with Federal and State no-call-laws, and willfully commenced with the unlawful activity defined and described herein, to benefit his own financial gain, and is jointly and severally

liable for each of the violations resulting therefrom.

176.        Halperin denied initiating the subject calls, while the subject numbers, under his ownership and control appeared on Plaintiffs caller ID along with confirmation from Plaintiffs carrier, that indeed, the calls were delivered by Halperin's company, IP Horizon.

177.        Halperin has not asserted a colorable claim of innocence. "Silence, under these circumstances, is an admission against interest. *State v. Sorge,* 123 N.J.L. 532, 10 A. (2d) 175 (1940). [*See also*: emails from Halperin. *infra.*

178.        Yet: Halperin never denied the numbers were his which he rents to various unknown entities.

## XV.   HALPERIN'S CLAIM OF NON-WORKING NUMBERS IS AN INTENTIONAL FRAUD

179.        At one point in time, Halperin claimed the subject numbers were 'no longer used' some time in August 2023 and stated as such in Defendants email to Plaintiff, Sept. 12, 2023 3:36:37 PM;

> **Email-09/12/2023 03:36 PM /Joey Buchbinder <jbuchbinder@iphorizon.com**
> **Mr. Zelma,**
>
> This email addresses your latest two claims that IP Horizon is the originator of calls from 316-540-8802 and 505-437-9281. We take these types of reports very seriously and understand your frustration.
> Please be aware that IP Horizon is a wholesale Direct Inward Dial (DID) provider. This means IP Horizon sells phone numbers to other companies (Service Providers).
> IP Horizon's service is to transport calls to the service provider that the phone number in question is assigned to (inbound). In no case do we provide services directly to end users/individuals. IP Horizon only sells to other service providers.
> IP Horizon does NOT process calls from those numbers (outbound).
> Outbound calling is managed by the service provider that is servicing the end user for outbound calling services.
> Our NOC Department investigated the phone numbers provided. These had been assigned to a customer that we *proactively fired approximately 1 month ago.*
> *The numbers are no longer in use.*

(Plaintiffs First Amended Complaint)

Please understand that many calls that are fraudulent or illegal are often made by faking/spoofing the source phone number. Often, the service provider and end-user may not have initiated or processed the calls in question. Your service provider is the only one in a position to work backward and trace the call in question back to the actual source.
Best,
Joey Buchbinder

**180.**        While in-house counsel for the Defendants, Buchbinder's play-on-words stating; "***the numbers are no longer in use***" and "***These had been assigned to a customer that we proactively fired approximately 1 month ago***", he fails to state with particularity whether or not the numbers are no longer in use with a specific customer, or, were taken out-of-service (disconnected) or simply reassigned to a different client/ customer in May and August 2023.

**181.**        Interestingly,  Attorney Buchbinder avoids specifics in his response, is confused or chooses to claim "they can <u>fire a customer</u>"!

**182.**        This comment alone raises questions and concerns over the alleged firing, who was "fired", what caused the alleged firing, what damages were incurred, all of which will be sought through continuing Discovery.

**183.**        In addition to this municipality of reasons, excuses and alibis, the Defendants calls started in May 2023 and continue to this day.

**184.**        Halperin further claimed (after the fact) his deactivated numbers if called, the caller would hear "<u>*the number was not is service*</u>".

**185.**        Halperin's statement is inaccurate, impossible, simply not true and factually incorrect. When randomly calling any of his alleged "***no longer in use" numbers,*** a variety of prerecorded announcements could be heard, such as; "*please hold for the next available agent*", or, "*Your call is very important to us,*

*please stay on the line*", just to name a few.

**186.** Those messages do not evidence a deactivated or *no longer in use* phone number, but rather a working number, possibly a D.I.D. number <u>still in service</u>, assigned to a different client!

**187.** Moreover: the Halperin Defendants, cannot collect a "DIP fee" from a deactivated or non-working number. [***Id.*** @ FN.3]

**188.** Plaintiffs carrier could not display a non-working spoofed number if they cannot collect a carriage fee. (***See:*** **47 CFR §69.105(b)(4)(ii); Carrier, common line for non-price cap local exchange carriers.)**

**189.** To further crumble the fatal foundation upon which Halperin constructs his fraudulent claim of non-working numbers, Plaintiffs employed 'Nomorobo' with his carrier (Optimum).

**190.** Technically, a spoofed phone number cannot initiate a call, period. Likewise, a deactivated/ non-working number cannot initiate a call.

**191.** Upon Plaintiffs information and belief, it is impossible or near impossible for any spoofed, inactive phone number to pass the Nomorobo service.

**192.** When Plaintiffs numbers are called, 'Nomorobo' uses a simultaneous ring in which the incoming call is (simultaneously) sent during the first incoming ring to their center, tested for accuracy (spoofed non-working/deactivated numbers) and filtered against data of 5 Million robocall numbers at a speed equal to or faster then an *Easy-Pass* reader.

**193.**        Furthermore, Nomorobo incorporates algorithms which look for calling patterns that are typical for robocalls, spoofed, non-working/deactivated numbers along with call volume, repeat calls, from such numbers calling in a given time and repeated to the same number, where such calls are then blocked.

**194.**        Calls screened by Nomorobo, detected as spam, non-working, spoofed robo-calls, etc, are blocked from delivery to the intended recipient during the first ring cycle. Subsequently, the call is then dropped by their system and will not continue to its target.

**195.**        Because Caller ID data is sent to the called party during the second ring cycle, it is during the first ring cycle where the elements of call authentication takes place.

**196.**        Nomorobo, will only allow non-spoofed numbers, working numbers or calls which do not pass the spam test, to continue to ring the recipients phone continually, until responded to. (*See:* https://nomorobo.zendesk.com)

**197.**        Therefore, if as Halperin claims, his numbers were spoofed and/or not in service, it would be impossible for his calls to be routed, carried and delivered by Optimum and Plaintiffs numbers and displayed on Plaintiffs Caller ID.

**198.**        As described above, Plaintiff responded to each of the Defendants calls as they passed the Nomorobo test, were active working

numbers which continued to ring Plaintiffs phones until answered.

## XVI.  HALPERIN'S CONDUCT WAS WILLFUL OR KNOWING

**199.**        Halperin knowingly or willfully allowed and permitted IP Horizon to provide VoIP services including D.I.D. and SIP termination service to the yet unknown Doe defendants, resulting in **EIGHTY ONE [81]** incoming prohibited calls to Plaintiffs landlines, while knowing or consciously avoided knowing Plaintiffs numbers were listed on the Federal DNC Registry since 2003.

**200.**        Halperin never admitted vetting his clients prior to the subject calls. He consciously and willfully avoids knowledge of their nefarious intentions to solicit into this state using his facilities in which to do so.

**201.**        Moreover; Halperin's 'IP Horizon' comes with questionable history. [See: "*iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (E.D.N.Y. 2011) Decided Oct 21, 2011; MO&O, ¶2; "an agreement whereby IP Horizon agreed to provide "call termination services". . .".]

**202.**        Halperin's shell, IP Horizon is the listed owner / subscriber of each number associated with the Eighty One [81] prohibited calls identified in Plaintiffs incoming-call-report provided by his carrier Optimum/Altice.

**203.**        Optimums voice/phone service agents confirmed the accuracy of Plaintiffs Caller ID, with calls sent from IP Horizon. (***See:*47 CFR §69.105(b)(4) (ii))**

**204.**        Thus, Halperin is jointly, constructively and severally liable for each of the violations defined and described herein as he directed,

controlled, processed and provisioned the subject calls from which he financially benefits.

**205.** Halperin cannot assert any claim that neither he or his company are compliant with Federal and State Law governing telemarketing, since he doesn't subscribe to the Federal no-call-registry or the N.J. State no-call list.

**206.** Halperin's affiliation, partnership, involvement and profiting through his customers/clients and others, exposes him to significant liability.

**207.** Halperin controlled the means and details of the process by which his customers would accomplish their goal by and through the use, cooperation, and routing of services provided by Halperins companies.

**208.** Halperin made unsupported claims where his business only accepts calls from other carriers to provide Direct Inward Dialing (D.I.D.) services.

**209.** D.I.D. phone service was originally designed for multi-line office systems to enable outside callers to avoid the receptionist and dial their call direct to an extension. D.I.D. was not intended to aid in nefarious or unlawful intent.

**210.** Halperin's use and provisioning of his services goes well beyond D.I.D. Service and the proscriptions of the TCPA and the TSR.

**211.** For example: Halperin's numbers <u>were</u> working at the time of each call. ***Id.***

212.         Halperins D.I.D. service allows call-centers to use given numbers he provided and use such numbers simply to make it difficult to identify the actual caller.

213.         Upon information and belief, Halperin subscribes to such numbers from the large[r] PSTN telephone companies.

214.         The Halperin Defendants initiated or aided their subscribers in initiating the subject calls, causing telemarketing calls to be made to Plaintiff, introduced with prerecorded messages, without the prior express written consent of Plaintiff.

215.         Halperins subscribers use those numbers to redirect (call forward) answered calls to their own call-center which possibly incorporate the prerecorded messages and live agents.

216.         Halperin knows or can easily research his subscriber to each number, but chooses not to do so, claiming he doesn't know.

217.         Calls (returned) to the subject Caller ID numbers were <u>never</u> met with 'SIT' tones (a special information tone) or vacant number intercept, indicating the number[s] was/were not in service; the call didn't complete; a failed connection; busy circuits, dialing error or an announcement "the number is not in service" to name a few. Therefore, those numbers **were** working! ***Id.***

218.         The PSTN is the only authorized entity to insert SIT tones or "Number not in Service" announcements once the attempted call reaches and terminates at any phone companies physical location or destination and since no

such announcement was ever heard, the subject numbers were all working.

**219.**     The Halperin alter-egos do not meet the standards of a PSTN operator and therefore cannot insert a SIT Tone or a "number not in service" announcement!

**220.**     Plaintiff initially subpoenaed Halperin, requesting among other things, a block diagram showing how his company communicates with clients, customers and/ or call-centers or vice-versa. Halperin refused claiming "trade secrets".

**221.**          Halperin, IP Horizon along with his other shell companies are responsible to follow the Rules along with the March 2023 FTC Order, assuring they are not furthering illegal entities from initiating unlawful calls to unsuspecting consumers or those who have placed their numbers on the federal and state no call list.

**222.**          Those notifications place Defendant Halperin on notice where his repeat services, defiant of the FTC Order, helped to facilitate and disseminate illegal robocalls into this country and this State, to Plaintiff, without regard to its laws and proscriptions.

**223.**     Halperin could have chosen to implement effective and meaningful procedures to prevent or even significantly mitigate the perpetration of illegal behavior onto and across the nationwide telephone network, but intentionally chose not to do so.

### *Defendants' Statements Against Interest*

**224.**     Following Plaintiffs extensive due-diligence and investigation into the source of the subject calls, including call-trace results from his carrier, Optimum/Altice, Plaintiff was able to connect all of the subject numbers to the Defendants' Halperin and IP Horizon.

**225.**     Upon further investigation into the company, it was learned where Defendant Halperin was its owner, manager, founder and director.

**226.**     Plaintiff sent Halperin notice of the calls before they started to increase, in late August, 2023.

**227.**     Halperin responded to plaintiff, stating in relevant part as follows:

**Sent: Tuesday, September 12, 2023 2:36 PM**

**"Please be aware that IP Horizon is a wholesale Direct Inward Dial (D.I.D.) provider. This means IP Horizon sells phone numbers to other companies (Service Providers).** *(The statement 'sells', is factually incorrect. IP Horizon nor Halperin own the subject numbers. They are owned by the PSTN. Halperin and the Halperin Defendants "subscribe" to such numbers. If not owned, they cannot be sold! Halperin 'rents' those numbers to other service providers)*
**[Continued] IP Horizon's service is to transport calls to the service provider that the phone number in question is assigned to (inbound). In no case do we provide services directly to end users/individuals. IP Horizon only sells to other service providers. Outbound calling is managed by the service provider that is servicing the end user for outbound calling services." (***Wrong again! Halperin is providing the service, controlling the routing where the unlawful calls are being initiated. Halperin must comply with telemarketing law. He cannot escape liability relying on "his customers" to comply. Halperin has a non-delegable duty. Black's Law Dictionary, 2nd Edition. 1. General: An obligation that cannot be outsourced to a third party according to the terms of the contract.*)

**228.**     As the calls continued, Halperin responded further via email through in-house counsel, to state the following in relevant part:

**45**

From: On Sep 14, 2023, at 10:25 AM,
Joey Buchbinder <jbuchbinder@iphorizon.com> wrote

"When you look up these phone numbers and see IP Horizon, that means that we are the Operating Company that, from a regulatory perspective, is the one that the phone number was assigned to by the NPAC. *(This statement is false and misleading. The NPAC assigned the subject phone numbers to the real operating companies [PSTN] identified on Plaintiffs call records).*
[Buchbinder continues] This means that when someone in the world calls that D.I.D., unless they have a more direct route to the end subscriber, that call will be routed to IP Horizon via the PSTN Tandem connections." *(And that "routing" is what the FTC ORDERED the Halperin defendants to stop!)*

229.        These statements further the defendants knowledge of willfully refusing to comply with the prior FTC demand letter but continue to provide services to off-shore entities while knowing those entities were violating US Laws.

## XVII. <u>THIS COURT'S POWER TO GRANT RELIEF</u>

230.        47 <u>U.S.C.</u> §227(b)(3)(A) empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any future violation by the Defendants of any provision of law enforced by the FCC or New Jersey State Law that protects Plaintiff.

231.        Plaintiff will suffer and continues to suffer harassment along with substantial emotional distress and abuse that annoys and alarms his household if the Defendants are permitted to continue to engage in their questionable practices and if Permanent Injunctive Relief is not granted.

232.        Accordingly, Plaintiff has a cause of action against the Defendants and each of them and hereby seeks relief under the TCPA's Strict Liability statutory trebled damage award along with applicable Federal and

State Law claims as well as Permanent Injunctive Relief pursuant to the foregoing, against the Defendants and each of them.

**XVIII.       COUNT ONE**
**Violations of the Telemarketing Sales Rule**
**(TSR) 16 CFR §§310.4(a)(8); (b)(i) to (v).**

**233.**       Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred thirty-two as if set forth in full at length.

**234.**       The dates illustrated on the Plaintiffs call history, set-forth as Exhibit 1&2, evidence Plaintiffs receipt of **EIGHTY ONE [81]** calls from the Defendants, initiated to his two land-line numbers. *Supra.*

**235.**       The Defendants and each of them initiated directly and processed or provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TSR.

**236.**       The defendants repeatedly initiated those calls to Plaintiffs numbers that had been placed on the FTC no-call-registry since inception, 2003. *Id.*

**237.**       Each call was devoid of any name that would identify the actual caller when initiated or passed through defendant IP Horizon as the carrier.

**238.**       The Telemarketing Sales Rule at **§310.4 (a)** states:

> **"It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:**
> **(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the**

**47**

telemarketer, to any caller identification service in use by a recipient of a telemarketing call;. . .”

**Continuing;**
**16 CFR §§310.4(b)(i) to (v).**
**Pattern of calls**

239.     The defendants and each of them conspired to continually call Plaintiff, even after being told not to, by refusing to honor plaintiffs repeated do-not-call requests; by failing to subscribe to the no-call federal registry; by failing to implement their own internal no-call-list; by abandoning some calls, and repeatedly called plaintiff eighty one [81] times, often with a pattern of several times within one day and introducing the responded calls with a prerecorded message.

**WHEREFORE,** Plaintiff respectfully seeks This Courts choice to award Punitive damages at an amount The Court deems just and proper, to deter the defendants future prohibited conduct

**XIX.  COUNT TWO**
**VIOLATIONS OF 47 U.S.C. §227(c)(5)(C);**
**WILLFULLY OR KNOWINGLY SOLICITING A**
**NUMBER ON THE FTC NO-CALL-LIST**

240.     Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred thirty-nine as if set forth in full at length.

241.     Plaintiffs call history, (EX-1&2), evidences Plaintiffs receipt of **EIGHTY One [81]** prohibited calls from the Defendants and each of them, initiated to his two land-lines. *Supra.*

(Plaintiffs First Amended Complaint)

**48**

**242.**      The Defendants and each of them initiated directly or processed and provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TCPA.

**243.**      The defendants repeatedly initiated those calls to numbers that had been placed on the FTC no-call-registry since inception, 2003 and the New Jersey no-call-list in 2004 which mirrors the federal registry. *Id.*

**244.**      While being registered with both Federal and State no-call-registries, Plaintiff made an initial no-call-request to the May 2023 call along with an additional no-call request with live agents during the continued calls, a request that was repeatedly ignored.

**245.**      The defendants foregoing acts were knowingly made. The defendants knew or consciously avoided knowing that their calls were in violation of US law, but willfully chose to initiate the calls anyway.

**246.**      The Defendants calls were <u>not emergencies</u> but purposely initiated to plaintiff for marketing purposes and violated the proscriptions of 47 U.S.C. §227(c)(5)(C).

The TCPA states in relevant part:

**"47 <u>U.S.C.</u> §227;**

. . .

. . .

**Protection of subscriber privacy rights**
**(5)      Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—**

**(A). . .**
**(B). . .**

**(C)    both such actions.**

**"It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."**

247.        The defendants did not implement or establish an internal no-call-policy; neither of them sent Plaintiff their Written Policy upon demand, they did not register with the State of New Jersey to solicit consumers in the forum state, did not purchase a no-call subscription from the FTC and did not inform or train their agents or employees in implementing a no-call request, thus exposing themselves to the proximate cause.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory trebled damages of $1,500.00 for each of the **EIGHTY ONE [81]** calls, willfully, knowingly and repeatedly made to Plaintiffs residential land-lines, material to Count Two for a total of One-Hundred Twenty-One-Thousand Five-Hundred Dollars ($121,500.00).

## XX.    COUNT THREE
## HALPERIN USED PRERECORDED MESSAGES
### Violation to 47 U.S.C.§227(b)(1)(B)

248.        Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred forty-seven as if set forth in full at length.

249.        The Telephone Consumer Protection Act (TCPA; 47 U.S.C. § 227) and its implementing regulations (47 C.F.R. § 64.1200) regulate the use of automatic dialers (ATDS) strictly prohibit non-consented ("prerecorded messages") in the delivery of telephone solicitations.

250.        The TCPA prohibits using an ATDS or prerecorded messages or prerecorded telemarketing messages in marketing calls to residential land-line phones, unless the recipient had provided prior express written "consent" to receive such calls.

251.        The Defendants and each of them initiated either directly or processed and provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TCPA.

252.        The Halperin Defendants knowingly used various technology to produce an artificial or prerecorded voice message during the delivery and introduction of the subject calls, or, the Halperin Defendants aided foreign entity clients in producing the prohibited prerecorded messages which greeted Plaintiff in each call.

253.        Halperin owns, operates, directs and controls several levels of 'Shell companies' as his business.

254.        Halperin, including himself is an employee, maintains a staff of employees including in-house counsel, all allegedly versed in telephony.

**51**

255.         Therefore Halperin knew or should have known, where the use of such technology that incorporates a prerecorded message and delivers such message in a telemarketing call, raises a separate and distinct violation to the TCPA.

256.         It is herein alleged that Halperin and the Halperin Defendants, delivered **EIGHTY ONE [81]** prohibited calls to Plaintiff, which were received and responded to, where Plaintiff did hear a prerecorded messages as set-forth above, on the dates illustrated within Plaintiffs Exhibit 1 & 2.

     **WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

     Award Plaintiff strict liability statutory trebled damages of $1,500.00 for each of the Defendants **EIGHTY ONE [81]** calls which contained, introduced and delivered prerecorded messaging in each such call, willfully, knowingly and repeatedly made to Plaintiffs residential land-lines, material to Count Three for a total of One-Hundred Twenty-One-Thousand Five-Hundred Dollars ($121,500.00).

### XXI.  COUNT FOUR
### SEC. §206. CARRIERS' LIABILITY FOR DAMAGES

257.         Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred fifty-six as if set forth in full at length.

258.         The Halperin Defendants are Common Carriers, each registered with the FCC under various 499 Filer ID numbers. ***Id.***

**259.**      The Telephone Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or practices. *Id.*

**260.**      The provisions of Title 47 USC- SEC. §206, states in relevant part:

> "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, . . ."

**261.**      Pursuant to authority, 47 USC §217:

> "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."

**262.**      When read together with Common Carrier Code §206, §217 defines Halperin, registered with the FCC as a Common Carrier, deemed to be "the act, omission or failure of such carrier or user as well as that of the person".

**263.**      Halperin was required to respond within three [3] business days of the Federal Trade Commissions March 17, 2023 Cease and Desist Demand;

> ***"that HFA Services has ceased engaging in the activities described above that may subject it to liability under the TSR or the FTC Act."***

**264.**      Halperin o/b/o HFA Services, was required to respond to that

letter no later then March 22, 2023, complying with their demand.

**265.**              Upon Plaintiffs information and belief, Halperin and HFA failed to respond.

**266.**              As of April 11, 2023, Halperin and his companies were prohibited and Ordered to stop accepting traffic from foreign providers not listed in the RoBo Mitigation Database. (RMD). (See: FCC- Robocall Mitigation Plan and Certificate Filing Mandate, January 3, 2023), but he did not and is therefore liable under §206.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them as follows:

Award Plaintiff actual or Punitive damages, material and relevant to Statutory Damages cited in Counts 2 and 3 of this Complaint as This Court deems just, for each of the **EIGHTY ONE [81]** prohibited calls material to Count Four.

## PRAYER FOR RELIEF

**WHEREFORE:** Plaintiff respectfully prays that this Court:

**(a)**              Award Plaintiff Putative damages as This Court deems just and proper, material to **Count ONE**. Private citizens may bring an action to enforce the TSR if they have suffered $50,000 or more in actual damages. Anyone who violates the TSR is subject to civil penalties of up to

**54**

$51,744 for each violation. Punitive damages can be awarded in cases where the defendant's conduct is found to be particularly egregious or malicious.

As described and defined herein, Plaintiffs Complaint demonstrates the willful act of flagrant and spiteful conduct by the Defendants and each of them, (to date) initiating **EIGHTY ONE [81]** prohibited calls, a direct violation to the TSR, its underlying proscriptions, where statutory damages to Plaintiff far exceeds Fifty Thousand Dollars.

**(b)**        Award Plaintiff strict liability statutory damages trebled to $1,500.00 for each of the **EIGHTY ONE [81]** prohibited calls willfully or knowingly made in violation of the regulations prescribed under the TCPA, <u>**47 U.S.C. §227(c)(5)(C),**</u> material to **Count TWO**.

As defined within the Communications Act of 1934, 47 <u>U.S.C.</u> §312(f)(1), administered by the FCC, Plaintiff respectfully seeks trebling the relief sought in sub-section (b) of this Prayer, for a total amount of One-Hundred Twenty-One-Thousand Five-Hundred-Dollars ($121,500.00)**.**

**(c)**        Award Plaintiff strict liability statutory damages trebled to $1,500.00, for each of the **EIGHTY ONE [81]** calls willfully, knowingly or repeated, introduced with a prerecorded message in violation of the regulations prescribed under the TCPA, <u>**47 U.S.C.§227(b)(1)(B),**</u> material to **Count THREE**.

**55**

As defined within the Communications Act of 1934, 47 U.S.C. §312(f)(1), administered by the FCC,[7] Plaintiff respectfully seeks trebling the relief sought in sub-section (c) of this Prayer, for a total amount of One-Hundred Twenty-One-Thousand Five-Hundred-Dollars ($121,500.00).

The TCPA prohibits using any form of prerecorded messages in marketing calls to residential land-line phones, unless the recipient had provided prior express written "consent" to receive such calls. Plaintiff never provided the Defendants any Prior Express Written Consent to solicit him or otherwise, using prerecorded messaging to introduce each such call.

**(d)** Award Plaintiff actual or Punitive damages, material and relevant to Statutory Damages cited within Counts 2 and 3 of this Complaint as This Court deems justified for each of the **EIGHTY ONE [81]** calls material to **Count FOUR**.

**The Telephone Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or**

---

[7]   **(f)"Willful" and "repeated" defined for purposes of this section:**

**(1)The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.**

**(2)The term "repeated", when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.**

**practices.** Halperin and the Halperin Defendants have various FCC ID numbers listings them as Common Carriers.

The provisions of Title 47 USC- SEC. §206, states in relevant part:

"**In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, . . .**"

The Chapter referenced above is Chapter 5 of the TCPA, which in relevant part this Complaint is aligned with, holding damages to the Statute cited in Counts 2 and 3.

(e)    Award Plaintiff costs (NOT LEGAL FEES) and filing fees associated with the necessity to bring this litigation pursuant to N.J.S.A. §56:8-19

(f)    Award Plaintiff Permanent Injunctive Relief pursuant to 47 U.S.C. §227(b)(3)(A)

(g)    Award Plaintiff any Other Equitable Relief This Court deems justified to stop these Defendants telemarketing activities defined and described herein.

(h)    Plaintiff reserves the right to amend this Complaint or supplement this prayer, in the event additional violations occur post filing or additional information surfaces through continuing discovery.

**57**

Respectfully submitted,

*/s/Richard M. Zelma*
Richard M. Zelma
PLAINTIFF, *pro se*
Dated: January 21, 2024

## RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of <u>R.</u> 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

## Rule 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule1:38-7(b).

In accordance with the New Jersey Rules of Court, as used herein, Plaintiffs reference to any documents or papers, which may contain personal, private or confidential account information, provided to Plaintiff by Defendant[s], either voluntarily or through Subpoena, will be submitted under seal, following consent from The Court. (*See:* <u>R.</u>1:38-11(d)).

By: */s/ Richard M. Zelma*
RICHARD M. ZELMA, *pro se*
Dated: January 21, 2024

| | CALLS TO 8153 | DATE /TIME | National Phone Number Registry |
|---|---|---|---|
| 1) | (480) 846-6617 | 05/23/2023 11:11 AM | ONVOY, LLC - AZ |
| 2) | (470) 849-3692 | 06/03/2023 11:48 AM | EXIANT COMMUNICATIONS LLC |
| 3) | (316) 397-9051 | 07/20/2023 01:20 PM | ONVOY, LLC - KS |
| 4) | (614) 252-2714 | 07/21/2023 12:18 PM | OHIO BELL TEL CO |
| 5) | (229) 658-5675 | 07/21/2023 02:50 PM | WINDSTREAM GEORGIA COMMUNICATIONS CORP. |
| 6) | (270) 330-9293 | 07/24/2023 11:50 AM | LEVEL 3 COMMUNICATIONS, LLC - KY |
| 7) | (317) 434-9685 | 07/27/2023 04:31 PM | LEVEL 3 COMMUNICATIONS, LLC - IN |
| 8) | (775) 417-9939 | 08/01/2023 10:40 AM | ONVOY, LLC - NV |
| 9) | (636) 651-6103 | 08/02/2023 01:17 PM | TELEPORT COMMUNICATIONS AMERICA, LLC - MO |
| 10) | (743) 229-4553 | 08/02/2023 04:53 PM | EXIANT COMMUNICATIONS LLC |
| 11) | (385) 360-4298 | 08/03/2023 02:46 PM | TWILIO INTERNATIONAL, INC. |
| 12) | (580) 200-4246 | 08/04/2023 09:38 AM | ONVOY, LLC - OK |
| 13) | (352) 842-0551 | 08/04/2023 11:31 AM | FRACTEL, LLC |
| 14) | (818) 200-2781 | 08/04/2023 02:05 PM | CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS - CA |
| 15) | (401) 399-6220 | 08/05/2023 01:12 PM | TELEPORT COMMUNICATIONS AMERICA, LLC - CA |
| 16) | 208-729-4697 | 08/25/2023  09:11 AM | FARMERS MUTUAL TELECOM INC. |
| 17) | 520-527-1983 | 09/07/2023  10:32AM | ONVOY, LLC - AZ |
| 18) | (254) 720-6232 | 09/07/2023  01:14 PM | CENTURYLINK COMMUNICATIONS, LLC |
| 19) | (430) 258-0589 | 09/07/2023  03:40 PM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 20) | (724) 218-6295 | 09/18/2023  10:12 AM | ACTV  TELEPORT COMMUNICATIONS AMERICA, LLC - PA |
| 21) | 201 479-9909 | 10/04/2023  12:49 PM | PEERLESS NETWORK OF NEW JERSEY, LLC - NJ |
| 22) | 208 252 3220 | 2023-11-17  06:41 PM | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - ID |
| 23) | (304) 973-8870 | 11/22/2023 04:02 PM | CEBRIDGE TELECOM WV, LLC D/B/A SUDDENLINK COMMS-WV |
| 24) | 201 479-9909 | 11/27/2023  11:19 AM | PEERLESS NETWORK OF NEW JERSEY, LLC-NJ |
| 25) | (812) 296-5312 | 11/29/2023 11:31 AM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 26) | (505) 806-2925 | 12/04/2023 11:41 AM | ONVOY, LLC - NM |
| 27) | 517 208 3262 | 01/10/2024  3:36 PM | CENTURYLINK COMMUNICATIONS, LLC |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



PLAINTIFFS EXHIBIT 1

1/22/2024

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optimum.net
Tel: [201] 767-8153

| | |
|---|---|
| **Richard M. Zelma**<br>**Plaintiff**<br>**Vs.**<br>**Michael Peter Halperin,** ("Halperin") **Individually, as owner, manager, founder and director of HFA Holdings LLP., d/b/a, IP Horizon Inc.,**<br>and;<br>**Michael Peter Halperin, d/b/a HFA Holdings LLP. ("HFA"), a/k/a, d/b/a, IP Horizon Inc., SkyeTel, Call48, MHLHTH Holdings LLC., and all of Halperins currently unknown shell companies**<br>and;<br>**DOE Telemarketers (1-20), ABC Corporations' (1-20), Resellers, Call-Centers, working with, benefiting from, participating in, affiliated or doing business with the named Defendants'; (Hereinafter "the Halperin Defs'.), each acting individually, in concert or as a group.**<br>**Defendants'** | **SUPERIOR COURT OF NEW JERSEY**<br>**BERGEN COUNTY**<br>**LAW DIVISION**<br>**Docket No.: BER-L- 5354-23**<br><br>**PLAINTIFFS 1st AMENDED COMPLAINT FOR STRICT LIABILITY STATUTORY DAMAGES for VIOLATIONS of**<br><br>**THE TELEMARKETING SALES RULE, 16 C.F.R. §310;**<br><br>**THE TELEPHONE CONSUMER PROTECTION ACT of 1991, 47 U.S.C. §227;**<br><br>**THE NEW JERSEY NO CALL LAW; N.J.S.A. §56:8-119, codified under (N.J.A.C. §13:45D-3.1);**<br><br>**STATUTORY TREBLED DAMAGES and PERMANENT INJUNCTIVE RELIEF** |

## I. <u>INTRODUCTION</u>

(Plaintiffs First Amended Complaint)

Plaintiff, Richard M. Zelma, by way of this First Amended Complaint against the above captioned Defendants, including the remaining unknown Doe and ABC Corporations, telemarketers and call-centers, says as follows:

1.        This suit is brought pursuant to applicable authorities; The Telemarketing Sales Rule (TSR) 16 CFR §310 *et seq*; The Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§206; 217; 227(b)(1)(B); (b)(3) & 227(c)(5),  and the New Jersey No Call Law, Codified at N.J.S.A. §56:8-119 *et seq*; it's underlying regulations, N.J.A.C. §13:45D, which prohibit[s] unsolicited telemarketing calls to New Jersey residents who registered their telephone numbers on the Federal No-Call-List administered by the Federal Trade Commission. (The DNC Registry)

2.        As noted above, both Federal and State laws prohibit Telemarketing calls, RoBo calls, marketing calls including those introduced with prerecorded messages, VoIP provided telemarketing as well as calls to fax machines, made to residential or mobile phone lines.

3.        Telemarketing to consumers who registered their phone numbers on the FTC no-call-list, where such calls are initiated, either manually dialed and/ or through the use of any automated telephone dialing system (ATDS), automatic dialing and announcement device (ADAD, including speed dialers, predictive dialers, auto-dialing platform systems or any method that a

reasonable person would define as '***dialing a phone number to a specific party, absent human intervention***', is strictly prohibited. ((47 U.S.C. § 227 (b)(1)(B))

4.          Automatic Dialing by any means adds to the problem, being considered a support platform while having the capacity if needed, to store, produce, harvest or generate telephone numbers in the thousands and initiate calls to such numbers in minutes.

5.          This program or device can also acquire numbers algorithmically and / or surreptitiously without the consent or knowledge of a subscriber.

6.          These devices can capture a consumer[s] number and likewise, at any predetermined time under the control of its user, is capable of calling well over thousands of numbers either randomly, sequentially and /or from a stored database at any time, decided by the person having control and/ or usage of such dialing equipment. *See:* 16 C.F.R. § 310.4(b)(1)(v)

7.          As set-forth below, Plaintiffs Exhibits of Call-Records specifically provided by his carrier, Optimum/Altice, serve to clearly identify, illustrate and evidence the time and date in which the Halperin Defendants engaged, initiated, participated, provided a platform (service), assisted, controlled, routed and delivered **EIGHTY-ONE [81]** illegal robocalls, directly or routed indirectly to Plaintiff's two land-lines, received since the beginning of May 2023.

3

8.          The volume of prohibited calls initiated by the Halperin Defendants or calls which they participated in either directly or remotely, provided a platform for their clients to use, among other services, Sound Board technology, a program or device which contains short prerecorded introductions, prerecorded messages, along with prerecorded common responses if necessary and used on the called party. [1]

9.          This ancillary program used by or under the direction and control of the defendant owner[s] or agent[s], is prohibited under the TCPA unless express written consent is granted, "prior" to each such call. [2]

10.         When combined with the prohibited solicitation[s] themselves, the prerecorded messages becomes a separate and distinct violation to the TCPA, embodied within 47 USC §227 (b)(1)(B) *Id.*

11.          This prohibited use of the prerecorded message system was intentionally used and willfully incorporated into the subject calls enumerated below, absent Plaintiffs prior express written consent.

12.         Defendant Michael Halperin ("Halperin") and the various shell companies he operates under (collectively, the "Halperin Defendants"), participated in, assisted, provided facilities, platforms and mediums for their clients, including the DOE Defendants, to commence with their illegal calling

---

[1]     Soundboard, or avatar, technology is used by telemarketers to provide a more interactive experience (as compared to entirely prerecorded calls) for their call recipients. When a telemarketer places a call using soundboard, the telemarketer is present for the entirety of the call. As compared to a completely prerecorded call, soundboard technology enables telemarketers to respond to call recipients in real time by playing one or more prerecorded responses.

[2]    In a May 12, 2017 decision, a D.C. Circuit Judge upheld the Federal Trade Commission's ("FTC") staff opinion that telemarketing calls utilizing soundboard or avatar technology should be treated the same as robocalls under the Telemarketing Sales Rule ("TSR").

campaign in numerous ways. *First*, Halperin made it possible for the Telemarketers and other clients to spoof Caller ID information by supplying them with a quantity of phone numbers that would appear on consumers' phones or Caller ID devices when the called parties received telemarketing calls. *Second*, the Halperin Defendants provided the Telemarketers and other clients the ability to choose (and change) their calling numbers displayed on the recipients Caller ID since some of Halperins customers called Plaintiff more then once. *Third*, the Halperin Defendants helped fund the Telemarketers' and other clients' robocalling campaigns by sharing in "dip fees" generated every time a consumer's phone carrier had to look up the Caller ID number used by Halperin or his clients. *Forth,* Upon information and belief, Plaintiff is of the opinion Halperin uses a municipality of shell companies to deflect liability for TCPA violations and cloak the "dip fees" he collects. [3]

13.     To date, Halperin individually, along with his co-defendants, (the Halperin Defendants) accepted foreign traffic, participated in, initiated, controlled, directed, routed and profited from the Eighty One [81] subject calls.

14.     Accordingly, the Halperin Defendants, using Halperin's own numbers as Caller ID in each of the Eighty One [81] prohibited calls, willfully violated an FTC Order, knowingly accepted foreign traffic, provided a platform and

---

[3]     Caller Name Presentation (CNAP) or Caller Name Delivery (CNAM) is used in US-based telephone networks to provide name identification of the calling party. The CNAM information is most often displayed in Caller ID. The information could be the person's name or a company name. The caller's name can also be blocked and display "restricted", or if technical failures occur "not available".

In the US, the caller's name, or CNAM information, is not sent during a call. Rather, the terminating carrier is responsible for providing the Caller ID information to its customer. The terminating carrier must perform a lookup and pay a small "dip fee" to the carrier hosting the information. Wholesale rates for the fee are on the order of $0.002 to $0.006 per database dip ($200 to $600 per 100,000 calls).

other services thereto, to enable, originate, disseminate, initiate, assist, control, route and engage in illegal telemarketing/robocall traffic, directly or indirectly and to aid and assist the DOE defendants to initiate the subject calls, knowingly or willfully did so in violation of the aforementioned statutes, in direct violation to the FTC Cease & Desist Order.

15.     Despite making repeated no-call requests to the Halperin callers, including cautionary emails direct to Halperin himself, Halperins clients  and customers continued to call. (The exact amount of calls to be determined through continuing discovery)

## II.      **PARTIES**
### **PLAINTIFF**

16.     Richard M. Zelma (hereinafter, "Plaintiff" or "Zelma"), a senior citizen, resides at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648 and the subscriber to the two [2] subject phone numbers.

17.     As used herein, any reference to "Plaintiff" shall mean Plaintiff Richard M. Zelma.

18.     Plaintiff is a natural person as defined under 47 USC §153(39).

### **DEFENDANTS**

19.     Defendant Michael Peter Halperin, (Hereinafter "Halperin" or "Defendant"), currently resides at 5820 Harrington Way, Boca Raton, FL 33496-2511 and may be personally served at that location.

20.       Halperin is a natural person as defined under 47 USC §153(39).

21.       Co-Defendants IP Horizon, Call48, SkyeTel, and MHLHTH Holdings LLC and HFA Holdings LLP (Hereinafter "HFA", "The Halperin Defendants" and/or "HFA Holdings"), are part of Halperin's many alter-ego shell company's under the HFA umbrella.

22.       Upon information and belief, all of the Halperin Defendants are believed to be Shell Companies, having no locatable brick and mortar facility for any equipment or data center or the like.

23.       The entity currently identified through incoming call data, directly connected to the receipt of Plaintiffs unlawful calls is IP Horizon, the entity Halperin uses to provide VoIP services to clients and the name appearing on Plaintiffs "Carrier Information" as the initiator of the subject calls.

24.       IP Horizon is located at 902 Clint Moore Road, Suite 206, Boca Raton, FL 33487.

25.       This location, identified and provided by Halperin as his business location, is simply a mail drop.

26.       Halperin Defendant IP Horizon, is listed with the FCC as a Common Carrier, registered as of 4/3/2023 and assigned 499 Filer ID Number: 832540.

27.       Halperin registered IP Horizon under the Principle Communications Type description as: Interconnected VoIP and states: The Jurisdictions in Which the Filing Entity Provides Telecommunications Services: Florida.

7

28.      IP Horizon (one of the entities under HFA Holdings LLP.,"The Halperin Defendants") is one of many "shell companies" and alter-egos Halperin uses in the dissemination of various telemarketing and call-center services.

29.      For purposes of this litigation and as used herein: "Halperin", "IP Horizon", "The Halperin Defendants", "The DOE Defendants" or "Others", shall all have a common relationship to the other and all considered Defendants in Common. They may be referred to individually, collectively or as a group, including the term, "Halperins other shells", where liability alleged or described, is applicable to the each entity or entities, whichever best meets the specific definition, statement or allegation within this complaint.

## III.   <u>JURISDICTION AND VENUE</u>

30.   Plaintiff does not seek This Courts jurisdiction over The Telemarketing Sales Rule, (TSR) 16 <u>C.F.R.</u> §310 *et seq.,* or the FTC's choice to impose penalties upon the Defendants.

31.      Plaintiff references the TSR to address its proscriptions relative to the Defendants actions, the gravity and depth of each such violation and the severity of the defendants exposure to willful, knowing or defiant prohibited conduct.

32.      As such, This Court may, under the proscriptions defined within the TSR and at The Courts discretion, seek guidance, candor or obligation to award

Plaintiff Punitive Damages, in the spirit of deterrence, in addition to mandatory Statutory damages, material to each violation of the TCPA and State agencies, under 47U.S.C.§227 and 47C.F.R.§64.1200(d) for which Plaintiff seeks relief.

33.     This Court has jurisdiction over the facts giving rise to this Complaint which had their primary effect in the County of Bergen, State of New Jersey.

34.     This Court has general, specific and subject matter jurisdiction under authority of N.J. Rev. Stat. N.J.S.A.§§56:8-128 (b) & (d), (2013); and N.J.A.C. §13:45D-4.1, as Defendants repeatedly and purposely violated those proscriptions by initiating telemarketing calls to solicit Plaintiff in this County and State.

35.     As further set out below, the Defendant's and each of them made a conscious decision knowing they would be violating both State and Federal Law, by purposely, assisting, controlling, provisioning and intentionally extending their market into the Forum State.

36.     The Defendants and each of them situated themselves in The Forum State by directing, controlling and enabling the prohibited activities, by either performing these acts themselves, or in direct violation to the March 2023 Cease & Desist issued by the Federal Trade Commission, willfully, knowingly or repeatedly extended their services to 'others', engaged in unlawful or prohibited telemarketing.

**9**

37.        The Defendants and each of them acted in direct concert with 'others' and profited from all services they provide, addressed herein. By initiating the subject calls directly or routing through various mediums, products, services, programs or equipment, the Defendants made it possible where the subject calls were initiated and delivered to both of Plaintiffs residential land-lines, registered on the FTC Registry since 2003, into The Forum State, annoying Plaintiffs household, consuming his time for the Defendants own financial gain. *Id.*

## IV.     ACTS OF AGENTS

38.        Whenever and wherever it is herein alleged that the Defendant[s], either individually, in concert with others or as a group, did any act defined, described or set-out below, it is meant the Defendant[s] and each of them performed, caused to be performed and/or participated in the act[s] and/or that Defendants officers, owner[s], member[s], managing members, partner[s], employees, contractors, successors, assigns, predecessors, affiliates, or 'other' agent[s], performed or participated in those acts on behalf of, for the benefit of, by authority or direction of the Defendant[s] and each of them profiting thereby under Agency.

39.        The Defendants and each of them, acted as agents to each other. Each Defendant acted in concert with the other, bearing ultimate, constructive or vicarious liability. These wrongful acts were committed by an officer, employer, partner, principal, owner, manager, director, employee or

agent of the Defendants, acting within the scope of their employment or agency, where the employer or other person had the ability to control the employee or agent but failed or refused to do so.

40.         Plaintiff is informed, believes and on that basis alleges that at all times herein mentioned, Defendant Halperin was an agent of HFA and the Halperin Defendants, where the DOE Telemarketing Defendants were the agents of Halperin and sub-agents of HFA and at all times described herein, were acting within the course and scope of such agency, service, employment and/or joint venture, promoting and profiting from the calls, products or services of their respective customers and where each Defendant ratified, approved and authorized the acts of each of the remaining defendants with full knowledge of said facts.

41.         The Defendants, and each of them, aided, abetted, encouraged and rendered substantial assistance to the other Defendants, including the DOE Defendants. By willfully participating, directing, profiting, approving and/or controlling such action as alleged herein, to aid, abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with a knowing consciousness of their primary wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing directly or by others.

42.          The Defendants and each of them knowingly and willfully conspired; knowingly and willfully did the acts and things herein alleged pursuant to this conspiracy as well as knowingly, willfully and repeatedly violating both federal and state law. The Defendants and each of them were complicit and  defiant to the March 2023 Order given them by the Federal Trade Commission.

## V.  <u>PLAINTIFF'S FACTUAL ARGUMENT</u>

43.          Plaintiff resides in a private residence where he maintains two land-line numbers [201] XXX-8153 and [201] XXX-8154 for over 40 years.

44.          Plaintiffs numbers were, are and remain placed upon the Federal Trade Commissions no-call-registry since 2003. (The DNC Registry)

45.          Plaintiffs no-call request is mirrored with the New Jersey No-Call-Registry as well.

46.          Plaintiffs purpose and objective registering his phone number[s] on both Registries was to make-notice to potential call-centers and telemarketers, _**en masse**_, where he vehemently objects to the receipt of any telemarketing calls!

47.          Plaintiffs two land-line numbers [201] XXX-8153 and [201] XXX-8154, have also been registered and protected against Robo calls (prohibited telemarketing calls) with the Telephone Science Corporations call

blocking program, "Nomorobo", a service in which Plaintiffs carrier Optimum incorporated in October 2013.

**48.**         Thus, by taking advantage of all available services, registering his phone number with those services, Plaintiff provided notice to any and all entities engaged in, facilitating, providing a platform or services, for carrying content by, for or from any call-center or telemarketer; who directly or indirectly participate, profits from calls or messages, for, from, by, forwarded, routed, transferred, or in concert with other entities, are strictly prohibited by law from soliciting or calling Plaintiff since 2003 and 2013 respectively.

**49.**         Plaintiff never had any relationship, business or otherwise with any defendants to this day.

**50.**         Plaintiff never heard of the Defendants.

**51.**         Plaintiff never sought any products or services from the Defendants.

**52.**         Plaintiff never visited the Defendants websites until and after formulating the initiation of the within matter.

**53.**         Plaintiff never called, contracted or made contact with the Defendants or any or their alter ego's prior to the initiation of this suit.

**54.**         Plaintiff received the calls at issue, answered and responded to each call or captured non-answered calls on voice mail and Caller ID.

13

55.          To date: Plaintiffs Caller ID captured **Eighty One [81]** prohibited calls. In each of the subject calls, each number was confirmed through various resources including Plaintiffs own carrier, Optimum/Altice, where the captured numbers at issue, belong[ed] to the Halperin Defendants, specifically co-defendant HFA Holdings LLP., d/b/a IP Horizon, the entity owned by Defendant Halperin.

### *The Subject Calls*

56.          An exact itemized current list of prohibited calls, relevant to the within dispute is attached herewith and made a part hereof as EXHIBITS-1 & 2].

57.          This list is the actual data, captured by Plaintiffs carrier, Optimum/Altice,  created in routing the subject calls to Plaintiff.

58.          Examples of the subject calls consisted of overseas lead-generators seeking consumers needing burial insurance (Final Expense Insurance). Other callers sought anyone living at Camp Lejuene between 1963 and 1983 having health issues with the drinking water. While additional callers sought home owners having health issues from using Round-Up Lawn Spray.

59.          The Defendants calls were introduced with <u>prerecorded messages</u>,  containing generic claims of extraordinary and unexpected financial enrichment, where thousands of dollars might possibly be awarded for the above injuries. ***Infra.***

**14**

(Plaintiffs First Amended Complaint)

60.        When the subject messages switched to live agents, the pattern and structure of questions sounded pointed and carefully crafted, somewhat as a qualifier, to ascertain if the called party was eligible for the product or service being solicited, a script often used by Lead-Generators.

61.        The callers (generally) did not know the identity of the party they called. Occasionally, when (they) asked for a name, Plaintiff offered a variety of pseudonyms, used as a 'Canary Trap' and specific to the product being solicited.

62.        By doing so, Plaintiff was able to retain some association to the number of times a specific call was received soliciting the same product or service.

63.        If 'a' repeat caller, initially given a pseudonym called again, Plaintiff would incorporate a 'controlled buy' into conversation, a form of showing interest in the product or service, in hopes of gathering further information previously refused by that caller.

64.        In these instances however, the calling agents were thoroughly trained to avoid providing any "required" identity information. Instead they offered false American names and misleading location information, claiming to be located in this country, sometimes claiming Florida or Texas, but refused to provide any call back number.

65.        Often, if plaintiff insisted on such identity information, the caller would comment "***they were prohibited for security reasons***" from

disclosing any identity, or, alternatively, would simply disconnect the call. At times, some (live) callers speech could not be understood. If asked too many times to repeat the[ir] statement, they would disconnect the call as well.

66.        At other times following the prerecorded introduction, Plaintiff would ask the live agent why his caller ID displayed (as example), the name "Joe's Restaurant" while (the caller) was soliciting discount burial insurance? Those callers, having no feasible answer would disconnect the call, while others would claim "the auto-dialer assigns the name"!

## VI.   DEFENDANT HALPERIN (INDIVIDUALLY) a/k/a, d/b/a THE HALPERIN DEFENDANTS, including Shells, Corps and LLC's, FACTUAL BACKGROUND

67.        Upon information and belief, Michael Peter Halperin ("Halperin") is a licensed investment advisor with Merrill Lynch, Pierce, Fenner & Smith Incorporated.

### *Halperins Side hustle.*

68.        On March 15, 2022, Halperin registered IP Horizon with the State of Florida as an LLC under HFA Holdings, showing Halperin as a managing member.

69.        On March 12, 2023, Halperin changed the registration showing HFA Holdings as manager and Halperin as its Chief Executive Officer.

70.        On April 4, 2023, Halperin registered IP Horizon with the FCC

**16**

as a Voice over Internet Protocol (VoIP) service provider[4] and was assigned Filer ID No.:832540, identifying Defendant Halperin as its Chief Executive Officer.

**71.**     The FCC 499A Form shows IP Horizon registered as a Common Carrier,[5] therefore a Platform Provider, Provisional Provider and/ or Gateway Provider, but does not identify a genuine place of business except a mail drop! *Id.*

**72.**     Halperin's other shell company, Defendant HFA Holdings, (HFA) is registered on FCC 499A Form as Filer No.:833177, categorized as a competitive local exchange carrier.

**73.**     The Halperin Defendants, are by their very nature, "telemarketers" as that term is defined under N.J.A.C. §13:45D-1.3;

> "Telemarketer" means any entity who makes residential telemarketing sales calls to a customer when the customer is in New Jersey, whether the entity is an individual proprietor, corporation, partnership, limited liability corporation or any other form of business organization, or if not formally organized, any person who directly controls or supervises the making of residential telemarketing sales calls whether on behalf of itself or others.

---

[4]     47 CFR § 64.6300 (n) *Voice service.* The term "voice service"(1) Means any service that is interconnected with the public switched telephone network and that furnishes voice communications to an end user using resources from the North American Numbering Plan or any successor to the North American Numbering Plan adopted by the Commission under section 251(e)(1) of the Communications Act of 1934, as amended;. . ."

[5]     **47 U.S. Code § 153 (11):** Common carrier; "The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire . . ."
(51)Telecommunications carrier; "The term "telecommunications carrier" means any provider of telecommunications services, except that such term does not include aggregators of telecommunications services (as defined in section 226 of this title). A telecommunications carrier shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing telecommunications services . . ."

**17**

**74.** Defendants Halperin and IP Horizon are in the business of providing among other things and not limited to; VoIP, Voice API technology and SIP termination. (The Halperin Services).

**75.** Halperin knowingly used, sold, shared, provided or rented his services including phone numbers to clients, customers and unidentified overseas entities, where, in violation of the Telephone Consumer Protection Act (TCPA), Halperins services aided in facilitating the carriage and dissemination of prohibited robocalls into this country. (See: FCC Form 499A, IP Horizon; Filer ID No.: 832540; Principle Communications Type: Interconnected VoIP)

### VII.   HALPERIN RECEIVES CEASE & DESIST FROM FTC

**76.** On March 17, 2023, The Federal Trade Commission issued a Cease and Desist Order to Halperin that identified unlawful calls made through his facilities, between September 7, 2021 and February 4, 2023. *Id.* **[EXHIBIT-3]**

**77.** Starting April 11, 2023, Halperin was prohibited from accepting traffic from foreign providers not listed in the RoBo Mitigation Database. (RMD).  [*See:* FCC DOC-397737A1]

**78.** Indeed: carriers submitting certifications, including their robocall mitigation plans to the RMD must comply with this ruling.

**79.** Halperin intentionally ignored the March 2023 FTC letter and continued in his unlawful act of accepting, routing and delivering calls from foreign entities not listed in the RMD to others, including Plaintiff.

80.          Plaintiff commenced documenting the subject calls in May 2003. Pending extensive Discovery and the acquisition of Defendants authenticated phone records from all clients, customers, including users of his numbers, independent Telecom carriers, PSTN Carriers and others he subscribes or engages in business with, Plaintiff anticipates finding additional calls which may precede those provided and described herein as Exhibit 1&2 and may exceed the total amount received, documented and captured.

81.          Halperin chose to ignore the March 2023 FTC Order along with that of other agencies and continues to this day trafficking, routing and delivering calls using his various companies for his own financial gain and in violation of the proscriptions sited within this complaint.

### _Halperin knew his numbers would be used for unlawful purpose._

82.          Halperin failed to monitor excessive usage over his network and knew or should have known his numbers were being used for unlawful purpose.

83.          Halperin self describes his business as a "non-gateway" VoIP provider, a/k/a, intermediate provider, while technically they are one and the same. **_Id._**

84.          IP Horizon, a Halperin owned and controlled company, "**_is a nationwide provider of Voice over Internet Protocol (VoIP) services_**."

85.          VoIP is technology that allows a person to make voice calls using a broadband internet connection as opposed to a regular (analog) phone

**19**

line. In other words, VoIP calls are phone calls that are sent over the internet.

> (See: FCC; *Seventh Report and Order, Eighth Further Notice, and Third Notice of Inquiry; CG Docket No. 17-59-WC Docket No. 17-97, ¶2, FN-1)*

86.        Noted on part of his website, Halperin's VoIP services include "origination" services. The FCC defines "Origination" as; beginning the transmission of a call from the telemarketer or company which initiated the call.

87.        Halperin also serves as a mid-stream provider, transmitting calls from and to other VoIP providers. The FCC defines "voice service provider" as any entity originating, carrying or terminating voice-calls through time-division multiplexing (TDM).

88.        As a VoIP provider, Halperin can use Application Programming Interface (API). Halperin can connect internet-based applications to the Public Switched Telephone Network (PSTN) which creates artificial or prerecorded voice messaging for call services, recognizing speech and can record calls.

89.        Upon information and belief, the Halperin Defendants provide Session Initiation Protocol "(SIP) termination", the process of sending phone calls from one provider to another Public Switched Telephone Network (PSTN).

90.        Halperin also claims to provide Direct Inward Dialing (D.I.D.). D.I.D. numbers can route calls to any phone, including voice-over-IP (VoIP) phones, mobile phones and landlines. The feature is often used with call forwarding services so that calls can be routed to a person or department, no

matter the[ir] location.

91.         As a telemarketing concern, this service allows call-centers or telemarketers to evade detection and identification when using Halperins services and pool of dedicated D.I.D. numbers, where his clients can further alter their location and hide their true identity.

92.         Halperin subscribes to millions of phone numbers from various larger Carriers, also known as 'operators' or 'Public Switched Telephone Networks' (PSTN), *e.g.* Verizon, AT&T, etc.

93.         As example: On May 31, 2021, Defendant HFA Holdings, a/k/a HFA Services LLC d/b/a Call 48 ("HFA Services"), entered into a final agreement with Blitz Telecom Consulting, LLC ("BTC"). At one time, Halperin had an ownership interest in BTC.

94.         Upon information and belief, Blitz, through its parent company Exiant Communications, ported **OVER TWO MILLION** telephone numbers, purchased by HFA Holdings through established protocols with the assistance of a third party vendor to which Halperin paid an exorbitant amount of money.

95.         The foregoing posit defines and illustrates Halperins prohibited capabilities, originating, carrying, or terminating voice-calls, and specifically what the FTC ordered Halperin to stop, (*See:* FTC Cease & Desist, March 2023) attached hereto and made a part hereof as [EXHIBIT-3]

### VIII.  HALPERIN KNOWINGLY SUPPORTED PRERECORDED MESSAGES DURING THE INITIATION OF EACH CALL.

96.         Halperin knew or should have known his direct participation, his services and facilities would be used in the harassing calls, his warning from the FTC to stop, but intentionally chose to do nothing.

97.         It is a clear and distinct violation of the TCPA to introduce marketing calls to residential land-lines with prerecorded or electronically generated voice messages or announcements, using soundboard or similar technology in the course of initiating such calls. (*See:* 47 U.S.C.227(b)(1)(B))

98.         At all times material and relevant to this dispute, as Plaintiff responded to the subject calls, an audible 'bloop' tone was heard following Plaintiffs completed greeting of "hello".

99.         The 'bloop tone' was the auto-dialers data transfer signal sending the call to the next available call-center agent.[6]

100.        If a live agent was unavailable or soliciting another consumer, that same call would simply disconnect, only to be re-dialed shortly after. *Id.* [@ Plt EX-1&2]

101.        Nonetheless; a call initiated, routed, carried and terminated to its destination, where caller ID data is generated, where the originator of such call receives the "Call Complete Signal" following each call initiated, is

---

[6]   When person answers a robo-call, the callers auto dialer such asterisk, vicidial or other dialers, execute a sound following the persons greeting, and will introduce a sound like a "bloop"...This is an audible indication at both ends of the call to indicate a party has answered the call and triggers the callers dialer, in this matter to proceed with the prerecorded message. Plaintiff is a retired system technician from AT&T holding several large credentials in this area.

considered a completed call and actionable under the federal and State no-call-laws, whether or not conversation ensues. (*See: 47* USC §223 (a)(1)(C).

102.      If a live caller responded following the transfer signal, they introduced themselves with the same American name used in the preceding prerecorded message; "*Hello: my name is Adam, how you doing today (*pause*) that's good to hear. The reason for my call is to ask if. . ."* (contained prerecorded subject matter).

103.      The TCPA (The statute) prohibits <u>any person</u> from initiating "<u>any telephone call</u> to <u>any residential telephone line</u> using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party." ***Id.*** §227(b)(1)(B).

104.      Therefore: Plaintiff alleges the following: **(1)** the Halperin defendants called Plaintiffs residential phone lines, both listed on the FTC Registry since 2003, in which Plaintiff responded or his voice mail grabbed the call, being documented and marked for evidence [Plt. EX-1&2]; **(2)** The Defendants used various technology to produce an artificial or prerecorded voice message during the introduction of the subject calls, and **(3)** The Defendants having prior Orders from the FTC to Cease & Desist initiating or participating in these subject calls, willfully or knowingly set forth and defiantly continued to initiate such calls without Plaintiffs prior express written consent. ***Id.***

105.      At the commencement of the defendants prerecorded announcement[s], following the first few words of their introduction, Plaintiff

initiated a comment such as "*are you a robot*" and repeatedly interjected that comment.

**106.**     In each of those calls, plaintiffs question went un-responded as the voice being heard continued in its same rhythmic pattern, indicative of and confirming those greetings were prerecorded messages.

**107.**     Plaintiff observed the (recorded) callers voice tone, inflection, pronunciation, the generic content of the voice message, the robotic sounding clarity, rhythmic cadence and normal monotone clear volume level audio, with absolutely no background noise.

**108.**     The lack of human response, interaction, hesitation or pause when attempting to ask if the 'person' calling was a robot, along with the foregoing speech pattern, clearly indicates these were prerecorded messages.

**109.**     On multiple occasions shown by Plaintiffs Call Detail Records, blocks of calls were often received on the same day in close proximity to others, thereby revealing "identical [prerecorded] messages". (**See:** Plt. EX-1 & 2]; For example: *See also:* Calls to 8153; Ln.#'s- 4&5; 8-15; 17-19 and Calls to 8154; Ln.#'s 4-8; 10-15; 16-32; 33&34; 36&37; 38&39; 50&51 and 53&54.)

**110.**     Following the completion of the prerecorded announcement[s], a slight change in audio level was noticeable when a "live" agent came on line and continued the solicitation, introducing themselves with a generic American name.

(Plaintiffs First Amended Complaint)

24

111.     As that happened, loud conversations of multiple agents could be heard in the background, often making it near impossible to hear or understand the live agent.

112.     The TCPA states in relevant part under 47 USC §227 (b)(1)(B):

**(b)Restrictions on use of automated telephone equipment**
**(1). . .**
**(A). . .**
**(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.**

113.     Delivering or introducing a call to a residential number on the DNC list, using a prerecorded message or artificial voice without prior express written consent, violates the statute. (47 USC §227 (b)(1)(B))

114.     Plaintiff never provided any form of prior express written consent for Halperins prerecorded calls.

115.     Upon information and belief, an "API Provider" to which Halperin qualifies, can program a robocall with an artificial voice that is delivered through VoIP technology to consumers' telephones and simultaneously record the content of such call.

116.     Halperin and his clients initiated those prerecorded messages without obtaining prior express written consent from Plaintiff and by using soundboard technology such as Asterisk, Avatar or similar programs, thereby violated the terms of the TCPA; 47 USC §227 (b)(1)(B). **[*Id.* @ FN.1 & 2]**

**117.**     Each prerecorded message Plaintiff received, violated the provisions of the New Jersey no call law; (N.J.A.C. §13:45D-3.1)

**118.**     Each prerecorded message received was in direct violation to the terms of the New Jersey Consumer Fraud Act; (N.J.S.A. §§56:8-128 (a)–(d))

**119.**     Each prerecorded message received violated the provisions 47 C.F.R. §64.1200(d)(4), by failing and refusing to identify "the individual caller, company name, and a contact telephone number or address."

> "FCC regulations require telemarketers to implement the following standards: Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges."

**120.**     As further noted: 47 C.F.R. §64.1200(d) is expressly applied to "all telemarketing calls, whether prerecorded or live; whether made individually or through a system". *See:* (*Lifestation,* 2021 WL 5358876, at *15.) [***See also:*** *Worsham v. Discount Power*, No. RDB-20-0008, 2021 WL 3212589, at **1–2 (D. Md. Jul. 29, 2021). (Mem. Op., (ECF No. 80)

**121.**     The Halperin Defendants and each of them are therefore liable along with the currently unidentified Doe Defendants, for violating the terms of 47 USC §227 (b)(1)(B); 47 C.F.R. §64.1200(d); *et seq,* (N.J.A.C. §13:45D-3.1) and (N.J.S.A. §§56:8-128 (a)–(d)] by initiating, introducing and incorporating prerecorded messages at the beginning of each of the subject calls material to the within dispute.

(Plaintiffs First Amended Complaint)

122.     At all times relevant, the Defendants and each of them failed or refused to register their intent to solicit into the State with the New Jersey Division of Consumer Affairs. [N.J.S.A. §§56:8-121(a)(&(b)]

123.     As set-out below, the Halperin Defendants individually or in active concert with others, aided in the delivery of prerecorded messages to Plaintiff's two land-lines, (currently totaling) eighty one [81].

124.     These prohibited/ violative calls were willful and the Defendants did so absent prior express written consent from Plaintiff.

125.     The Defendants violated Plaintiffs prior no-call request through the FTC no-call registry; violated the New Jersey no-call-law and regulations and repeatedly called even after being told not to.

126.     Halperin thereby violated the proscriptions under 47 U.S.C. §§227(c)(5)(C) and (b)(1)(B). (The exact amount of calls to be determined through continuing discovery)

### IX.     HALPERIN VIOLATED THE COMMUNICATIONS ACT OF 1934 (TCPA) SEC. §206. CARRIERS' LIABILITY FOR DAMAGES

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case." (See: TCPA - U.S. Code; Title 47; Chapter 5)

27

127.        The Halperin Defendants are Common Carriers registered with the FCC as such and knowingly provided substantial assistance to others, acting in concert and knowingly accepted overseas calls, facilitated the transmission, delivery and services requested by their clients to disseminate millions of unlawful telephone calls to residents across this country, including Plaintiffs' jurisdiction.

128.        Halperin and his clients initiated calls to both residential and cellular telephone lines without the prior express written consent of the called parties.

129.    Halperin knew or should have known the volume of calls traversing his system would indicate his subscribers were engaged in telemarketing.

130.    Halperin chose to ignore or turned a blind eye, knowing he was providing assistance to overseas entities in which the previous FTC demand letter specifically prohibited him from doing so.

131.        Halperin willfully allowed, knowingly permitted, directed, routed, controlled and profited from the prohibited calls initiated to Plaintiffs landlines including other call recipients, knowing Plaintiffs numbers were listed on the DNC Registry since 2003.

132.        Through a prior Subpoena: Halperin identified only seven (7) entities in which "he" points the finger, claiming "they" will have information on the actual caller.

133.      In reaching out to each, only three (3) responded with little to no information.

134.      Ironically, while Halperin claim[ed] the seven entities were located in this country, through diligent research, all were found to be using mail drops in the US while physically located overseas.

## X.      HALPERIN IS LIABLE UNDER 47 U.S.C. §217

135.      The FCC provides a mandate to Common Carriers;

### 47 U.S. Code §217

**"In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."**

136.      Halperin individually, by and through the Halperin Defendants, is registered with the Commission as a Common Carrier. Therefore, Halperin is a Common Carrier!

137.      The Communications Act of 1934, in its basic provisions, is a classic regulated-industries statute, envisioning federal supervision of most of a communications carrier's operations.

138.      The 'Act' requires interstate common carriers to file with the Federal Communications Commission tariffs, that show all of the carrier's charges for and practices relating to its services. 47U.S.C. § 203.

139.        The carriers "charges, practices, classifications, [and] regulations" must be "just and reasonable" (47 U.S.C. § 201(b)) and can not be discriminatory (§ 202(a)).

140.        Plaintiff anticipates where Discovery into the Defendants charges and practices relating to its services will be dispositive facts supportive of Plaintiffs allegations.

141.        At one time, in an email (to Plaintiff) Halperin claimed he only provides Direct Inward Dialing (D.I.D.) services. Yet, he did not register that service with the FCC.

142.        The Telemarketing Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or practices;

### *Assisting and facilitating*

> **"It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule."**

143.        As a Common Carrier, Halperin knew, should have known or consciously avoided knowing, he was accepting traffic, providing substantial assistance or support to nefarious off-shore call-centers and telemarketers.

144.        The TRACED Act required the FCC to mandate the STIR/SHAKEN caller identification framework, under which Plaintiffs carrier (Optimum) confirmed that the entity routing the calls to Plaintiff, IP Horizon, is

and was the party Plaintiffs carrier charged for the carriage, routing and passing of each such call.

146. Upon information and belief, as noted above, STIR/SHAKEN enables phone companies to verify that the caller ID information transmitted with a call matches the caller's real phone number where that number *'is'* in service at the time of each such call.

146. While Halperin made false and misleading claims to Plaintiff where the numbers on Caller ID were not in service, Plaintiffs phone provider Optimum/Altice advised their 'carriage fees' are based upon valid working numbers being routed through their system, which therefore, must be in service, not disconnected or remain in a pool of unused numbers. *(See also: TRACED ACT)*;***Id.***

147. Accordingly: through the USTelecom's Industry Traceback Group (ITG), HFA/IP Horizon/Halperin originally routed and transmitted the subject calls. Halperin continues to initiate, participate, assist and facilitate this conduct which violates the Telemarketing Sales Rule (TSR) Sections 310.3(a), (c), & (d),

148. Under that provision, it is unlawful for any person or entity to "provide substantial assistance or support to any seller or telemarketer".

## XI.   DUTY OF CARE

149. Halperin intentionally continues to rent his numbers to entities among others, he identified in a previous subpoena. In doing so, **(a)**, Halperin

ignored the Federal Trade Commissions March 17, 2023 Cease & Desist Order; **(b)**, Halperin knowingly accepted and continues to accept foreign traffic by providing foreign, off-shore telemarketers and call-centers the use of his services as well as his numbers; **(c)** Halperin intentionally avoided vetting those entities knowing his services and numbers would be used for prohibited telemarketing activity including nefarious scam calls to numbers listed on the FTC no-call-registry, and **(d)**, Halperin not only profited from others using his services, he likewise profited from the dip-fees associated with his Caller ID provided numbers used, even if they were spoofed and/or the subject calls weren't answered.

150.        The Halperin defendants profit from "DIP FEES", an additional source of income they collect for carrying hundreds of thousands of calls through their system. ***Id.***

151.        For every call initiated to Plaintiff and others, using Halperins numbers, the terminating carrier of each call pays a DIP Fee to the Halperin Defendants for having terminated (delivered) the subject calls to their intended recipients.

152.        Halperin profits from the use of such numbers each time he or his subscribers initiates a call using his number as Caller ID, often a million times per day per number.

## XII.   ALTERNATIVE LIABILITY

**153.**          The allegations described in Plaintiffs complaint along with the detailed exhibits from authoritative sources is sufficient to impose liability for the within violations directly upon the Halperin Defendants.

**154.**          While Halperin provides a municipality of 'shell' LLC's including overseas entities and those in this country, <u>all operating out of a mailbox</u>, the locations of his data-centers remains a mystery.

**155.**          Nonetheless, Halperin cannot escape liability for his affiliation with the prohibited calls. Halperin is the Proximate Cause and passes the" But-For-Test".

**156.**          Plaintiff brings into This Court, all possible defendants including currently unidentified DOE Defendants, where each defendant breached a duty of reasonable care.

**157.**          If it were not for Halperin providing the products or services addressed within this complaint, his clients/customers/subscribers would be forced to seek alternative sources that might meet their needs, e.g., engaging in questionable telemarketing. Perhaps other more law-abiding Carriers would decline such service to those entities. <u>But for</u> Halperin and his LLC's, that issue was resolved!

## XIII.  PROXIMATE CAUSE

**158.**          The Defendants and each of them play[ed] a pivotal role in the dissemination of the subject calls.

159.        While Halperin chooses to evade liability, responsibility and knowledge of those calls, claiming he doesn't initiate calls, does not in and of itself, invite invalidation of liability against him or his cohorts.

160.        Halperin chooses to ignore the FTC Order;

> *"routing and transmitting illegal robocall traffic, directly or indirectly,. . .";*
> *"Further, the numerous trace-back notices directed to Halperin and HFA Services indicate that you are apparently routing and transmitting illegal robocall traffic knowingly." "IF YOU ARE ENGAGED IN THESE ACTIVITIES, THEN YOU MUST IMMEDIATELY CEASE AND DESIST FROM ENGAGING IN THEM."*
> **[FTC letter – Plt. EX-3]**

161.        Accordingly, with diligent research, background, history and evidence,  Halperin is placed as the common denominator in this conspiracy.

### XIV.   PLAINTIFF SUES HALPERIN INDIVIDUALLY UNDER THE FIDUCIARY SHIELD DOCTRINE, a/k/a CORPORATE SHIELD.

162.        Halperin purposely, intentionally and knowingly guided his company's clients/customers calls into the forum state, or, directed, controlled and instructed his agents and employees to do so, resulting in the course of conduct addressed and set-forth herein, in which he profiting through the use of his company's vast calling programs, features and services.

163.        As stated above, Halperin set up his shell companies and listed them as telephone common carriers, which provide among other services, Voice over Internet Protocol (VoIP) and SIP Termination.

164.        VoIP is the internet-based alternative to the Public Switched Telephone Network. (PSTN) Like PSTN, VoIP has global infrastructure. PSTN

requires both local and global physical infrastructure to function, fundamentally in the form of copper wires while VoIP uses the internet, which at some point, physically connects by copper wire to its terminating end.

**165.**          While listing his carrier status with the FCC, Halperin informed Plaintiff he only provides Direct Inward Dialing (D.I.D.) service to his clients but denies he initiates outbound calls.

**166.**          Halperins denial, as claimed above, is factually incorrect and conflicts with his marketing material. In part, Halperins promotional material speaks to "Origination" the beginning of a call, the starting point, the initiation of a call.

**167.**          Halperin controlled the activation, subscription, rental, use, lease, routing, contents, subject, delivery, initiation and termination of the subject calls.

**168.**          Halperin personally performed the above prohibited acts, profited from, by and through those unlawful acts for his own financial gain.

**169.**          Plaintiff received the subject calls on the dates illustrated in his Call Detail Records provided by his carrier and identified one of Halperins many company's, IP Horizon as the initiator! _Id._ [EXHIBIT- 1 & 2]

**170.**          Upon information and belief, Halperin subscribes to thousands or more idle phone numbers held by various and other operators of the Public Switched Telephone Network. _Id._

**171.**          Halperin rents those numbers to others, (subscribers/users,

clients or customers, call-centers and telemarketers) including lesser known common-carriers, thereby allowing Halperin to profit from such usage.

172.         The 81 "total-to-date" prohibited calls appearing on Plaintiffs Caller-ID sheet, were Halperins numbers, rented to clients and customers, devoid of vetting for the purpose and use of such numbers.

173.         Based upon the Federal Trade Commissions Cease and Desist Order to Halperin, Dated March 17, 2023, [*Id.* @EX-3], the allegations expressed therein along with information Plaintiff obtained from his carrier, Defendant Halperin individually and in active concert with the Halperin Defendants, willfully or knowingly continued to engage in, provide assistance to and aided in unlawful telemarketing by accepting foreign traffic from overseas entities, including generally lead-generators, telemarketers and call-centers, and by doing so, is liable and responsible for each of the subject calls and violations addressed within Plaintiffs complaint.

174.         If applying the "but for" theory, one could conclude that; "but for" Halperin initially, knowingly, continually and unlawfully providing his services along with US phone numbers to questionable overseas entities, the calls specific to the within matter would not have happened.

175.         However, acting on his own free will, Halperin made a calculated decision to ignore the FTC order, ignore or comply with Federal and State no-call-laws, and willfully commenced with the unlawful activity defined and described herein, to benefit his own financial gain, and is jointly and severally

liable for each of the violations resulting therefrom.

176.         Halperin denied initiating the subject calls, while the subject numbers, under his ownership and control appeared on Plaintiffs caller ID along with confirmation from Plaintiffs carrier, that indeed, the calls were delivered by Halperin's company, IP Horizon.

177.         Halperin has not asserted a colorable claim of innocence. "Silence, under these circumstances, is an admission against interest. *State v. Sorge,* 123 N.J.L. 532, 10 A. (2d) 175 (1940). [*See also*: emails from Halperin. *infra.*

178.         Yet: Halperin never denied the numbers were his which he rents to various unknown entities.

## XV.   HALPERIN'S CLAIM OF NON-WORKING NUMBERS IS AN INTENTIONAL FRAUD

179.         At one point in time, Halperin claimed the subject numbers were 'no longer used' some time in August 2023 and stated as such in Defendants email to Plaintiff, Sept. 12, 2023 3:36:37 PM;

**Email–09/12/2023 03:36 PM /Joey Buchbinder <jbuchbinder@iphorizon.com**
**Mr. Zelma,**

This email addresses your latest two claims that IP Horizon is the originator of calls from 316-540-8802 and 505-437-9281. We take these types of reports very seriously and understand your frustration.

Please be aware that IP Horizon is a wholesale Direct Inward Dial (DID) provider. This means IP Horizon sells phone numbers to other companies (Service Providers).

IP Horizon's service is to transport calls to the service provider that the phone number in question is assigned to (inbound). In no case do we provide services directly to end users/individuals. IP Horizon only sells to other service providers.

IP Horizon does NOT process calls from those numbers (outbound).

Outbound calling is managed by the service provider that is servicing the end user for outbound calling services.

Our NOC Department investigated the phone numbers provided. These had been assigned to a customer that we *proactively fired approximately 1 month ago.*

*The numbers are no longer in use.*

Please understand that many calls that are fraudulent or illegal are often made by faking/spoofing the source phone number. Often, the service provider and end-user may not have initiated or processed the calls in question. Your service provider is the only one in a position to work backward and trace the call in question back to the actual source.
Best,
Joey Buchbinder

**180.**　　　　While in-house counsel for the Defendants, Buchbinder's play-on-words stating; "***the numbers are no longer in use***" and "***These had been assigned to a customer that we proactively fired approximately 1 month ago***", he fails to state with particularity whether or not the numbers are no longer in use with a specific customer, or, were taken out-of-service (disconnected) or simply reassigned to a different client/ customer in May and August 2023.

**181.**　　　　Interestingly,　Attorney Buchbinder avoids specifics in his response, is confused or chooses to claim "they can <u>fire a customer</u>"!

**182.**　　　　This comment alone raises questions and concerns over the alleged firing, who was "fired", what caused the alleged firing, what damages were incurred, all of which will be sought through continuing Discovery.

**183.**　　　　In addition to this municipality of reasons, excuses and alibis, the Defendants calls started in May 2023 and continue to this day.

**184.**　　　　Halperin further claimed (after the fact) his deactivated numbers if called, the caller would hear "<u>*the number was not is service*</u>".

**185.**　　　　Halperin's statement is inaccurate, impossible, simply not true and factually incorrect. When randomly calling any of his alleged "***no longer in use*** ***numbers,*** a variety of prerecorded announcements could be heard, such as; "*please hold for the next available agent*", or, "*Your call is very important to us,*

*please stay on the line*", just to name a few.

186.     Those messages do not evidence a deactivated or ***no longer in use*** phone number, but rather a working number, possibly a D.I.D. number <u>still in service</u>, assigned to a different client!

187.     Moreover: the Halperin Defendants, cannot collect a "DIP fee" from a deactivated or non-working number. [***<u>Id.</u>*** @ FN.3]

188.     Plaintiffs carrier could not display a non-working spoofed number if they cannot collect a carriage fee. (***See:*** **47 CFR §69.105(b)(4)(ii); Carrier, common line for non-price cap local exchange carriers.)**

189.     To further crumble the fatal foundation upon which Halperin constructs his fraudulent claim of non-working numbers, Plaintiffs employed 'Nomorobo' with his carrier (Optimum).

190.     Technically, a spoofed phone number cannot initiate a call, period. Likewise, a deactivated/ non-working number cannot initiate a call.

191.     Upon Plaintiffs information and belief, it is impossible or near impossible for any spoofed, inactive phone number to pass the Nomorobo service.

192.     When Plaintiffs numbers are called, 'Nomorobo' uses a simultaneous ring in which the incoming call is (simultaneously) sent during the first incoming ring to their center, tested for accuracy (spoofed non-working/deactivated numbers) and filtered against data of 5 Million robocall numbers at a speed equal to or faster then an *Easy-Pass* reader.

193.        Furthermore, Nomorobo incorporates algorithms which look for calling patterns that are typical for robocalls, spoofed, non-working/deactivated numbers along with call volume, repeat calls, from such numbers calling in a given time and repeated to the same number, where such calls are then blocked.

194.        Calls screened by Nomorobo, detected as spam, non-working, spoofed robo-calls, etc, are blocked from delivery to the intended recipient during the first ring cycle. Subsequently, the call is then dropped by their system and will not continue to its target.

195.        Because Caller ID data is sent to the called party during the second ring cycle, it is during the first ring cycle where the elements of call authentication takes place.

196.        Nomorobo, will only allow non-spoofed numbers, working numbers or calls which do not pass the spam test, to continue to ring the recipients phone continually, until responded to. (*See:* https://nomorobo.zendesk.com)

197.        Therefore, if as Halperin claims, his numbers were spoofed and/or not in service, it would be impossible for his calls to be routed, carried and delivered by Optimum and Plaintiffs numbers and displayed on Plaintiffs Caller ID.

198.        As described above, Plaintiff responded to each of the Defendants calls as they passed the Nomorobo test, were active working

numbers which continued to ring Plaintiffs phones until answered.

## XVI.  **HALPERIN'S CONDUCT WAS WILLFUL OR KNOWING**

**199.**      Halperin knowingly or willfully allowed and permitted IP Horizon to provide VoIP services including D.I.D. and SIP termination service to the yet unknown Doe defendants, resulting in **EIGHTY ONE [81]** incoming prohibited calls to Plaintiffs landlines, while knowing or consciously avoided knowing Plaintiffs numbers were listed on the Federal DNC Registry since 2003.

**200.**      Halperin never admitted vetting his clients prior to the subject calls. He consciously and willfully avoids knowledge of their nefarious intentions to solicit into this state using his facilities in which to do so.

**201.**      Moreover; Halperin's 'IP Horizon' comes with questionable history. [See: "*iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (E.D.N.Y. 2011) Decided Oct 21, 2011; MO&O, ¶2; "an agreement whereby IP Horizon agreed to provide "call termination services". . .".]

**202.**      Halperin's shell, IP Horizon is the listed owner / subscriber of each number associated with the Eighty One [81] prohibited calls identified in Plaintiffs incoming-call-report provided by his carrier Optimum/Altice.

**203.**      Optimums voice/phone service agents confirmed the accuracy of Plaintiffs Caller ID, with calls sent from IP Horizon. (*See:***47 CFR §69.105(b)(4) (ii)**)

**204.**      Thus, Halperin is jointly, constructively and severally liable for each of the violations defined and described herein as he directed,

controlled, processed and provisioned the subject calls from which he financially benefits.

205.        Halperin cannot assert any claim that neither he or his company are compliant with Federal and State Law governing telemarketing, since he doesn't subscribe to the Federal no-call-registry or the N.J. State no-call list.

206.        Halperin's affiliation, partnership, involvement and profiting through his customers/clients and others, exposes him to significant liability.

207.        Halperin controlled the means and details of the process by which his customers would accomplish their goal by and through the use, cooperation, and routing of services provided by Halperins companies.

208.        Halperin made unsupported claims where his business only accepts calls from other carriers to provide Direct Inward Dialing (D.I.D.) services.

209.        D.I.D. phone service was originally designed for multi-line office systems to enable outside callers to avoid the receptionist and dial their call direct to an extension. D.I.D. was not intended to aid in nefarious or unlawful intent.

210.        Halperin's use and provisioning of his services goes well beyond D.I.D. Service and the proscriptions of the TCPA and the TSR.

211.        For example: Halperin's numbers _were_ working at the time of each call. **_Id._**

212.        Halperins D.I.D. service allows call-centers to use given numbers he provided and use such numbers simply to make it difficult to identify the actual caller.

213.        Upon information and belief, Halperin subscribes to such numbers from the large[r] PSTN telephone companies.

214.        The Halperin Defendants initiated or aided their subscribers in initiating the subject calls, causing telemarketing calls to be made to Plaintiff, introduced with prerecorded messages, without the prior express written consent of Plaintiff.

215.        Halperins subscribers use those numbers to redirect (call forward) answered calls to their own call-center which possibly incorporate the prerecorded messages and live agents.

216.        Halperin knows or can easily research his subscriber to each number, but chooses not to do so, claiming he doesn't know.

217.        Calls (returned) to the subject Caller ID numbers were <u>never</u> met with 'SIT' tones (a special information tone) or vacant number intercept, indicating the number[s] was/were not in service; the call didn't complete; a failed connection; busy circuits, dialing error or an announcement "the number is not in service" to name a few. Therefore, those numbers **were** working! ***Id.***

218.        The PSTN is the only authorized entity to insert SIT tones or "Number not in Service" announcements once the attempted call reaches and terminates at any phone companies physical location or destination and since no

such announcement was ever heard, the subject numbers were all working.

219.     The Halperin alter-egos do not meet the standards of a PSTN operator and therefore cannot insert a SIT Tone or a "number not in service" announcement!

220.     Plaintiff initially subpoenaed Halperin, requesting among other things, a block diagram showing how his company communicates with clients, customers and/ or call-centers or vice-versa. Halperin refused claiming "trade secrets".

221.     Halperin, IP Horizon along with his other shell companies are responsible to follow the Rules along with the March 2023 FTC Order, assuring they are not furthering illegal entities from initiating unlawful calls to unsuspecting consumers or those who have placed their numbers on the federal and state no call list.

222.     Those notifications place Defendant Halperin on notice where his repeat services, defiant of the FTC Order, helped to facilitate and disseminate illegal robocalls into this country and this State, to Plaintiff, without regard to its laws and proscriptions.

223.     Halperin could have chosen to implement effective and meaningful procedures to prevent or even significantly mitigate the perpetration of illegal behavior onto and across the nationwide telephone network, but intentionally chose not to do so.

### *Defendants' Statements Against Interest*

**224.**　　　　Following Plaintiffs extensive due-diligence and investigation into the source of the subject calls, including call-trace results from his carrier, Optimum/Altice, Plaintiff was able to connect all of the subject numbers to the Defendants' Halperin and IP Horizon.

**225.**　　　　Upon further investigation into the company, it was learned where Defendant Halperin was its owner, manager, founder and director.

**226.**　　　　Plaintiff sent Halperin notice of the calls before they started to increase, in late August, 2023.

**227.**　　　　Halperin responded to plaintiff, stating in relevant part as follows:

**Sent: Tuesday, September 12, 2023 2:36 PM**

> **"Please be aware that IP Horizon is a wholesale Direct Inward Dial (D.I.D.) provider. This means IP Horizon sells phone numbers to other companies (Service Providers).** *(The statement 'sells', is factually incorrect. IP Horizon nor Halperin own the subject numbers. They are owned by the PSTN. Halperin and the Halperin Defendants "subscribe" to such numbers. If not owned, they cannot be sold! Halperin 'rents' those numbers to other service providers)*
> **[Continued] IP Horizon's service is to transport calls to the service provider that the phone number in question is assigned to (inbound). In no case do we provide services directly to end users/individuals. IP Horizon only sells to other service providers. Outbound calling is managed by the service provider that is servicing the end user for outbound calling services."** (*Wrong again! Halperin is providing the service, controlling the routing where the unlawful calls are being initiated. Halperin must comply with telemarketing law. He cannot escape liability relying on "his customers" to comply. Halperin has a non-delegable duty. Black's Law Dictionary, 2nd Edition. 1. General: An obligation that cannot be outsourced to a third party according to the terms of the contract.*)

**228.**　　　　As the calls continued, Halperin responded further via email through in-house counsel, to state the following in relevant part:

From: On Sep 14, 2023, at 10:25 AM,
Joey Buchbinder <jbuchbinder@iphorizon.com> wrote

"When you look up these phone numbers and see IP Horizon, that means that we are the Operating Company that, from a regulatory perspective, is the one that the phone number was assigned to by the NPAC. *(This statement is false and misleading. The NPAC assigned the subject phone numbers to the real operating companies [PSTN] identified on Plaintiffs call records).*
[Buchbinder continues] This means that when someone in the world calls that D.I.D., unless they have a more direct route to the end subscriber, that call will be routed to IP Horizon via the PSTN Tandem connections." *(And that "routing" is what the FTC ORDERED the Halperin defendants to stop!)*

229.　　　　These statements further the defendants knowledge of willfully refusing to comply with the prior FTC demand letter but continue to provide services to off-shore entities while knowing those entities were violating US Laws.

## XVII. <u>THIS COURT'S POWER TO GRANT RELIEF</u>

230.　　　　47 <u>U.S.C.</u> §227(b)(3)(A) empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any future violation by the Defendants of any provision of law enforced by the FCC or New Jersey State Law that protects Plaintiff.

231.　　　　Plaintiff will suffer and continues to suffer harassment along with substantial emotional distress and abuse that annoys and alarms his household if the Defendants are permitted to continue to engage in their questionable practices and if Permanent Injunctive Relief is not granted.

232.　　　　Accordingly, Plaintiff has a cause of action against the Defendants and each of them and hereby seeks relief under the TCPA's Strict Liability statutory trebled damage award along with applicable Federal and

State Law claims as well as Permanent Injunctive Relief pursuant to the foregoing, against the Defendants and each of them.

### XVIII.       COUNT ONE
### Violations of the Telemarketing Sales Rule
### (TSR) 16 CFR §§310.4(a)(8); (b)(i) to (v).

233.       Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred thirty-two as if set forth in full at length.

234.       The dates illustrated on the Plaintiffs call history, set-forth as Exhibit 1&2, evidence Plaintiffs receipt of **EIGHTY ONE [81]** calls from the Defendants, initiated to his two land-line numbers. *Supra.*

235.       The Defendants and each of them initiated directly and processed or provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TSR.

236.       The defendants repeatedly initiated those calls to Plaintiffs numbers that had been placed on the FTC no-call-registry since inception, 2003. *Id.*

237.       Each call was devoid of any name that would identify the actual caller when initiated or passed through defendant IP Horizon as the carrier.

238.       The Telemarketing Sales Rule at **§310.4 (a)** states:

> **"It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:**
> **(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the**

telemarketer, to any caller identification service in use by a recipient of a telemarketing call;. . ."

**Continuing;**
**16 CFR §§310.4(b)(i) to (v).**
**Pattern of calls**

239.     The defendants and each of them conspired to continually call Plaintiff, even after being told not to, by refusing to honor plaintiffs repeated do-not-call requests; by failing to subscribe to the no-call federal registry; by failing to implement their own internal no-call-list; by abandoning some calls, and repeatedly called plaintiff eighty one [81] times, often with a pattern of several times within one day and introducing the responded calls with a prerecorded message.

WHEREFORE, Plaintiff respectfully seeks This Courts choice to award Punitive damages at an amount The Court deems just and proper, to deter the defendants future prohibited conduct

**XIX.   COUNT TWO**
**VIOLATIONS OF 47 U.S.C. §227(c)(5)(C);**
**WILLFULLY OR KNOWINGLY SOLICITING A**
**NUMBER ON THE FTC NO-CALL-LIST**

240.     Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred thirty-nine as if set forth in full at length.

241.     Plaintiffs call history, (EX-1&2), evidences Plaintiffs receipt of **EIGHTY One [81]** prohibited calls from the Defendants and each of them, initiated to his two land-lines. *Supra.*

242.         The Defendants and each of them initiated directly or processed and provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TCPA.

243.         The defendants repeatedly initiated those calls to numbers that had been placed on the FTC no-call-registry since inception, 2003 and the New Jersey no-call-list in 2004 which mirrors the federal registry. *Id.*

244.         While being registered with both Federal and State no-call-registries, Plaintiff made an initial no-call-request to the May 2023 call along with an additional no-call request with live agents during the continued calls, a request that was repeatedly ignored.

245.         The defendants foregoing acts were knowingly made. The defendants knew or consciously avoided knowing that their calls were in violation of US law, but willfully chose to initiate the calls anyway.

246.         The Defendants calls were <u>not emergencies</u> but purposely initiated to plaintiff for marketing purposes and violated the proscriptions of 47 U.S.C. §227(c)(5)(C).

The TCPA states in relevant part:

**"47 <u>U.S.C.</u> §227;**

. . .
. . .
**Protection of subscriber privacy rights**
**(5)       Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—**
**(A). . .**
**(B). . .**

(C)    both such actions.

"It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

247.         The defendants did not implement or establish an internal no-call-policy; neither of them sent Plaintiff their Written Policy upon demand, they did not register with the State of New Jersey to solicit consumers in the forum state, did not purchase a no-call subscription from the FTC and did not inform or train their agents or employees in implementing a no-call request, thus exposing themselves to the proximate cause.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory trebled damages of $1,500.00 for each of the **EIGHTY ONE [81]** calls, willfully, knowingly and repeatedly made to Plaintiffs residential land-lines, material to Count Two for a total of One-Hundred Twenty-One-Thousand Five-Hundred Dollars ($121,500.00).

## XX.   COUNT THREE
## HALPERIN USED PRERECORDED MESSAGES
### Violation to 47 U.S.C.§227(b)(1)(B)

248.         Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred forty-seven as if set forth in full at length.

**249.**     The Telephone Consumer Protection Act (TCPA; 47 U.S.C. § 227) and its implementing regulations (47 C.F.R. § 64.1200) regulate the use of automatic dialers (ATDS) strictly prohibit non-consented ("prerecorded messages") in the delivery of telephone solicitations.

**250.**     The TCPA prohibits using an ATDS or prerecorded messages or prerecorded telemarketing messages in marketing calls to residential land-line phones, unless the recipient had provided prior express written "consent" to receive such calls.

**251.**     The Defendants and each of them initiated either directly or processed and provided assistance in the initiation of each such call, willfully or knowingly made to Plaintiff, in violation of the regulations prescribed under the TCPA.

**252.**     The Halperin Defendants knowingly used various technology to produce an artificial or prerecorded voice message during the delivery and introduction of the subject calls, or, the Halperin Defendants aided foreign entity clients in producing the prohibited prerecorded messages which greeted Plaintiff in each call.

**253.**     Halperin owns, operates, directs and controls several levels of 'Shell companies' as his business.

**254.**     Halperin, including himself is an employee, maintains a staff of employees including in-house counsel, all allegedly versed in telephony.

255.        Therefore Halperin knew or should have known, where the use of such technology that incorporates a prerecorded message and delivers such message in a telemarketing call, raises a separate and distinct violation to the TCPA.

256.        It is herein alleged that Halperin and the Halperin Defendants, delivered **EIGHTY ONE [81]** prohibited calls to Plaintiff, which were received and responded to, where Plaintiff did hear a prerecorded messages as set-forth above, on the dates illustrated within Plaintiffs Exhibit 1 & 2.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory trebled damages of $1,500.00 for each of the Defendants **EIGHTY ONE [81]** calls which contained, introduced and delivered prerecorded messaging in each such call, willfully, knowingly and repeatedly made to Plaintiffs residential land-lines, material to Count Three for a total of One-Hundred Twenty-One-Thousand Five-Hundred Dollars ($121,500.00).

### XXI.   COUNT FOUR
### SEC. §206. CARRIERS' LIABILITY FOR DAMAGES

257.        Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through two-hundred fifty-six as if set forth in full at length.

258.        The Halperin Defendants are Common Carriers, each registered with the FCC under various 499 Filer ID numbers. *Id.*

259.         The Telephone Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or practices. *Id.*

260.         The provisions of Title 47 USC- SEC. §206, states in relevant part:

> "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, . . ."

261.         Pursuant to authority, 47 USC §217:

> "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."

262.         When read together with Common Carrier Code §206, §217 defines Halperin, registered with the FCC as a Common Carrier, deemed to be "the act, omission or failure of such carrier or user as well as that of the person".

263.         Halperin was required to respond within three [3] business days of the Federal Trade Commissions March 17, 2023 Cease and Desist Demand;

> ***"that HFA Services has ceased engaging in the activities described above that may subject it to liability under the TSR or the FTC Act."***

264.         Halperin o/b/o HFA Services, was required to respond to that

letter no later then March 22, 2023, complying with their demand.

**265.**          Upon Plaintiffs information and belief, Halperin and HFA failed to respond.

**266.**          As of April 11, 2023, Halperin and his companies were prohibited and Ordered to stop accepting traffic from foreign providers not listed in the RoBo Mitigation Database. (RMD). (See: FCC- Robocall Mitigation Plan and Certificate Filing Mandate, January 3, 2023), but he did not and is therefore liable under §206.

**WHEREFORE**, Plaintiff demands judgment against Defendants and each of them as follows:

Award Plaintiff actual or Punitive damages, material and relevant to Statutory Damages cited in Counts 2 and 3 of this Complaint as This Court deems just, for each of the **EIGHTY ONE [81]** prohibited calls material to Count Four.

## PRAYER FOR RELIEF

**WHEREFORE:** Plaintiff respectfully prays that this Court:

**(a)**          Award Plaintiff Putative damages as This Court deems just and proper, material to **Count ONE**. Private citizens may bring an action to enforce the TSR if they have suffered $50,000 or more in actual damages. Anyone who violates the TSR is subject to civil penalties of up to

$51,744 for each violation. Punitive damages can be awarded in cases where the defendant's conduct is found to be particularly egregious or malicious.

As described and defined herein, Plaintiffs Complaint demonstrates the willful act of flagrant and spiteful conduct by the Defendants and each of them, (to date) initiating **EIGHTY ONE [81]** prohibited calls, a direct violation to the TSR, its underlying proscriptions, where statutory damages to Plaintiff far exceeds Fifty Thousand Dollars.

**(b)**      Award Plaintiff strict liability statutory damages trebled to $1,500.00 for each of the **EIGHTY ONE [81]** prohibited calls willfully or knowingly made in violation of the regulations prescribed under the TCPA, <u>**47 U.S.C. §227(c)(5)(C),**</u> material to **Count TWO**.

As defined within the Communications Act of 1934, 47 <u>U.S.C.</u> §312(f)(1), administered by the FCC, Plaintiff respectfully seeks trebling the relief sought in sub-section (b) of this Prayer, for a total amount of One-Hundred Twenty-One-Thousand Five-Hundred-Dollars ($121,500.00)**.**

**(c)**      Award Plaintiff strict liability statutory damages trebled to $1,500.00, for each of the **EIGHTY ONE [81]** calls willfully, knowingly or repeated, introduced with a prerecorded message in violation of the regulations prescribed under the TCPA, <u>**47 U.S.C.§227(b)(1)**</u> <u>**(B),**</u> material to **Count THREE**.

**55**

As defined within the Communications Act of 1934, 47 U.S.C. §312(f)(1), administered by the FCC,[7] Plaintiff respectfully seeks trebling the relief sought in sub-section (c) of this Prayer, for a total amount of One-Hundred Twenty-One-Thousand Five-Hundred-Dollars ($121,500.00).

The TCPA prohibits using any form of prerecorded messages in marketing calls to residential land-line phones, unless the recipient had provided prior express written "consent" to receive such calls. Plaintiff never provided the Defendants any Prior Express Written Consent to solicit him or otherwise, using prerecorded messaging to introduce each such call.

**(d)**        Award Plaintiff actual or Punitive damages, material and relevant to Statutory Damages cited within Counts 2 and 3 of this Complaint as This Court deems justified for each of the **EIGHTY ONE [81]** calls material to **Count FOUR**.

**The Telephone Sales Rule, 16 CFR §310.3(b), prohibits Common Carriers from engaging in deceptive telemarketing acts or**

---

[7]   **(f)"Willful" and "repeated" defined for purposes of this section:**

(1)The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation of the Commission authorized by this chapter or by a treaty ratified by the United States.

(2)The term "repeated", when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.

**practices.** Halperin and the Halperin Defendants have various FCC ID numbers listings them as Common Carriers.

The provisions of Title 47 USC- SEC. §206, states in relevant part:

> "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, . . ."

The Chapter referenced above is Chapter 5 of the TCPA, which in relevant part this Complaint is aligned with, holding damages to the Statute cited in Counts 2 and 3.

(e)    Award Plaintiff costs (NOT LEGAL FEES) and filing fees associated with the necessity to bring this litigation pursuant to N.J.S.A. §56:8-19

(f)    Award Plaintiff Permanent Injunctive Relief pursuant to 47 U.S.C. §227(b)(3)(A)

(g)    Award Plaintiff any Other Equitable Relief This Court deems justified to stop these Defendants telemarketing activities defined and described herein.

(h)    Plaintiff reserves the right to amend this Complaint or supplement this prayer, in the event additional violations occur post filing or additional information surfaces through continuing discovery.

57

Respectfully submitted,

*/s/Richard M. Zelma*
Richard M. Zelma
PLAINTIFF, *pro se*
Dated: January 21, 2024

### RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of <u>R.</u> 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

### Rule 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule1:38-7(b).

In accordance with the New Jersey Rules of Court, as used herein, Plaintiffs reference to any documents or papers, which may contain personal, private or confidential account information, provided to Plaintiff by Defendant[s], either voluntarily or through Subpoena, will be submitted under seal, following consent from The Court. (***See:*** <u>R.</u>1:38-11(d)).

By: */s/ Richard M. Zelma*
RICHARD M. ZELMA, *pro se*
Dated: January 21, 2024



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

## For Use by Clerk's Office Only

| Payment type | ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |
|---|---|---|---|---|---|

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Richard M. Zelma | (201) 767-8153  ext. | Bergen ▼ |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | BER-L-5354-23 |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 940 Blanch Avenue | Norwood | NJ | 07648 |

| Document Type | Jury Demand |
|---|---|
| Amended Complaint | ☐ Yes  ■ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Richard M. Zelma, pro se Plaintiff | Zelma vs. Michael Peter Halperin, ("Halperin") Individually, and; |

Case Type Number (See page 3 for listing)  699

Are sexual abuse claims alleged?  ☐ Yes  ■ No

Does this case involve claims related to COVID-19?  ☐ Yes  ■ No

Is this a professional malpractice case?  ☐ Yes  ■ No

  If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
  regarding your obligation to file an affidavit of merit.

Related Cases Pending?  ☐ Yes  ■ No

  If "Yes," list docket numbers

Do you anticipate adding any parties (arising out of same
transaction or occurrence)?  ☐ Yes  ■ No

Name of defendant's primary insurance company (if known)  ☐ None  ■ Unknown

| **The Information Provided on This Form Cannot be Introduced into Evidence.** |
| --- |

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?  ☐ Yes  ■ No
  If "Yes," is that relationship:
  ☐ Employer/Employee  ☐ Friend/Neighbor  ☐ Familial  ☐ Business
  ☐ Other (explain) _____

Does the statute governing this case provide for payment of fees  ☐ Yes  ■ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

Do you or your client need any disability accommodations?  ☐ Yes  ■ No
  If yes, please identify the requested accommodation:

Will an interpreter be needed?  ☐ Yes  ■ No
  If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: ___/s/ Richard M. Zelma_____

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**          ☐ **Title 59**          ☐ **Consumer Fraud**

☐ **Medical Debt Claim**

| | CALLS TO 8153 | DATE /TIME | National Phone Number Registry |
|---|---|---|---|
| 1) | (480) 846-6617 | 05/23/2023 11:11 AM | ONVOY, LLC - AZ |
| 2) | (470) 849-3692 | 06/03/2023 11:48 AM | EXIANT COMMUNICATIONS LLC |
| 3) | (316) 397-9051 | 07/20/2023 01:20 PM | ONVOY, LLC - KS |
| 4) | (614) 252-2714 | 07/21/2023 12:18 PM | OHIO BELL TEL CO |
| 5) | (229) 658-5675 | 07/21/2023 02:50 PM | WINDSTREAM GEORGIA COMMUNICATIONS CORP. |
| 6) | (270) 330-9293 | 07/24/2023 11:50 AM | LEVEL 3 COMMUNICATIONS, LLC - KY |
| 7) | (317) 434-9685 | 07/27/2023 04:31 PM | LEVEL 3 COMMUNICATIONS, LLC - IN |
| 8) | (775) 417-9939 | 08/01/2023 10:40 AM | ONVOY, LLC - NV |
| 9) | (636) 651-6103 | 08/02/2023 01:17 PM | TELEPORT COMMUNICATIONS AMERICA, LLC - MO |
| 10) | (743) 229-4553 | 08/02/2023 04:53 PM | EXIANT COMMUNICATIONS LLC |
| 11) | (385) 360-4298 | 08/03/2023 02:46 PM | TWILIO INTERNATIONAL, INC. |
| 12) | (580) 200-4246 | 08/04/2023 09:38 AM | ONVOY, LLC - OK |
| 13) | (352) 842-0551 | 08/04/2023 11:31 AM | FRACTEL, LLC |
| 14) | (818) 200-2781 | 08/04/2023 02:05 PM | CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS - CA |
| 15) | (401) 399-6220 | 08/05/2023 01:12 PM | TELEPORT COMMUNICATIONS AMERICA, LLC - CA |
| 16) | 208-729-4697 | 08/25/2023 09:11 AM | FARMERS MUTUAL TELECOM INC. |
| 17) | 520-527-1983 | 09/07/2023 10:32AM | ONVOY, LLC - AZ |
| 18) | (254) 720-6232 | 09/07/2023 01:14 PM | CENTURYLINK COMMUNICATIONS, LLC |
| 19) | (430) 258-0589 | 09/07/2023 03:40 PM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 20) | (724) 218-6295 | 09/18/2023 10:12 AM | ACTV  TELEPORT COMMUNICATIONS AMERICA, LLC - PA |
| 21) | 201 479-9909 | 10/04/2023 12:49 PM | PEERLESS NETWORK OF NEW JERSEY, LLC - NJ |
| 22) | 208 252 3220 | 2023-11-17 06:41 PM | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - ID |
| 23) | (304) 973-8870 | 11/22/2023 04:02 PM | CEBRIDGE TELECOM WV, LLC D/B/A SUDDENLINK COMMS-WV |
| 24) | 201 479-9909 | 11/27/2023 11:19 AM | PEERLESS NETWORK OF NEW JERSEY, LLC-NJ |
| 25) | (812) 296-5312 | 11/29/2023 11:31 AM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 26) | (505) 806-2925 | 12/04/2023 11:41 AM | ONVOY, LLC - NM |
| 27) | 517 208 3262 | 01/10/2024 3:36 PM | CENTURYLINK COMMUNICATIONS, LLC |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



PLAINTIFFS
EXHIBIT
1

| CALLS TO 8154 | DATE / TIME | PSTN National Phone Number Registry |
|---|---|---|
| 1. +440 271-2264 | 2023-09-17 at 14-57-27 | WINDSTREAM WESTERN RESERVE, INC. |
| 2. +470 849-3692 | 2023-09-17 at 23-35-55 | EXIANT COMMUNICATIONS LLC |
| 3. +501 449 2722 | 2023-09-13 at 19-43-04 | T-MOBILE USA, INC. |
| 4. +501 449 2722 | 2023-09-13 at 20-22-07 | T-MOBILE USA, INC. |
| 5. +505 437-9281 | 2023-09-13 at 20-27-02 | BANDWIDTH.COM CLEC, LLC - NM |
| 6. +229 658 5675 | 2023-09-18 at 12-36-48 | WINDSTREAM GEORGIA COMMUNICATIONS CORP. |
| 7. +254 720 6232 | 2023-09-18 at 12-15-38 | CENTURYLINK COMMUNICATIONS, LLC |
| 8. +270 330 9293 | 2023-09-18 at 12-38-27 | LEVEL 3 COMMUNICATIONS, LLC-KY |
| 9. +316 397 9051 | 2023-09-18 at 12-31-59 | ONVOY, LLC - KS |
| 10. +317 434 9685 | 2023-09-18 at 12-44-27 | LEVEL 3 COMMUNICATIONS, LLC - IN |
| 11. +352 842 0551 | 2023-09-18 at 12-57-59 | FRACTEL, LLC |
| 12. +385 360 4298 | 2023-09-18 at 12-54-23 | TWILIO INTERNATIONAL, INC. |
| 13. +430 258 0589 | 2023-09-18 at 12-17-13 | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 14. +743 229 4553 | 2023-09-18 at 12-51-45 | EXIANT COMMUNICATIONS LLC |
| 15. +480 846 6617 | 2023-09-17 at 19-45-26 | ONVOY, LLC - AZ |
| 16. +501 449 2722 | 2023-09-17 at 15-24-56 | T-MOBILE USA, INC. |
| 17. +316 540-8802 | 2023-09-13 at 20-25-39 | SOUTHWESTERN BELL |
| 18. + 316 540-8822 | 2023-09-13 at 20-24-23 | SOUTHWESTERN BELL |
| 19. 302 315 8431 | 2023-09-17 at 15-07-55 | ONVOY, LLC - DE |
| 20. 401 399 6220 | 2023-09-18 at 13-02-36 | TELEPORT COMMUNICATIONS AMERICA, LLC - CA |
| 21. 580 200 4246 | 2023-09-18 at 12-56-03 | ONVOY, LLC - OK |
| 22. 601 603 4535 | 09/15/2023 01:48 PM | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - MS |
| 23. 601 603 4535 | 2023-09-18 at 14-30-13 | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - MS |
| 24. 614 252 2714 | 2023-09-18 at 12-35-00 | OHIO BELL TEL CO |
| 25. 636 651 6103 | 2023-09-18 at 12-49-40 | TELEPORT COMMUNICATIONS AMERICA, LLC - MO |
| 26. 775 417 9939 | 2023-09-18 at 12-46-14 | ONVOY, LLC - NV |
| 27. 818 200 2781 | 2023-09-18 at 13-00-06 | CELLCO PARTNERSHIP DBA VERIZON WIRELESS - CA |
| 28. 724 218 6295 | 2023-09-18 at 14-18-24 | TELEPORT COMMUNICATIONS AMERICA, LLC - PA |
| 29. 318 569-1881 | 08/21/2023 03:51 PM | ONVOY, LLC - LA |
| 30. 214 983-5162 | 09/07/2023 12:44 PM | PEERLESS NETWORK OF TEXAS, LLC - TX |
| 31. 317-497-7600 | 05/26/2023 05:42 PM | GLOBAL CROSSING LOCAL SERVICES, INC. - IN |
| 32. 239 510 3693 | 2023-09-21 at 16-14-01 | ONVOY, LLC - FL |
| 33. 209 693 4580 | 2023-09-21 at 12-54-23 | T-MOBILE USA, INC. |
| 34. 254 212-3643 | 2023.09.27 19.29.26 | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 35. 254 212-3643 | 09/27/2023 06:00 PM | NEW CINGULAR WIRELESS PCS, LLC - IL |
| 36. 601 603 4535 | 2023/09/17 15.21.02 | VERIZON WIRELESS-MS |
| 37. 209 692-4616 | 09/26/2023 12:15 PM | T-MOBILE USA, INC. |
| 38. 209 692-4449 | 09/26/2023 09:31 AM | T-MOBILE USA, INC. |
| 39. 743 235-2337 | 09/23/2023 01:21 PM | NUSO, LLC |
| 40. 201 479-9909 | 10/04/2023 11:05 AM | PEERLESS NETWORK OF NEW JERSEY, LLC - NJ |
| 41. (310) 974-8478 | 11/04/2023 02:13 PM | MCIMETRO ACCESS TRANSMISSION SERVICES LLC - CA |
| 42. (228) 262-9088 | 11/08/2023 12:47 PM | NUSO, LLC |
| 43. (203) 580-9313 | 11/07/2023 05:48 PM | PEERLESS NETWORK OF CONNECTICUT, LLC - CT |
| 44. (203) 580-9313 | 2nd-11/07/2023 05:48 PM | PEERLESS NETWORK OF CONNECTICUT, LLC - CT |
| 45. (406) 500-5722 | 11/07/2023 04:22 PM | FRACTEL, LLC |
| 46. 915 292 2835 | 2023-11-17 at 19-33-37 | ONVOY, LLC - TX |

PLAINTIFFS EXHIBIT 2



United States of America
**FEDERAL TRADE COMMISSION**
East Central Region

1111 Superior Avenue, Suite 200                          Jon Miller Steiger
Cleveland, Ohio 44114                                              Director
(216) 263-3455

March 17, 2023

## <u>CEASE AND DESIST DEMAND</u>

*VIA EMAIL TO:*
*michael@call48.com*

HFA Services LLC, also d/b/a Call48
Michael Halperin, CEO
1200 South Rogers Circle
Unit 6
Boca Raton, FL 33487
c/o Samuel Kastner, Registered Agent

We have determined that HFA Services LLC, also d/b/a Call48 (HFA Services) is apparently routing and transmitting illegal robocall traffic, directly or indirectly, for entities involved in the following campaigns:

- Amazon-AuthorizeOrder
- Amazon-SuspiciousCharge
- Amazon-SuspiciousCharge-P1
- Chinese-PackageDelivery
- FedReserv-Impers
- Grandparentscam
- Hotel-ComplimentaryStay
- Legal-Enforcement-Notice
- SSA-Suspended
- StudentLoan-Forgiveness/Relief-Center
- StudentLoan-Payments-P1
- Utility-30MinDisconnect

More specifically, our investigation revealed that HFA Services apparently routed and transmitted illegal robocalls, as set forth in Attachment A.

The Federal Trade Commission (FTC) works closely with USTelecom's Industry Traceback Group (ITG), which is the registered industry consortium selected pursuant to the

TRACED Act to conduct tracebacks.[1]  Between September 7, 2021, and February 4, 2023, ITG investigated 35 prerecorded voice message calls that law enforcement, voice service providers using honeypots (i.e., unassigned numbers held by providers to detect illegal robocalls), and customers of YouMail had flagged as illegal robocalls made without consent of the called party.[2]  ITG conducted tracebacks and determined that HFA Services routed and transmitted the calls.  ITG previously notified you of these calls and provided you access to supporting data identifying each call—including a recording of the illegal robocall—as indicated in Attachment A.  Further, the numerous traceback notices directed to HFA Services indicate that you are apparently routing and transmitting illegal robocall traffic knowingly.  **IF YOU ARE ENGAGED IN THESE ACTIVITIES, THEN YOU MUST IMMEDIATELY CEASE AND DESIST FROM ENGAGING IN THEM.**

The FTC, the nation's consumer protection agency, enforces the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45 et seq., which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing practices.  Section 310.3(b) of the TSR prohibits "assisting and facilitating" certain specified conduct.[3]  Under that provision, it is unlawful for any person or entity to "provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates Sections 310.3(a), (c), or (d), or Section 310.4 of this Rule."  These Sections prohibit, among others, the following conduct:

- Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution (16 C.F.R. § 310.3(a)(4));
- Misrepresenting a seller or telemarketer's affiliation with any government entity (16 C.F.R. § 310.3(a)(2)(vii));
- Transmitting false or deceptive caller ID numbers (16 C.F.R. § 310.4(a)(8));
- Initiating or causing the initiation of calls that deliver prerecorded messages,[4] unless the person called provided the seller express written permission to call (16 C.F.R. § 310.4(b)(1)(v)); and
- Initiating or causing the initiation of telemarketing calls to numbers listed on the National Do Not Call Registry, unless the person called provided express written permission to receive calls from the seller or the seller had an existing business relationship with the person called (16 C.F.R. § 310.4(b)(1)(iii)(B)).

The FTC can obtain civil penalties for TSR violations.  Each illegal call is subject to a maximum civil penalty of $50,120.  *See* 16 C.F.R. § 1.98.  In addition, a violation of the TSR is a violation of Section 5 of the FTC Act.  *See* 15 U.S.C. §§ 6102(c), 57a(d)(3), 45(a).  Accordingly, the FTC has authority to seek both preliminary and permanent injunctive relief to address TSR

---

[1] *See* Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, 133 Stat. 3274, Sec. 13(d) (2019) (TRACED Act).

[2] *See* 16 C.F.R. § 310.4(b)(1)(v).

[3] A copy of the TSR is attached as Attachment B.

[4] These calls are often referred to as "robocalls."

2

violations. *See* 15 U.S.C. § 53(b). The FTC may also seek the refund of money or payment of damages to address TSR violations. *See* 15 U.S.C. § 57b(b).

Combatting illegal telemarketing is a top priority for the FTC, with a special emphasis on halting illegal robocalls.[5] We want you to be aware that the FTC has, for example, brought assisting and facilitating claims against technology companies that knowingly provided software and servers used by illegal robocallers, even though these technology companies did not contract directly with the illegal robocallers. *See FTC v. James B. Christiano*, Case No. 8:18-cv-00936 (C.D. Cal. May 31, 2018).

We also bring to your attention that the FTC has sued VoIP service providers for allegedly violating the TSR. In *FTC v. Educare*, the FTC alleged that defendant Globex Telecom, Inc. assisted and facilitated telemarketers it knew, or consciously avoided knowing, were violating the TSR's prohibitions on calls delivering prerecorded messages. *See FTC v. Educare Centre Services, Inc.,* No. 3:19-cv-00196-KC (W.D. Tex. Dec. 3, 2019).[6] In September, 2020, Globex Telecom and its associates agreed to pay $2.1 million to settle the FTC lawsuit, and Globex Telecom's former CEO and President was banned from telemarketing to the U.S. and was subject to a permanent court order.[7] Similarly, in *FTC v. Alcazar Networks, Inc.*, the FTC alleged that Alcazar Networks, Inc. and its founder and sole owner assisted and facilitated telemarketers responsible for tens of millions of illegal telemarketing calls, including robocalls and spoofed calls that displayed "911" as the caller ID. *See FTC v. Alcazar Networks Inc., et al.*, No. 6:20-cv-2200 (M.D. Fla. Dec. 3, 2020).[8] As part of their settlement with the FTC in January 2021, the defendants agreed to a permanent injunction that prohibits similar misconduct in the future and requires them to screen and monitor their customers, as well as imposing a monetary penalty.[9]

The FTC has business educational materials that can assist you in complying with the TSR. *See* https://www.ftc.gov/tips-advice/business-center/guidance/complying-telemarketing-sales-rule.

In addition to FTC regulations and the FTC's actions against providers of VoIP services, you should also be aware that the United States Department of Justice (DOJ), state attorneys general, and other agencies have brought civil actions against VoIP companies and their owners. In two cases, DOJ alleged that the defendants were committing and conspiring to commit wire

---

[5] In 2022, the FTC received more than 2.7 million complaints about unwanted calls, including more than 1.61 million robocall complaints. The FTC maintains an interactive Tableau Public web page that publishes details about do not call complaints on a quarterly basis. *See* https://public.tableau.com/profile/federal.trade.commission#!/vizhome/DoNotCallComplaints/Maps.

[6] A copy of the FTC's Amended Complaint is attached as Attachment C.

[7] *See* https://www.ftc.gov/news-events/press-releases/2020/09/globex-telecom-associates-will-pay-21-million-settling-ftcs-first.

[8] A copy of the FTC's Complaint is attached as Attachment D.

[9] *See* https://www.ftc.gov/news-events/press-releases/2020/12/ftc-takes-action-against-second-voip-service-provider.

fraud by knowingly transmitting robocalls that impersonated federal government agencies.[10]  In August 2020, a federal district court entered a permanent court order barring the defendants from conveying telephone calls into the U.S. telephone system.[11]  State cases have had similar impacts.[12]

Within three business days, please send a message to FTC attorneys Fil Maria de Banate and Christian M. Capece, via electronic mail at fdebanate@ftc.gov and ccapece@ftc.gov, certifying that HFA Services has ceased engaging in the activities described above that may subject it to liability under the TSR or the FTC Act.  Please direct any inquiries regarding this letter to Mr. de Banate and Mr. Capece by email or by telephone at 216.263.3413 or 216.263.3419.

Sincerely,

JONATHAN STEIGER
Digitally signed by JONATHAN STEIGER
Date: 2023.03.17 14:34:10 -04'00'

Jon Miller Steiger
Director

Enclosures:
Attachment A (Chart of illegal robocalls)
Attachment B (TSR)
Attachment C (*Educare* Amended Complaint)
Attachment D (*Alcazar* Complaint)

---

[10] *See* https://www.justice.gov/opa/pr/department-justice-files-actions-stop-telecom-carriers-who-facilitated-hundreds-millions.

[11] *See* https://www.justice.gov/opa/pr/district-court-enters-permanent-injunction-shutting-down-telecom-carriers-who-facilitated.

[12] For example, the Vermont and Michigan Attorneys General have brought successful actions against VoIP providers who route scam robocall traffic. *See* https://ago.vermont.gov/blog/2022/08/02/vermont-joins-nationwide-anti-robocall-task-force; https://www.michigan.gov/ag/news/press-releases/2020/08/07/ag-nessel-announces-settlement-eliminating-telecom-carrier-responsible-for-illegal-robocalls; https://www.michigan.gov/documents/ag/Assurance_of_Voluntary_Compliance_-_All_Access_Telecom_FINAL_9-11-20_702047_7.pdf.



PLAINTIFFS EXHIBIT
3

# ATTACHMENT A

REDACTED PURSUANT TO
N.J. Court Rule 1:38-7 *et seq*

# VERIFIED RETURN OF SERVICE

Job # 4908

**Client Info:**

Richard M. Zelma, Pro Se
940 Blanch Avenue PVT HOUSE
Norwood, NJ 07648

**Case Info:**

| | |
|---|---|
| **Plaintiff:** | New Jersey Superior Court |
| Richard M. Zelma | County of Bergen, New Jersey |
| -versus- | Court Case # **BER L 5354-23** |
| **Defendant:** | |
| Michael Peter Halperin, (Halperin) Individually & Halperin d/b/a HFA Holdings | |

**Service Info:**

**Date Received: 1/24/2024** at **01:04 PM**
**Service:** I Served **Michael Halperin, d/b/a HFA Holdings, et. seq**
With: **SUMMONS; CIVIL CASE INFORMATION STATEMENT (CIS); WITH EXHIBITS; PLAINTIFF'S FIRST AMENDED COMPLAINT**
by leaving with **Lauren Halperin, EMPLOYEE-AUTHORIZED TO ACCEPT - MANAGING MEMBER**

**At Residence 5258 PRINCETON WAY BOCA RATON, FL 33496**
Latitude: **26.397034,**   Longitude: **-80.160137**

On **1/27/2024** at **08:54 AM**
**Manner of Service: CORPORATE AT RESIDENCE**
SERVICE WAS COMPLETED IN ACCORDANCE TO 48.081(B) IF THE ADDRESS FOR THE REGISTERED AGENT, OFFICER, DIRECTOR, OR PRINCIPAL PLACE OF BUSINESS IS A RESIDENCE, A PRIVATE MAILBOX, A VIRTUAL OFFICE, OR AN EXECUTIVE OFFICE OR MINI SUITE, SERVICE ON THE CORPORATION MAY BE MADE BY SERVING THE REGISTERED AGENT, OFFICER, OR DIRECTOR IN ACCORDANCE WITH S. 48.031.

**Served Description:  (Approx)**

Age: **40**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 9"**, Weight: **150**, Hair: **Blond** Glasses:  **No**

**Service Comments:**

Subject was found via skip trace performed by Golden Process Service.

Lauren confirmed subject lives here but was not home, she didn't know when he would be home or a better time to come back.

**Service was Attempted on:**

**(1) 1/25/2024** at **07:22 PM**, by **Mikhael Goldgisser** Loc: **5820 Harrington Way, Boca Raton, Boca Raton, FL 33496**
Latitude:**26.398331**   Longitude:**-80.153665**
**Notes:**  Mike Nacash said he bought the house from the subject in 2021, he said the subject lives in a nearby community, but did not have the forwarding address. Subject does not live here. Two cars outside. 88AQSL,26DMCE White male 45 years old brown hair 5'11" 185 pounds

I **Mikhael Goldgisser** acknowledge that I am authorized to serve process, in good standing in the jurisdiction wherein the process was served and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.




Job # 4908



**Mikhael Goldgisser**
Lic # **SPS# 1556**

**Golden Process Service**
9715 W Broward Blvd
Suite 322
Plantation, FL 33324
Phone: (786) 682-2938

Our Job # **4908**



## SUMMONS

Attorney(s) <u>Richard M. Zelma, Pro Se</u>

Office Address <u>940 Blanch Avenue</u>

Town, State, Zip Code <u>Norwood, New Jersey 07648</u>

Telephone Number <u>202 767 8153</u>

Attorney(s) for Plaintiff <u>Richard M. Zelma</u>

<u>Richard M. Zelma</u>
       Plaintiff(s)

   vs.

<u>Michael P. Halperin, (individually) and</u>

<u>Michael Halperin, d/b/a HFA Holdings, **et. seq**</u>
       Defendant(s)

# Superior Court of New Jersey

<u>Bergen</u> County

<u>LAW</u> Division

Docket No: <u>BER L 5354-23</u>

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED: <u>01/24/2024</u>

Name of Defendant to Be Served: <u>Michael Peter Halperin, ("Halperin") Individually & d/b/a HFA Holdings</u>

Address of Defendant to Be Served: ~~BOTH AT 5820 Harrington Way, Boca Raton, FL 33496-2541~~

**CO-DEFENDANT FOUND THROUGH SKIP-TRACE RESIDING AT:**
**5258 PRINCETON WAY BOCA RATON, FL 33496**

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# VERIFIED RETURN OF SERVICE

Job # 4906

**Client Info:**

Richard M. Zelma, Pro Se
940 Blanch Avenue PVT HOUSE
Norwood, NJ 07648

**Case Info:**

| | |
|---|---|
| **Plaintiff:** | New Jersey Superior Court |
| Richard M. Zelma | |
| -versus- | County of Bergen, New Jersey |
| **Defendant:** | Court Case # **BER L 5354-23** |
| Michael Peter Halperin, (Halperin) Individually & Halperin d/b/a HFA Holdings | |

**Service Info:**

**Date Received: 1/24/2024** at **12:30 PM**
**Service:** I Served **Michael Peter Halperin**
With: **SUMMONS; CIVIL CASE INFORMATION STATEMENT (CIS); WITH EXHIBITS; PLAINTIFF'S FIRST AMENDED COMPLAINT**
by leaving with **Lauren Halperin, SPOUSE CO-RESIDENT**

**At Residence 5258 PRINCETON WAY BOCA RATON, FL 33496**
Latitude: **26.397034**, Longitude: **-80.160137**

On **1/27/2024** at **08:54 AM**
**Manner of Service: SUBSTITUTE SERVICE:**
FS 48.031(1)a SERVICE UPON ANY CO-RESIDENT RESIDING THEREIN 15 YEARS OF AGE OR ABOVE, AND THE PROCESS BEING EXPLAINED TO THE PERSON WHO ACCEPTED SAID PROCESS.

**Served Description: (Approx)**

Age: **40**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 9"**, Weight: **150**, Hair: **Blond** Glasses: **No**

**Service Comments:**

Subject was found via skip trace performed by Golden Process Service.

Lauren confirmed subject lives here but was not home, she didn't know when he would be home or a better time to come back.

**Service was Attempted on:**

**(1) 1/25/2024** at **07:21 PM**, by **Mikhael Goldgisser** Loc: **5820 Harrington Way, Boca Raton, FL, Boca Raton, Florida 33496** Latitude:**26.398651** Longitude:**-80.153341**
**Notes:** Mike Nacash said he bought the house from the subject in 2021, he said the subject lives in a nearby community, but did not have the forwarding address. Subject does not live here. Two cars outside. 88AQSL,26DMCE White male 45 years old brown hair 5'11" 185 pounds

I **Mikhael Goldgisser** acknowledge that I am authorized to serve process, in good standing in the jurisdiction wherein the process was served and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.




Job # 4906



**Mikhael Goldgisser**
Lic # **SPS# 1556**

**Golden Process Service**
9715 W Broward Blvd
Suite 322
Plantation, FL 33324
Phone: (786) 682-2938

Our Job # **4906**



## SUMMONS

Attorney(s) <u>Richard M. Zelma, Pro Se</u>

Office Address <u>940 Blanch Avenue</u>

Town, State, Zip Code <u>Norwood, New Jersey 07648</u>

Telephone Number <u>202 767 8153</u>

Attorney(s) for Plaintiff <u>Richard M. Zelma</u>

<u>Richard M. Zelma</u>
Plaintiff(s)

vs.

Michael P. Halperin, (individually) and

<u>Michael Halperin, d/b/a HFA Holdings, **et. seq**</u>
Defendant(s)

# Superior Court of New Jersey

<u>Bergen</u>         County

<u>LAW</u>         Division

Docket No: <u>BER L 5354-23</u>

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED: <u>01/24/2024</u>

Name of Defendant to Be Served: <u>Michael Peter Halperin, ("Halperin") Individually & d/b/a HFA Holdings</u>

Address of Defendant to Be Served: ~~BOTH AT- 5820 Harrington Way, Boca Raton, FL 33496-2511~~

**DEFENDANT FOUND THROUGH SKIP TRACE RESIDING AT:**
**5258 PRINCETON WAY BOCA RATON, FL 33496**

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

# VERIFIED RETURN OF SERVICE

1/27/2024

Job # 4906

**Client Info:**

Richard M. Zelma, Pro Se
940 Blanch Avenue PVT HOUSE
Norwood, NJ 07648

**Case Info:**

| | |
|---|---|
| **Plaintiff:** | New Jersey Superior Court |
| Richard M. Zelma | |
| -versus- | County of Bergen, New Jersey |
| **Defendant:** | Court Case # **BER L 5354-23** |
| Michael Peter Halperin, (Halperin) Individually & Halperin d/b/a HFA Holdings | |

**Service Info:**

**Date Received: 1/24/2024** at **12:30 PM**
**Service:** I Served **Michael Peter Halperin**
With: **SUMMONS; CIVIL CASE INFORMATION STATEMENT (CIS); WITH EXHIBITS; PLAINTIFF'S FIRST AMENDED COMPLAINT**
by leaving with **Lauren Halperin, SPOUSE CO-RESIDENT**

**At Residence 5258 PRINCETON WAY BOCA RATON, FL 33496**
Latitude: **26.397034,**   Longitude: **-80.160137**

On **1/27/2024** at **08:54 AM**
**Manner of Service: SUBSTITUTE SERVICE:**
FS 48.031(1)a SERVICE UPON ANY CO-RESIDENT RESIDING THEREIN 15 YEARS OF AGE OR ABOVE, AND THE PROCESS BEING EXPLAINED TO THE PERSON WHO ACCEPTED SAID PROCESS.

**Served Description:  (Approx)**

Age: **40**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 9"**, Weight: **150**, Hair: **Blond** Glasses:  **No**

**Service Comments:**

Subject was found via skip trace performed by Golden Process Service.

Lauren confirmed subject lives here but was not home, she didn't know when he would be home or a better time to come back.

**Service was Attempted on:**

**(1) 1/25/2024** at **07:21 PM**, by **Mikhael Goldgisser** Loc: **5820 Harrington Way, Boca Raton, FL, Boca Raton, Florida 33496**   Latitude: **26.398651**   Longitude: **-80.153341**
**Notes:**  Mike Nacash said he bought the house from the subject in 2021, he said the subject lives in a nearby community, but did not have the forwarding address. Subject does not live here. Two cars outside. 88AQSL,26DMCE White male 45 years old brown hair 5'11" 185 pounds

I **Mikhael Goldgisser** acknowledge that I am authorized to serve process, in good standing in the jurisdiction wherein the process was served and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.




Job # 4906



**Mikhael Goldgisser**
Lic # **SPS# 1556**

**Golden Process Service**
9715 W Broward Blvd
Suite 322
Plantation, FL 33324
Phone: (786) 682-2938

Our Job # **4906**



## SUMMONS

Attorney(s) Richard M. Zelma, Pro Se

Office Address  940 Blanch Avenue

Town, State, Zip Code  Norwood, New Jersey 07648

Telephone Number  202 767 8153

Attorney(s) for Plaintiff  Richard M. Zelma

Richard M. Zelma
         Plaintiff(s)

         vs.

Michael P. Halperin, (individually) and

Michael Halperin, d/b/a HFA Holdings,  **et. seq**
         Defendant(s)

# Superior Court of New Jersey

Bergen            County

LAW            Division

Docket No: BER L 5354-23

# CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ  08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED:  01/24/2024

Name of Defendant to Be Served:  Michael Peter Halperin, ("Halperin") Individually & d/b/a HFA Holdings

Address of Defendant to Be Served:  ~~BOTH AT- 5820 Harrington Way, Boca Raton, FL 33496-2511~~

**DEFENDANT FOUND THROUGH SKIP TRACE RESIDING AT:**
**5258 PRINCETON WAY BOCA RATON, FL 33496**

1/27/2024

# VERIFIED RETURN OF SERVICE

Job # 4908

**Client Info:**

Richard M. Zelma, Pro Se
940 Blanch Avenue PVT HOUSE
Norwood, NJ 07648

**Case Info:**

| | |
|---|---|
| **Plaintiff:** | New Jersey Superior Court |
| Richard M. Zelma | County of Bergen, New Jersey |
| -versus- | Court Case # **BER L 5354-23** |
| **Defendant:** | |
| Michael Peter Halperin, (Halperin) Individually & Halperin d/b/a HFA Holdings | |

**Service Info:**

**Date Received: 1/24/2024** at **01:04 PM**
**Service:** I Served **Michael Halperin, d/b/a HFA Holdings, et. seq**
With: **SUMMONS; CIVIL CASE INFORMATION STATEMENT (CIS); WITH EXHIBITS; PLAINTIFF'S FIRST AMENDED COMPLAINT**
by leaving with **Lauren Halperin, EMPLOYEE-AUTHORIZED TO ACCEPT - MANAGING MEMBER**

**At Residence 5258 PRINCETON WAY BOCA RATON, FL 33496**
Latitude: **26.397034,** Longitude: **-80.160137**

On **1/27/2024** at **08:54 AM**
**Manner of Service: CORPORATE AT RESIDENCE**
SERVICE WAS COMPLETED IN ACCORDANCE TO 48.081(B) IF THE ADDRESS FOR THE REGISTERED AGENT, OFFICER, DIRECTOR, OR PRINCIPAL PLACE OF BUSINESS IS A RESIDENCE, A PRIVATE MAILBOX, A VIRTUAL OFFICE, OR AN EXECUTIVE OFFICE OR MINI SUITE, SERVICE ON THE CORPORATION MAY BE MADE BY SERVING THE REGISTERED AGENT, OFFICER, OR DIRECTOR IN ACCORDANCE WITH S. 48.031.

**Served Description: (Approx)**

Age: **40**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 9"**, Weight: **150**, Hair: **Blond** Glasses: **No**

**Service Comments:**

Subject was found via skip trace performed by Golden Process Service.

Lauren confirmed subject lives here but was not home, she didn't know when he would be home or a better time to come back.

**Service was Attempted on:**

**(1) 1/25/2024** at **07:22 PM**, by **Mikhael Goldgisser** Loc: **5820 Harrington Way, Boca Raton, Boca Raton, FL 33496**
Latitude:**26.398331** Longitude:**-80.153665**
**Notes:** Mike Nacash said he bought the house from the subject in 2021, he said the subject lives in a nearby community, but did not have the forwarding address. Subject does not live here. Two cars outside. 88AQSL,26DMCE White male 45 years old brown hair 5'11" 185 pounds

I **Mikhael Goldgisser** acknowledge that I am authorized to serve process, in good standing in the jurisdiction wherein the process was served and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.





Job # 4908



_____

**Mikhael Goldgisser**
Lic # **SPS# 1556**

**Golden Process Service**
9715 W Broward Blvd
Suite 322
Plantation, FL 33324
Phone: (786) 682-2938

Our Job # **4908**



### SUMMONS

Attorney(s) <u>Richard M. Zelma, Pro Se</u>

Office Address   <u>940 Blanch Avenue</u>

Town, State, Zip Code <u>Norwood, New Jersey 07648</u>

Telephone Number  <u>202 767 8153</u>

Attorney(s) for Plaintiff <u>Richard M. Zelma</u>

<u>Richard M. Zelma</u>
      Plaintiff(s)

   vs.

<u>Michael P. Halperin, (individually) and</u>

<u>Michael Halperin, d/b/a HFA Holdings,</u> **et. seq**
     Defendant(s)

## Superior Court of New Jersey

<u>Bergen</u>     County

<u>LAW</u>     Division

Docket No: <u>BER L 5354-23</u>

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                           *Michelle M. Smith*
                      Clerk of the Superior Court

DATED:  <u>01/24/2024</u>

Name of Defendant to Be Served:  <u>Michael Peter Halperin, ("Halperin") Individually & d/b/a HFA Holdings</u>

Address of Defendant to Be Served:  ~~BOTH AT 5820 Harrington Way, Boca Raton, FL 33496-2541~~

==CO-DEFENDANT FOUND THROUGH SKIP-TRACE RESIDING AT:==
==5258 PRINCETON WAY BOCA RATON, FL 33496==

Revised 11/17/2014, CN 10792-English (Appendix XII-A)