IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD M. ZELMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-01059 |
| ) | |
| MICHAEL PETER HALPERIN, et al., ) | MOTION RETURNABLE: |
| ) | December 2, 2024 |
| Defendants. ) | |

**HALPERIN DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. Introduction ..................................................................................................1

II. Plaintiff's First Amended Complaint Does Not Meet the Supreme Court's Pleading Standard ........................................................................................3

III. Plaintiff Has Failed to Adequately Plead Any TCPA Claim ...............................5

    A. Plaintiff Has Failed to Adequately Plead the Halperin Defendants, as Common Carriers, Can Be Held Liable Under the TCPA ............................6

    B. Plaintiff Improperly Cited to Fake Cases to Argue the Halperin Defendants had a Duty to Prevent the Calls at Issue ........................................................8

    C. Plaintiff Failed to Allege Personal Participation Against Mr. Halperin .........9

    D. Plaintiff Failed to Address His Insufficient Claim For Piercing the Corporate Veil .................................................................................10

IV. Conclusion ................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................... 4

*Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 U.S. App. LEXIS 13891 (3d Cir. June 7, 2024) .................................................................................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 3, 4

*City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154 (3d Cir. 2018) ............. 10

*Core Communs., Inc. v. Verizon Pa., Inc.*, 493 F.3d 333 (3d Cir. 2007) ................................ 2

*Cunningham v. Wallace & Graham, P.A.*, 1:24-cv-00221, 2024 U.S. Dist. LEXIS 209592 (M.D.N.C. Nov. 19, 2024) ...................................................................................................... 5

*iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (E.D.N.Y. 2011) ............... 9

*Ketchum v. Cruz*, 961 F.2d 916 (10th Cir. 1992) ................................................................... 1

*Mark v. Patton*, 696 F. App'x 579 (3d Cir. 2017) .................................................................. 4

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873 (7th Cir. 2012) ....................................... 3

*Mehnert v. United States Bank Nat'l Ass'n*, Civil Action No. 17-4985 (JMV), 2019 U.S. Dist. LEXIS 34471 (D.N.J. Mar. 4, 2019) ......................................................................................11

*National Communs. Ass'n v. AT&T*, 92 Civ. 1735 (LAP), 1998 U.S. Dist. LEXIS 3198 (S.D.N.Y. May 16, 1998) ........................................................................................................ 2

*Olson v. Ako*, 724 F. App'x 160 (3d Cir. 2018) ....................................................................11

*Park v. Kim*, 91 F.4th 610 (2d Cir. 2024) ............................................................................... 8

*In re Packer Ave. Assocs.*, 884 F.2d 745 (3d Cir. 1989) ........................................................ 1

*Telfair v. Tandy*, 797 F. Supp. 2d 508 (D.N.J. 2011) ............................................................. 1

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) ................................................ 3

**Statutes and Regulations**

47 C.F.R. § 64.1200(k)(4) ........................................................................................................ 7

**Administrative Materials**

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (Sept. 17, 1992) ................................................................................................................................ 6

Defendants Michael Peter Halperin, HFA Holdings LLC, IP Horizon LLC, Skye Telecom LLC d/b/a SkyeTel, HFA Services LLC d/b/a Call48, and MHLHTH Holdings LLC (collectively, "Halperin Defendants") respectfully file this Reply in Support of Their Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Local Civ. Rule 7.1(d)(3).

I.   Introduction

Predictably, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Opposition"), ECF No. 30, does nothing to save his doomed case, which seeks to hold three phone companies, two holding companies, and an individual with an ownership interest in them liable for a random assortment of phone calls he received. He admits his claim is down to two TCPA counts seeking only statutory damages. But he has no plausible, well-pleaded factual allegations for suing *these Defendants* for any of those calls. His Opposition is littered with factual and legal fabrications. Incredibly, he even makes up multiple **nonexistent** court opinions that allegedly support his extraordinary legal theories. His First Amended Complaint ("Complaint") should be dismissed, and he should be restrained from filing any further pleadings or suits against these Defendants without prior Court approval.[1]

Plaintiff makes several key admissions in his Opposition that substantially narrow what remains for the Court to decide: First, Plaintiff withdraws Count I, his Telemarketing Sales Rule claim. *See* Opp. at 8-9. Thus, Count I should be dismissed, with prejudice.

---

[1] *See In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989) (citation omitted) ("district courts may issue an injunction requiring a litigant . . . to receive court approval before filing further complaints."); *see also Telfair v. Tandy*, 797 F. Supp. 2d 508, 517 (D.N.J. 2011) (noting that a "preclusion order was entered against Plaintiff and directed him to seek leave from th[e] [c]ourt in order to make any unauthorized pro se filing in th[e] matter[.]"); *Ketchum v. Cruz*, 961 F.2d 916, 921 (10th Cir. 1992) (courts "may place reasonable restrictions on the court access of litigants who abuse the judicial process by harassing other litigants. Mr. Ketchum also is cautioned that a pattern of a groundless and vexatious litigation will justify an order issued from this court enjoining him from filing any claims without first seeking prior leave of court.").

1

Second, Plaintiff admits, again, he has not alleged any "actual damages," a necessary element of his Communications Act claim (Count IV). *Id*. at 19 (admitting that "the complaint only raises statutory damages"). As such, Count IV is defective as a matter of law and should be dismissed on this ground. *See National Communs. Ass'n v. AT&T*, 92 Civ. 1735 (LAP), 1998 U.S. Dist. LEXIS 3198, at *111 (S.D.N.Y. May 16, 1998) ("Section 206 limits recovery to 'damages sustained'"); *see also* Opp. at 2 ("This suit is based on the [TCPA]").[2]

Finally, Plaintiff also admits that this is his best-and-final complaint, and he is not seeking leave to amend. *See* Opp. at 27 ("there is no intent, was no intent nor was the concept of amending Plaintiffs [] Complaint ever raised" [*sic*]). Thus, this meritless lawsuit can and should end with the Court's final order granting Defendants' Motion to Dismiss.

That leaves Plaintiff with his two TCPA counts (Counts II and III). Unlike any real TCPA case, he makes no effort to identify any of the callers or parties on whose behalf any of these disparate, 100+ calls may have been made. Instead, Plaintiff seeks to hold all six Halperin Defendants liable for these calls based on his conspiracy theory that, because Defendant Call48 received a letter from the FTC concerning totally unrelated calls, and some Optimum employee he apparently harassed intoned "IP Horizon" to him on a phone call, all six defendants must have "carried, routed, terminated and provided U.S. phone numbers to foreign entities, thus enabling those entities to initiate" the alleged TCPA-violating calls Plaintiff received. Opp. at 3.

---

[2] The second, independent ground for dismissing Count IV still remains: Plaintiff's failure to plausibly allege any underlying violation of the Communications Act. *See* Memorandum in Support of Halperin Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Memo."), ECF No. 29-1, at 27; *see also Core Communs., Inc. v. Verizon Pa., Inc.*, 493 F.3d 333, 344 (3d Cir. 2007) (47 U.S.C. §§ 206 and 207 are not applicable without an underlying violation of a specific provision of the Communications Act). Plaintiff claims Count IV "is related to the proscription in the FTC Cease and Desist sent to the defendants." Opp. at 11. That *non sequitur* still does not point to any alleged violation of the Communications Act.

2

Plaintiff never bothers to provide any well-pleaded factual allegations linking any Halperin Defendant with any of these "foreign entities" (presumably because none exist). He simply assumes that there is a vast conspiracy among these six defendants and various unidentified "foreign entities" because a customer-service employee at his former phone company, Optimum, allegedly told him so. But his only proffered evidence about Optimum is that they *fired him as a customer* for abusing his alleged source of information. Opp. Ex. 5. "Even on a motion to dismiss, [courts] are not required to credit mere speculation." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Surely Plaintiff's global conspiracy must be substantiated with well-pleaded factual allegations. "Under *Iqbal* and *Twombly*, [t]he required level of factual specificity rises with the complexity of the claim." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 887 (7th Cir. 2012) (citation omitted).

Exhibit 5 to Plaintiff's Opposition shows that Optimum took the "extremely rare" action of terminating his phone service because he was "harassing Optimum's representative" and engaging in other "inappropriate conduct toward Optimum employees and agents." Opp. Ex. 5 at 1. Clearly Optimum has a very different view of Plaintiff's interactions with its employees. Plaintiff's conspiracy theory simply cannot make out a plausible TCPA claim against these six defendants. Enough is enough. As the Supreme Court has long held, the doors of discovery cannot be opened with an outlandish conspiracy theory and unadorned accusations of harm.

## II. Plaintiff's First Amended Complaint Does Not Meet The Supreme Court's Pleading Standard.

Plaintiff turns the Supreme Court's pleading rules upside down. Under Rule 8, he must *first* plead well-pleaded factual allegations for each claim against each Defendant before the Court can open the doors of discovery to him. He claims his conclusory, group pleadings are

3

permissible "until reasonable discovery on point is obtained." Opp. at 7. But the opposite is true: "*Iqbal* [] made clear that federal pleading standards do not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Beers v. Cnty. of Northumberland*, No. 23-2555, 2024 U.S. App. LEXIS 13891, at *4 (3d Cir. June 7, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).[3] Plaintiff's plea for discovery cannot save his deficient Complaint.

Defendants' Memo explains why Plaintiff's Complaint fails to meet Fed. R. Civ. P. 8's pleading standard under *Iqbal/Twombly* through his impermissible use of group and shotgun pleadings. *See* Memo. at 12-18. Plaintiff admits this fatal defect. *See* Opp. at 7 ("Plaintiff acknowledges that the [] Complaint does not specify the actions of each individual defendant[.]"). Plaintiff therefore concedes his pleading is defective.

The *Iqbal/Twombly* pleading standard also requires that, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is *plausible* on its face.'" *Iqbal*, 556 U.S. at 678 (*Twombly*, 550 U.S. at 555) (emphasis added). To meet that standard, a plaintiff's claim for relief must cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Plaintiff's conspiracy theory fails to cross that line.

For example, Plaintiff's conspiracy theory is that the Halperin Defendants provided services to foreign entities, which enables those foreign entities "to initiate robocalls . . . into this country," some of which Plaintiff allegedly received. Opp. at 3. While Plaintiff laments being invaded by foreign callers, he gives no well-pleaded facts that plausibly support his conclusory,

---

[3] *See also Mark v. Patton*, 696 F. App'x 579, 581-82 (3d Cir. 2017) (citation omitted) ("[Plaintiff's] complaint is nothing more 'than an unadorned, the-defendant-unlawfully-harmed-me accusation,' which cannot survive a motion to dismiss. [Plaintiff's] claim that she 'requires discovery to determine whether [Defendants] acted with a sufficiently culpable state of mind,' [], is inadequate under controlling law. '[A] plaintiff armed with nothing more than conclusions' cannot 'unlock the doors of discovery.'").

4

global-conspiracy allegations. To be sure, there are American cases concerning American callers making the types of calls he's complaining about.[4] His story isn't matching reality, leaving his Complaint on the "possible" but not "plausible" side of the *Iqbal/Twombly* line.

Further, Plaintiff relies on hearsay from an Optimum employee to claim all six Halperin Defendants were involved with the calls at issue. *See* Opp. at 3 ("Optimum/Altice . . . identified calls related and related [*sic*] to Halperin"); Opp. at 5 ("IP Horizon was identified as the source of the subject calls"). Plaintiff now claims that "an additional 24 calls [he] received, identified as IP Horizon, belong[] to the defendants[.]" *Id*. But Plaintiff was terminated by Optimum on or around January 17, 2024, *see* Opp. Ex. 5 at 1, and 19 of these 24 new calls allegedly occurred after January 17, 2024. *See* Opp. Ex. 4. It is thus a mystery how he associated IP Horizon with any of those calls when Optimum was already refusing to talk to him.

Plaintiff's conspiracy theory fails because one can substitute in the name of any other phone company wherever he rants about "Halperin" (a human, not a phone company) and his story is just as "possible," but no more or less plausible. This mystery Optimum employee could have whispered to him that all these calls were from AT&T, Verizon, or Inteliquent. His story would have all the same holes no matter which carrier you plugged in. But possible is not plausible, and the Supreme Court requires allegations to be *plausible* to state a viable claim for relief. Plaintiff's failure to cross the line from possible to plausible requires dismissal.

### III.   Plaintiff Has Failed To Adequately Plead Any TCPA Claim.

As expected, Plaintiff's Opposition does nothing to salvage his two TCPA claims.

---

[4] *See Cunningham v. Wallace & Graham, P.A.*, 1:24-cv-00221, 2024 U.S. Dist. LEXIS 209592 (M.D.N.C. Nov. 19, 2024) (TCPA claims based on the plaintiff's receipt of Camp Lejeune class member calls from or on behalf of several American law firms survive motion to dismiss); *see* Compl. ¶ 58 ("Other callers sought anyone living at Camp Lejuene [*sic*] between 1963 and 1983 having health issues with the drinking water.").

5

### A. Plaintiff Has Failed to Adequately Plead the Halperin Defendants, as Common Carriers, Can Be Held Liable Under the TCPA.

The Halperin Defendants explained in their Memo why Plaintiff's Complaint is devoid of any well-pled allegations that the Halperin Defendants took the physical steps necessary to initiate any of the subject calls or had a high degree of involvement in making them. *See* Memo. at 22-23. Recognizing that, Plaintiff's Opposition focuses on the rare exception where a carrier can be held liable for calls it carries: when it has "actual notice of an illegal use [of its services] and fail[s] to take steps to prevent such transmissions." *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8780 ¶ 54 (Sept. 17, 1992).

Plaintiff argues that the "2023 FTC Cease & Desist letter issued to the Defendants," constitutes actual notice to all six Halperin Defendants that their services were being used to make the specific calls Plaintiff is suing for here. Opp. at 15. (Obviously he has no explanation for why the FTC's letter would somehow be deemed sent to any other Defendant.) But in all events, that FTC letter cannot constitute the necessary "actual notice" because it is a letter (not an adjudicated order) from the *wrong* agency about the *wrong* calls.

Plaintiff correctly concedes that "the FCC rules mandate proper adjudicated notice before carriers must block traffic." Opp. at 16. But then he proceeds to ignore the FCC's clear regime for who can direct the carrier community to block a specific source of traffic: the FCC, and only the FCC. As the Halperin Defendants explain in their Memo, the FCC explicitly addressed this question and held that only the FCC itself – through a so-called "(k)(4) Notice" – could direct the carrier community to block specific, identified sources of traffic. *See* Memo. at 8-9. The FCC even withheld that authority from the Industry Traceback Group ("ITG"), the Congressionally authorized and FCC-deputized sheriff created to "trace back" the source of calls highly likely to be illegal. *Id*. at 8 n.9. Again, the FCC wanted a single, clear arbiter of who could direct the

6

carrier community to block specific sources of traffic, and it is only the FCC. *Id.*; *see also* 47 C.F.R. § 64.1200(k)(4). Plaintiff's obsession with the FTC's batch of Spring 2023 letters to the nation's largest wholesale carriers does not change any of that, and it certainly does not create a TCPA claim out of whole cloth. The FTC letter simply cannot constitute the type of actual notice necessary to subject any of the Halperin Defendants to liability here.

Even if the FTC letter could constitute that type of actual notice, which it cannot, it did not provide actual notice to any Halperin Defendant (including Call48, the only recipient of that letter) that their services were being used to make the specific calls Plaintiff allegedly received. The FTC letter addressed calls relating to subjects like Amazon, hotels, student loans, and utilities. *See* Opp. Ex. 3. But Plaintiff does not allege that any of the calls at issue concerned any of those subjects, never mind from the same source (i.e., telephone number). Instead, Plaintiff claims the calls he allegedly received were related to entirely different subjects. *See* Compl. ¶ 58 (some calls concerned insurance, Camp Lejeune litigation, and Round-Up Lawn Spray litigation.); Opp. at 4 (other calls concerned legal services).

In addition to fixating on a letter from the wrong agency about irrelevant calls, Plaintiff includes no well-pleaded factual allegations that any specific Defendant actually carried *any of them*. Again, his whole theory apparently comes from the hearsay of an Optimum employee who allegedly told him that *all* of the calls came from IP Horizon (never mind the fact that no Defendant has any network connection with Optimum, making that claim an impossibility). But the only evidence of his phone calls with Optimum employees indicates that *Plaintiff* engaged in "inappropriate conduct" that was "harassing" Optimum's employees. Thus, Plaintiff's TCPA claims fail here because his Complaint is devoid of any plausible allegations.

7

### B. Plaintiff Improperly Cited to Fake Cases to Argue the Halperin Defendants had a Duty to Prevent the Calls at Issue.

Troublingly, Plaintiff not only fabricates facts, he also made up fake caselaw in an attempt to salvage his TCPA claims. Plaintiff refers to a 2016 D.C. Circuit case between the FCC and AT&T, in which the appellate court allegedly "held that carriers have a duty to ensure the lawful use of their services and to take reasonable measures to prevent fraud." Opp. at 22 (quoting Plaintiff's characterization of that "case"). When pressed for a cite to this case (which, had it existed, would have made a seismic revolution in federal telecom law), he admitted to undersigned counsel that no such case exists. So too with the imaginary "Smith v. Global TelLink Corp," in which he claims that a federal court in Virginia held "the carrier had a duty to ensure that deactivated numbers were not being used for fraudulent purposes." *Id.* No such case—or duty—exists, either. Plaintiff is a serial litigant, and fabricating facts is troubling enough, but making up fake caselaw—about fraud, ironically—is unconscionably corrosive to the judicial system and wasteful of Defendants' resources, who have to dig around looking for these fake truffles.[5]

Plaintiff's credibility is further compromised by his false claim that the Halperin Defendants "have remained silent" about the "additional 24 calls" Plaintiff allegedly received. Opp. at 3. On October 14, 2024, Plaintiff sent the Halperin Defendants' counsel a copy of Opp. Ex. 4. This led to numerous emails between Plaintiff and the Halperin Defendants' counsel regarding those additional calls, which included the Halperin Defendants providing Plaintiff a spreadsheet reciting the limited information they have concerning those phone numbers and

---

[5] *See Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (citation omitted) ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.").

calls—*none of which* they carried, contrary to Plaintiff's conspiracy theory. Indeed, after seeing that evidence, on October 22, 2024, at 1:41PM, Plaintiff emailed the Halperin Defendants' counsel to say: "I do not plan to supplement the complaint since your client has provided sufficient evidence that attenuated some claims. Therefore, supplementing at this point would not be productive." While counsel can of course produce those emails, the salient point here is that Plaintiff is willing to lie about both the law and his own interactions with his adversary. No amount of judicial indulgence for *pro se* litigants can excuse this troubling pattern of mendacity.

### C. Plaintiff Failed to Allege Personal Participation By Mr. Halperin.

In Plaintiff's Opposition, he continues to seek to hold Mr. Halperin personally liable for the alleged TCPA-violating calls. *See* Opp. at 19-25.[6] But as addressed in the Halperin Defendants' Memo, multiple district courts have held that TCPA claims seeking personal liability against a corporate officer are barred in the Third Circuit. *See* Memo. at 24-25. But even if such claims were allowed, Plaintiff failed to plead a proper claim against Mr. Halperin.

In his Opposition, Plaintiff tries to distance himself from his conclusory allegations that Mr. Halperin was personally involved with the making or initiating of the subject calls. Plaintiff began reframing his theory into one where the Defendants' involvement with the calls at issue

---

[6] Plaintiff cites to *iBasis Global, Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70 (E.D.N.Y. 2011) to argue that Mr. "Halperin's 'IP Horizon' has a questionable history." Opp. at 20. But the IP Horizon in *iBasis Global* was a Maryland LLC that is unrelated to the IP Horizon party in this case. 278 F.R.D. at 72. That Maryland entity was apparently dissolved in 2012. *See* https://egov.maryland.gov/BusinessExpress/EntitySearch (Enter "Department. ID Number" Z10380343). The unrelated IP Horizon that Plaintiff sued in this case is a Florida LLC that was formed in 2018. *See* Sunbiz.org, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=IPHORIZON%20L180000258120&aggregateId=flal-l18000025812-05d5b9a5-774e-471f-99fe-c59eac73a356&searchTerm=IP%20Horizon&listNameOrder=IPHORIZON%20L180000258120 (last visited Nov. 22, 2024); *see also* Compl. ¶ 24 ("IP Horizon is located at 902 Clint Moore Road, Suite 206, Boca Raton, FL 33487."). Here again, Plaintiff resorts to blind mud-slinging, the facts be damned.

9

was limited to providing common-carrier services. *See* Opp. at 2 ("Defendants…profited from clients…by providing their platform and services…through their facilities as registered Common Carriers"); *id*. at 3 ("As part of their services, The Defendants and each of them, carr[y], route[], terminate[] and provide[] U.S. phone numbers[.]").

But providing common carrier services does not constitute the type of involvement with making or initiating an allegedly unlawful call that is necessary to subject an individual to personal TCPA liability. As the Third Circuit noted, even in the other courts that assume that Congress silently intended to authorize officer-and-director liability under the TCPA, the officer must have "had direct, personal participation in or personally authorized the" call. *City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154, 160 (3d Cir. 2018) (citation omitted). Merely having an ownership interest in a common carrier obviously does not constitute direct, personal participation in making or initiating a TCPA-violating call. To the extent Plaintiff's Complaint alleges that Mr. Halperin did have direct, personal participation in the calls at issue, or personally authorized them, they are not well-pled; they are improper, conclusory allegations that pretend he did *everything*. *See* Opp. at 23 ("Halperin's control over the activation, subscription, rental, use, lease, routing, contents, subject, delivery, initiation, and termination of the subject calls is undeniable. He personally performed these prohibited acts[.]"). Plaintiff's fantastical claims against Mr. Halperin are textbook violations of Rule 8's pleading requirements.

### D. Plaintiff Failed to Address His Insufficient Claim For Piercing the Corporate Veil.

The Halperin Defendants' Memo explains that Plaintiff's veil-piercing claim should be dismissed because he failed to allege the necessary elements for such a claim. Memo. at 25-26.

While Plaintiff's Opposition briefly touches on his veil-piercing claim, Opp. at 22, he does nothing to explain why that theory or claim could survive.[7]

## IV. Conclusion

Plaintiff's Complaint fails to plead any plausible TCPA claim and offers nothing that could keep Mr. Halperin, Call48, SkyeTel, or the non-carrier entities in this case. The Complaint should be dismissed with prejudice. And given his reckless disregard of his duties to the Court and his adversaries under Rule 11, Plaintiff should not be allowed to file any further papers in this or any related action without prior Court approval.

Dated: November 25, 2024

Respectfully submitted,

By Counsel

/s/ *Bob Kasolas*
Bob Kasolas, Esq.
Mark E. Critchley, Esq.
BRACH EICHLER LLC
101 Eisenhower Parkway
Roseland, New Jersey  07068
(973) 228-5700

Joseph P. Bowser, *pro hac vice*, 4/29/2024
ROTH JACKSON
1519 Summit Ave., Suite 102
Richmond, VA 23230
(804) 441-8701

*Attorneys for Halperin Defendants*

---

[7] Even though he never pled a conspiracy claim, Plaintiff seems to think he did in his Opposition. He cannot amend his complaint in his Opposition. *See Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (citation omitted) (A "complaint may not be amended by the briefs in opposition to a motion to dismiss."). But even if he could, his conspiracy claim is equally defective. Among other facial defects, he does not plead any special damages, a necessary element. *See Mehnert v. United States Bank Nat'l Ass'n*, Civil Action No. 17-4985 (JMV), 2019 U.S. Dist. LEXIS 34471, at *17 (D.N.J. Mar. 4, 2019) (quoting *Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999)). Plaintiff admits he never suffered a special injury and did not allege he did. *See* Opp. at 17. ("Plaintiff never alleged concrete injury. Plaintiff never suffered Concrete [*sic*] injury."). Thus, Plaintiff's unpled civil conspiracy theory is facially deficient.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2024, I caused a copy of the foregoing document to be served upon Plaintiff, via first class mail, postage prepaid, and email, as follows:

Richard Zelma
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optimum.net

*Plaintiff Pro Se*

/s/ *Bob Kasolas*
Bob Kasolas, Esq.