**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RICHARD M. ZELMA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL PETER HALPERIN, *et al.*,**<br><br>**Defendants.** | **Civil Action No.: 24-1059 (ES) (JRA)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Michael Peter Halperin ("Halperin") and IP Horizon LLC's ("Horizon") (together, the "Moving Defendants") motion to dismiss *pro se* Plaintiff Richard M. Zelma's ("Plaintiff") Second Amended Complaint, (D.E. No. 50 ("SAC")). (D.E. No. 52 ("Motion" or "Mot.")). Having carefully considered the parties' submissions and deciding this matter without oral argument, (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), for the reasons set forth below, the Court **GRANTS** the Motion.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiff, a "senior citizen and resident of Norwood, New Jersey[,]" alleges that from 2023 to the present, he received "approximately one hundred (100) unsolicited telemarketing calls to his residential landlines." (SAC ¶¶ 10, 14). Plaintiff states that the calls "frequently originated from

---

[1] The factual background is taken from the allegations in the SAC. For purposes of the instant Motion, the Court accepts the factual allegations as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

the same numbers, often repeated daily or weekly and included both pre-recorded messages and live agent solicitations." (SAC ¶ 14). Plaintiff contends that Halperin was the "owner, operator, director, managing member, and controlling authority of [Horizon], a business entity used to either initiate, route or facilitate telemarking campaigns, as requested by his clients and customers." (SAC ¶ 12). Plaintiff contends that the calls were "transmitted using numbering resources and routing platforms administered by [Horizon], an entity under the direct management and operational control of Defendant Halperin." (SAC ¶ 15). Plaintiff alleges that he "successfully returned calls to over ninety-nine (99) percent of the originating numbers which were met with either a live agent or a solicitation message directly related to the content of the initial call[s]." (SAC ¶ 23 (alterations in original)). Plaintiff further alleges that "[p]ublic records show that [Horizon], under Halperin's control, held access to approximately two million telephone numbers, many of which were subscribed, leased or assigned to third-party users." (SAC ¶ 26).

Plaintiff also states various allegations about Defendant Halperin's involvement in directing and managing Defendant Horizon. Plaintiff alleges that "Halperin, as administrator and principal of [Horizon], exercised direct operational control over VoIP platforms, call routing systems, and numbering assets used in transmitting unsolicited telemarketing calls to Plaintiff's residential lines." (SAC ¶ 28). Plaintiff further alleges that "Halperin's involvement and infrastructure control place him within the scope of liability under 47 U.S.C. § 227(b)(1)(B)." (*Id.* ¶ 29). Plaintiff alleges that the calls to his residential landlines were transmitted using "VoIP platforms and numbering resources administered by [Horizon], under the operational control of Defendant Halperin" and that "Halperin directed and oversaw deployment of the call infrastructure and derived financial benefit from the call campaign." (SAC ¶ 39).

### B. Procedural History

Plaintiff initiated this action in the Superior Court of New Jersey, Bergen County, Law Division on October 4, 2023, (D.E. No. 1-2 at 2–7 (ECF Pagination)), and on January 22, 2024, Plaintiff filed an amended complaint, (D.E. No. 1-2 at 23–80 (ECF Pagination)). The matter was removed to this Court on February 23, 2024, and the Court denied Plaintiff's subsequent motion to remand. (D.E. No 1-1; D.E. No. 27). On November 1, 2024, Defendants Halperin, HFA Holdings LLC, Horizon, Skye Telecom LLC d/b/a SkyeTel, HFA Services LLC d/b/a Call48, and MHLHTH Holdings LLC filed a motion to dismiss the amended complaint. (D.E. No. 29). Following briefing on this first motion to dismiss, on June 30, 2025, this Court granted the motion without prejudice. (*See* D.E. Nos. 29, 30, 31, 32 & 49). The Court dismissed the amended complaint for improper group pleading. (D.E. No. 49 ("Opinion") at 6). The Court ordered that Plaintiff may file a second amended complaint curing the deficiencies identified in that Opinion. (Opinion at 8). The Court warned that, should Plaintiff file a second amended complaint that does not cure the deficiencies identified in the Opinion, this matter may be dismissed with prejudice. (*Id.*).

On July 18, 2025, Plaintiff filed a Second Amended Complaint against Defendants Halperin, Horizon, and fictitiously pled "DOE Defendants."[2] (*See generally* SAC). Plaintiff asserts two claims against Halperin and Horizon: (i) Violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I); and (ii) Violation of the Communications Act, 47 U.S.C. §§ 206, 207, and 201(b). (*Id.* at 11–14). On August 22, 2025, the Moving Defendants moved to dismiss the SAC. (*See generally* Mot.). Plaintiff filed an Opposition on

---

[2] As the Moving Defendants correctly note in their Motion, while Plaintiff previously named HFA Holdings LLC, Skye Telecom LLC d/b/a SkyeTel, HFA Services LLC d/b/a Call 48 and MHLHTH Holdings LLC as defendants in this matter, his Second Amended Complaint contains no claims against them. (*See generally* SAC). Thus, the only defendants who remain in the case are Halperin and Horizon.

September 3, 2025. (D.E. No. 56 ("Opp.")). The Moving Defendants filed a Reply on September 22, 2025. (D.E. No. 58 ("Reply")). On March 6, 2026, the Moving Defendants submitted a Notice of Supplemental Authority. (D.E. No. 60). Following the completion of briefing on the motion to dismiss, Plaintiff has sent the Court several additional communications with various updates. (D.E. Nos. 59, 61, 62 & 64). The Moving Defendants responded on April 13, 2026. (D.E. No. 63). On April 30, 2026, the Hon. Jose R. Almonte, U.S.M.J., entered a text order stating that the Court does not need these "updates," that Plaintiff shall not file further updates on the docket, and that the Court will not consider the letters or the accusations included therein. (D.E. No. 65).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn

therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotations and citation omitted). But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, courts must construe complaints liberally in favor of a *pro se* plaintiff. *See Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training") (internal quotations and citations omitted). That said, the Court is not required "to credit bald assertions or legal conclusions: '[p]ro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Tucker v. Univ. of Sci., Arts & Tech., Coll. of Med.*, No. 23-23329, 2025 WL 1384313, at *1 (D.N.J. May 12, 2025) (alteration in original) (quoting *Griffin v. State Dep't of Human Servs.*, No. 18-14697, 2019 WL 3369783, at *2 (D.N.J. Jul. 26, 2019)). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Griffin*, 2019 WL 3369783, at *2 (citations omitted).

## III. DISCUSSION

### A. Violation of the Telephone Consumer Protection Act (Count I)

In Count I, Plaintiff asserts a claim for violation of the TCPA, 47 U.S.C. § 227, against both Halperin and Horizon. Plaintiff brings the TCPA claim specifically under 47 U.S.C. § 227(b)(1)(B), which makes it unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," except for limited exceptions not relevant here. (*See* SAC ¶¶ 37, 38); 47 U.S.C. § 227(b)(1)(B).

The key issue before the Court is whether Plaintiff has adequately pled that either one of the Moving Defendants, or individuals in an agency relationship with either Defendant, "initiated" the relevant telephone calls. A defendant may be held liable for initiating a telephone call in violation of 47 U.S.C. § 227(b)(1)(B) under a direct liability theory or vicarious liability theory. *See Doyle v. GoHealth, LLC*, No. 22-04291, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023) (citing *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013)). The Moving Defendants argue that Plaintiff has failed to plead facts to support either direct or vicarious liability under the TCPA. (Mov. Br. at 7). In his opposition brief, Plaintiff appears to concede that he does not allege direct or vicarious liability as to either of the Moving Defendants. (Opp. at 14, 15). Rather, Plaintiff argues that "[c]ourts have recognized that liability may attach to entities that knowingly enable unlawful traffic through infrastructure they control, even in the absence of any agency relationship or direct initiation." (*Id.* at 14). Thus, Plaintiff purports to plead a TCPA liability theory other than direct or vicarious liability. (*See id.* at 14 ("Plaintiff does not allege that Halperin directed or authorized any specific caller, nor that he maintained agency relationships with individual callers. Rather, the SAC alleges that Halperin provisioned numbers and

administered platforms that were knowingly used to transmit unlawful traffic, conduct that supports liability independent of agency.")). The only case Plaintiff cites for this theory, *Off. of the Att'y Gen. v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023), is distinguishable from the instant matter. (*See* Opp. at 8, 9, 10 & 11 (referencing "*Smartbiz*")). In *Smartbiz*, the court found that the attorney general for the state of Florida stated a cause of action under the TCPA where the state "specifically alleged that Defendant received over 250 tracebacks giving it actual notice of the illegal use of its network, and that it failed to take steps to prevent the further transmitting illegal calls." *Smartbiz*, 688 F. Supp. 3d at 1237. The plaintiff alleged the defendant "was notified approximately 250 times of fraudulent calls it ha[d] transmitted, despite having this knowledge it continued to connect these calls, profited from these fraudulent calls, refused to implement a means to check for these robocalls, and the calls would not have connected but for [d]efendant's decision to allow them to transit its network." *Id.* The court found that the state had alleged a "high degree of involvement [and] actual notice of an illegal use and failure to take steps to prevent such transmissions." *Id.* at 1236–1237 (citing *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8780 ¶ 54 (1992)). Here, Plaintiff's SAC alleges no facts to support a plausible inference that Defendants were aware of these calls or received tracebacks like the defendant allegedly received in *Smartbiz*. *Id.* While Plaintiff alleges that he "successfully returned calls to over ninety-nine (99) percent of the originating numbers," those return calls "were met with either a live agent or a solicitation message directly related to the content of the initial call[.]" (SAC ¶ 23). Thus, Plaintiff's return calls allegedly went to third-party callers who utilized Defendants' network, not to *Defendants* themselves. Plaintiff does not allege that he provided Defendants with notice of any of those calls.

Furthermore, Plaintiff cites no case law from the District of New Jersey or Third Circuit in support of his theory of liability.[3]

As stated above, Plaintiff does not appear to plead direct or vicarious liability as to either of the Moving Defendants. Furthermore, Plaintiff's SAC suffers from many of the same improper group pleading concerns this Court raised in its Opinion dismissing the first amended complaint, such that it is difficult to decipher which allegations apply to Defendant Horizon, the entity, and which allegations apply to Defendant Halperin, as an individual. The Court will nonetheless analyze Plaintiff's claims to assess whether Plaintiff adequately pleads a claim under the TCPA as to either of the Moving Defendants.

A defendant is directly liable under the TCPA when that person or entity "initiates" the telephone call, meaning that the person or entity "takes the steps necessary to physically place a telephone call." *Doyle*, 2023 WL 3984951, at *4 (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013)). Direct liability may also be found when an entity or individual is deemed "so involved in the placing of a specific telephone call" as to be deemed to have initiated it. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, 7980 (2015). An actor may also be held "vicariously liable under federal common law principles of agency for violations of [the TCPA] that are committed by [a] third-

---

3 Furthermore, other out-of-circuit courts have found that TCPA liability generally does not attach to a carrier that "connected rather than initiated" calls without more allegations about the entity's involvement. *See, e.g.*, *Dobronski v. Glob. Tel Link Corp.*, No. 25-1720, 2026 U.S. App. LEXIS 6097, at *4 (6th Cir. Mar. 2, 2026); *cf. Mey v. All Access Telecom, Inc.*, No. 19-0237, 2021 WL 8892199, *4–5 (N.D.W. Va. Apr. 23, 2021) (citing *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, 7978–7980 (2015)) (denying a motion to dismiss as to carrier where the plaintiff alleged that the carrier (i) knew when unlawful spoofed robocalls were being placed through their systems; (ii) knew each call was not for a lawful purpose; (iii) could easily block the robocalls from being connected; (iv) took the steps necessary to physically place obviously spoofed robocalls to plaintiff and class members; and (v) was an active participant who controlled the sending of the spoofed robocalls, among several other allegations about the carrier's direct and indirect involvement).

party[.]" *Id.* at 7979 n.96. Vicarious liability may be established under three agency theories: actual authority, apparent authority, or ratification. *Doyle*, 2023 WL 3984951, at *4.

**i. Defendant Horizon**

Plaintiff has failed to plausibly allege either direct or vicarious liability as to Defendant Horizon. Plaintiff alleges that Horizon is a "limited liability company that . . . engaged in telecommunications-related routing and platform services[.]" (SAC ¶ 13). Plaintiff alleges that Horizon has been inconsistently described at various times as a "carrier," "platform provider," "routing service[,]" and "telecommunications carrier." (SAC ¶¶ 17, 18 & 47).[4] Plaintiff alleges that "Horizon held and administered numbering resources and call-routing infrastructure used to transmit the telemarketing calls forming the basis of this action." (*Id.* ¶ 13). Plaintiff states that the volume of calls and "return-call responsiveness" are reflective of "a coordinated campaign executed through infrastructure and numbering resources administered by [Horizon]." (*Id.* ¶ 14). Plaintiff also alleges that "[p]ublic records show that [Horizon] . . . held access to approximately two million telephone numbers, many of which were subscribed, leased or assigned to third-party users." (*Id.* ¶ 26). Plaintiff does not allege that Defendant Horizon has "physically place[d]" any calls and thus fails to establish Horizon's direct liability. *Doyle*, 2023 WL 3984951, at *4; *see also Landy v. Nat. Power Sources, LLC*, No. 21-0425, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (finding that, where plaintiff "does not allege that [defendant] placed the initial call . . . , [plaintiff] can only pursue a TCPA claim . . . on a vicarious liability theory"). Indeed, Plaintiff acknowledges the calls at issue were initiated by others. (*See* SAC ¶ 7 (alleging Moving

[4] Additionally, in this Court's Opinion dismissing the first amended complaint, the Court understood Plaintiff to be making certain allegations about Horizon as a "common carrier" and directed the parties to address whether the Court may consider whether Defendants can be held liable under the TCPA as "common carriers." (Opinion at 6–7). But in Plaintiff's Opposition, Plaintiff argues that Horizon is "**not** a common carrier" and that "Halperin and his affiliated entities do not meet the statutory definition of a "[c]ommon [c]arrier." (Opp. at 4 (emphasis in original)). Thus, the Court need not consider either of the Moving Defendants' potential classification as a common carrier in assessing whether Plaintiff has stated a TCPA claim to survive the Moving Defendants' motion to dismiss.

Defendants operated entities that were "utilized to facilitate unlawful telemarketing conduct initiated by others"). Plaintiff also does not allege any facts that support an inference that Defendant Horizon "knowingly allowed its client(s) to use [its] platform for unlawful purposes." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. at 7980–7981 ("[W]hether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them."). While Plaintiff pleads that Defendant Horizon was involved in the carriage or transmission of the calls at issue, Plaintiff fails to explain how Defendant Horizon's call carriage or transmission constitutes initiation of a call under the TCPA and does not cite any case law in support of that inference. (*See generally* SAC; *see also* Mov. Br. at 8).

Plaintiff has also failed to establish vicarious liability as to Defendant Horizon. Plaintiff alleges no agency relationship between Defendant Horizon and any of the unknown individuals who placed the calls at issue. For example, Plaintiff does not allege that the unknown callers "had actual authority to make telemarketing calls" on Defendant Horizon's behalf, that the unknown callers "reasonably believe[d]" they had such authority to act on Defendant Horizon's behalf, or that Defendant Horizon "manifested assent to the [unknown] caller[s] calling on its behalf." *Landy*, 2021 WL 3634162, at *4–5. Indeed, Plaintiff alleges no facts about any of the unknown callers or how they are connected to Defendant Horizon, other than the fact that their calls may have been carried or transmitted by Defendant Horizon. (*See generally* SAC). Furthermore, an entity cannot be held liable under the TCPA "merely because they stand to benefit from the call." *Landy*, 2021 WL 3634162, at *3 (citations omitted). Thus, Plaintiff has failed to plead an agency

relationship between Defendant Horizon and the unknown callers.

Furthermore, as previously noted, Plaintiff clarifies in his opposition brief that he does not intend to allege a direct or vicarious liability theory. (*See* Opp. at 14). Plaintiff has therefore failed to state a TCPA claim under 47 U.S.C. § 227(b)(1)(B) as to Defendant Horizon, and the Court must dismiss that claim.

**ii. Defendant Halperin**

Plaintiff has similarly failed to allege either direct or vicarious liability as to Defendant Halperin in his individual capacity. Plaintiff alleges that Halperin "exercised substantial operational control over the numbering resources, routing platforms and call transmission systems through which unlawful telemarketing calls were sent to Plaintiff as well as others." (SAC ¶ 13). Plaintiff states that Halperin "utilized affiliated corporate entities under his management, including shell companies to transmit calls, obscure corporate liability and manage call assets." (*Id.*). Plaintiff states that the volume of calls he received and "return-call responsiveness" are reflective of "a coordinated campaign executed through infrastructure and numbering resources administered by [Horizon] under Defendant Halperin's control." (*Id.*¶ 14). Plaintiff also "asserts that Halperin's role aligns with operational and managerial oversight of the call campaigns." (*Id.*¶ 27). Plaintiff further states that Halperin "exercised direct operational control over VoIP platforms, call routing systems, and numbering assets used in transmitting unsolicited telemarketing calls to Plaintiff's residential lines." (*Id.*¶ 28). Plaintiff alleges that this "involvement and infrastructure control place [Halperin] within the scope of liability under 47 U.S.C. § 227(b)(1)(B)." (*Id.*¶ 29). Plaintiff also alleged that "Halperin directed and oversaw deployment of call infrastructure and derived financial benefit from the call campaign." (*Id.*¶ 39).

Despite these numerous and repetitive allegations about Halperin's involvement in

Horizon's platforms and systems, Plaintiff has failed to allege liability under the TCPA. First, Plaintiff fails to allege direct liability. As with Horizon, Plaintiff does not allege that Halperin personally placed any of the telephone calls at issue, or was so involved in the placing of a specific telephone call as to be deemed to have initiated it. *See Doyle*, 2023 WL 3984951, at *4–5; *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. at 7980–1781. As previously noted, Plaintiff provides no facts about the actual calls he received, including who placed the calls, how the callers identified themselves, or any messages conveyed. (*See generally* SAC). Without more, it is impossible to infer that Defendant Halperin had any sort of role in initiating the calls or knowingly allowed these callers to use Horizon for unlawful purposes. Plaintiff has also failed to allege vicarious liability against Halperin under the TCPA. His conclusory statement that "Halperin's role aligns with operation and managerial oversight of the call campaigns" cannot establish vicarious liability without further details about those who initiated the calls and any relationship Halperin had with those individuals or entities. (*Id.* ¶ 27). As discussed in relation to Defendant Horizon, Plaintiff does not allege that the unknown callers "had actual authority to make telemarketing calls" on Defendant Halperin's behalf, that the unknown callers "reasonably believe[d]" they had such authority to act on Defendant Halperin's behalf, or that Defendant Halperin "manifested assent to the [unknown] caller[s] calling on its behalf." *Landy*, 2021 WL 3634162, at *4–5.

The Moving Defendants also argue that Plaintiff's TCPA claim against Halperin in his individual capacity should also be dismissed because a corporate-officer theory of liability is not viable in the Third Circuit. (Mov. Br. at 10). Because Plaintiff has failed to show that Defendant Horizon had plausibly violated the TCPA, the Court need not consider whether Defendant Halperin may be held liable under a corporate-officer theory. Furthermore, as previously noted,

Plaintiff clarifies in his opposition brief that he does not allege a direct or vicarious liability theory against Defendant Halperin. (*See* Opp. at 14). As Plaintiff has failed to state a TCPA claim under 47 U.S.C. § 227(b)(1)(B) as to Defendant Halperin, the Court must dismiss this claim.

Finally, given that the Court has previously given Plaintiff an opportunity to amend his pleading, and is mindful of Plaintiff's acknowledgement that he does not contend that Defendants are liable for a TCPA violation on either direct or vicarious liability grounds, (Opp. at 14–15), the Court will dismiss those claims *with prejudice*.

**B. Violation of the Communications Act (Count II)**

The Court next turns to Plaintiff's claims under the Communications Act. Plaintiff brings a claim for a violation of Section 201(b) of the Communications Act, which requires that a common carrier's "charges, practices, classifications, and regulations for and in connection with . . . communication service . . . be just and reasonable." 47 U.S.C. § 201(b). Section 206 provides that common carriers may be liable for damages for violations of the Communications Act, and Section 207 provides that any person claiming to be damaged by a common carrier may make a complaint to the FCC or bring suit in district court for the recovery of damages. 47 U.S.C. §§ 206, 207. Plaintiff alleges that Halperin failed to fulfill statutory responsibilities, including obligations set forth in "47 CFR § 52.15(g)(2)(i) . . . requiring record-keeping and lawful deployment of numbering resources" and "47 CFR §§ 51.903 *et seq.* . . . governing transparency, signaling integrity and proper call routing practices."[5] (SAC ¶ 49). Plaintiff alleges that "that Halperin's transmission of outbound telemarketing calls using numbering resources under his control, coupled with mischaracterizations of his carrier status and failure to supervise third-party usage,

---

[5] As the Moving Defendants correctly note, 47 C.F.R. § 52.15(g)(2)(i) does not exist, but Subsection 52.15(g)(2) relates to certain carriers' applications for telephone numbering resources. (Mov. Br. at 21). It is also unclear which specific part of 47 C.F.R. § 51.903 Plaintiff is claiming applies in this case.

reflect unjust and unreasonable practices in violation of 47 U.S.C. § 201(b)." (*Id.* ¶ 52).

A plaintiff may not bring a cause of action under Section 207 based on an allegation that a carrier's practice was allegedly unjust or unreasonable under Section 201(b) unless the Federal Communications Commission ("FCC") has first determined that the relevant practice constitutes an unjust or unreasonable practice under the Communications Act. *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 89–90 (3d Cir. 2016). Here, Plaintiff does not allege that the FCC "first determine[d] that a particular type of practice constitutes an 'unjust or unreasonable' practice under [Section] 201(b)." *Id.* at 90. Though Plaintiff alleges certain FCC regulations were violated, the Third Circuit has found that "[n]othing in [Section 201(b)] implies that violations of all FCC regulations amount to unjust or unreasonable practices," and that adopting this approach would put "interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission." *Id.* Plaintiff merely lists out two FCC regulations and alleges "Halperin's failure to monitor call activity, maintain accurate usage records and ensure lawful transmission constitutes a breach of carrier duties" and that Defendants also engaged in "mischaracterizations of [Halperin's] carrier status and failure to supervise third-party usage[.]" (SAC ¶¶ 50 & 52). But Plaintiff does not provide any further facts supporting an inference that the FCC has found such alleged actions to be unjust or unreasonable. For example, Plaintiff does not cite any FCC orders demonstrating that the FCC has found similar practices to be unjust or unreasonable. *See, e.g.*, *Tenny J. Commc'ns, Inc. v. Verizon N.J., Inc.*, No. 19-19183, 2022 WL 1912390, at *4 (D.N.J. June 2, 2022). In his Opposition, Plaintiff attaches a March 17, 2023 letter from the Federal Trade Commission ("FTC") and states that this letter "confirms that Halperin's conduct has already triggered regulatory intervention." (Opp. at 22; D.E. No. 56-3 ("FTC Letter")). The FTC Letter is addressed to HFA Services LLC d/b/a Call48—

no longer a defendant in this action—and makes no allegations about Horizon or Halperin as an individual. (FTC Letter at 1 (ECF Pagination)). Plaintiff does not elaborate on how this letter to a non-defendant entity plausibly supports his Section 201(b) claim.

Furthermore, Plaintiff does not allege sufficient facts in support of his allegation that Defendants have engaged in behavior that could have violated the listed FCC violations. For example, Plaintiff states that "[u]nder 47 CFR § 52.15(g)(2)(i), applicants for numbering resources must show they're authorized to provide service in the area and capable of activating those numbers within sixty days" and that "47 CFR § 52.15(f)(1) requires carriers to maintain records showing how their numbers are used, including whether they're active, reserved or assigned to third parties" and then states that "Horizon didn't meet those thresholds." (SAC ¶ 24). Plaintiff then states that "[t]he numbers weren't just live; they were being answered and routed to sales agents and prerecorded solicitations. You don't get to hold blocks of numbers, lease them out, and then act like you don't know how they're being used." (*Id.*). These conclusory allegations do not satisfy federal pleading requirements.

As Plaintiff has failed to adequately plead that Defendants have engaged in a practice that the FCC has determined to constitute an unjust or unreasonable practice under the Communications Act, the Court must dismiss his Section 201(b) claim.[6] Unlike with Plaintiff's TCPA claims, it is not clear that it would be futile to permit Plaintiff to further amend his Communication Act claims. The Court will therefore afford Plaintiff a final opportunity to amend those claims to address the deficiencies described herein. If Plaintiff fails to do so, the Court will

[6] As this shortcoming pertains to Plaintiff's Communications Act claims generally, the Court need not analyze that claim separately as to each of the Moving Defendants.

dismiss Plaintiff's Communication Act claims, *with prejudice*, and close this case.

## IV. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. Count I of the Second Amended Complaint, asserting claims under the TCPA, is dismissed *with prejudice*. Count II of the Second Amended Complaint, alleging claims under the Communications Act, is dismissed *without prejudice*. The Court will afford Plaintiff a final opportunity to amend his pleading to cure the deficiencies in his Communications Act claims. An appropriate Order accompanies this Opinion.

Dated: September 30, 2026

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**